UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| IKADAN SYSTEM USA, INC. and WEIHAI GAOSAI METAL PRODUCT CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br>            Defendant. | **Court No. 21-00592** |

# COMPLAINT

Plaintiffs, Ikadan System USA, Inc. ("Ikadan") and Weihai Gaosai Metal Product Co., Ltd. ("Gaosai") (collectively "Plaintiffs"), by and through its attorneys, hereby allege the following for its Complaint against the United States, acting by and through U.S. Customs and Border Protection ("CBP"):

## CONTESTED DETERMINATION

1.  This action is an appeal from CBP's final affirmative determination of evasion of the antidumping ("AD") and countervailing duty ("CVD") orders, A-570-947 and C-570-948, respectively, covering steel grating from the People's Republic of China ("China") (collectively, the "Orders"). CBP's final determination covers steel grating entered by Plaintiffs from May 26, 2019, through the pendency of the investigation, and is identified by "EAPA Consolidated Case No. 7474."

2.  CBP published the final affirmative determination of evasion on October 26, 2021. *See Admin. Review Determination in EAPA Consolidated Case No. 7474*, CBP Office of Trade Regulations & Rulings (Oct. 26, 2021) ("Oct. 26, 2021 Decision").

## JURISDICTION

3. This action is brought pursuant to section 1517(g) of the Tariff Act of 1930, as amended by the Trade Facilitation and Trade Enforcement Act of 2015 ("EAPA"), to contest CBP's Oct. 26, 2021 Decision. *See* 19 U.S.C. § 1517(g).

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1581(c), which provides the Court with exclusive jurisdiction over all civil actions commenced under 19 U.S.C. § 1517.

## STANDING

5. Ikadan and Gaosai are U.S. importers of merchandise subject to CBP's evasion investigation and is an interested party within the meaning of 19 U.S.C. § 1517(a)(6) and 28 U.S.C. § 2631(k)(1).

6. Further, following CBP's determination of evasion, Plaintiffs are subject to antidumping and countervailing duties and are therefore adversely affected or aggrieved by agency action within the meaning of section 702 of the Administrative Procedure Act, as amended, 5 U.S.C. § 702, and is entitled to commence this action pursuant to 28 U.S.C. § 2631(i).

## TIMELINESS

7. Plaintiff is commencing this action with the concurrent filing of a summons and complaint, within 30 business days after publication of the Oct. 26, 2021 Decision, and has adhered to all the service and notification requirements as set out by the Rules of this Court. *See* USCIT R. 3, 4. Accordingly, Plaintiff has commenced this action within the statutorily-

prescribed time limits specified in 19 U.S.C. § 1517(g)(1).

## STATEMENT OF FACTS

8. On July 23, 2010, the U.S. Department of Commerce issued AD and CVD orders covering certain steel grating from China. *Certain Steel Grating from the People's Republic of China*, 75 Fed. Reg. 43,143 (July 23, 2010) (antidumping duty order); *Certain Steel Grating from the People's Republic of China*, 75 Fed. Reg. 43,144 (July 23, 2010) (countervailing duty order).

9. On March 27, 2020, Hog Slat, Inc. ("Hog Slat") filed an allegation with CBP's Trade Remedy & Law Enforcement Directorate ("TRLED"), contending that Ikadan was importing certain steel grating ("steel grating") of Chinese origin, specifically galvanized steel Tri-Bar Floor product ("tribar floors"), into the United States by transshipment through South Korea and/or misclassification to evade the payment of AD and CVD duties on steel grating from China. On April 29, 2020, Hog Slat supplemented its allegation and provided the name of Gaosai as an additional importer. TRLED acknowledged receipt of the allegations on May 26, 2020.

10. On June 16, 2020, CBP initiated a consolidated investigation, under EAPA Cons. Case Number 7474, with respect to Ikadan and Gaosai.

11. On September 18, 2020, having determined that Hog Slat's submissions reasonably suggested that Ikadan and Gaosai caused merchandise covered by the Orders to enter U.S. Customs territory through evasion, TRLED initiated an investigation into Ikadan and Gaosai. *See* Notice of Initiation and Interim Measures for Ikadan Systems USA, Inc. and Notice of Initiation of Investigation for Weihai Gaosai Metal Prdocut Co., Ltd.—EAPA Consolidated

3

Case 7474 dated Sept. 18, 2020) ("Notice of Initiation and Interim Measures").

12. On October 14, 2020, TRLED issued Request for Information ("RFI") questionnaires to Ikadan and Gaosai, requesting a wide range of information, including entry summary documents, production documents, and mill certificates.

13. On November 13, 2020, Ikadan and Gaosai submitted timely responses. Ikadan and Gaosai provided extensive documentation regarding information about the manufacturing process, inspection reports, and Ikadan's and Gaosai's entry summary documents.

14. On November 13, 2020, Ikadan submitted a scope request to the U.S. Department of Commerce ("Commerce"), asking Commerce to issue a scope ruling confirming that imports of ductile cast iron flooring for pig farrowing crates are outside the scope of the Orders.

15. On November 13, 2020, Gaosai submitted a scope request to Commerce, asking Commerce to issue a scope ruling confirming that imports of pig farrowing crates, which contain numerous components, including flooring that is partly made of galvanized bar, are outside the scope of the Orders. Gaosai also asked Commerce to issue a scope ruling confirming that imports of farrowing flooring systems, which are partly made of galvanized bars, are outside the scope of the Orders.

16. Commerce initially rejected Gaosai's scope ruling request, but Gaosai submitted an amended scope request on February 5, 2021, which Commerce accepted.

17. TRLED placed Gaosai's scope ruling request to Commerce on the record of the EAPA investigation on February 16, 2021.

18. On December 22, 2020, TRLED issued supplemental RFIs to Ikadan and Gaosai.

19. On December 31, 2020, Ikadan submitted a letter to TRLED stating that Ikadan has ceased all flooring imports pending the results of TRLED's investigation. Ikadan also noted

that CBP detained and examined several containers that would have confirmed that no subject goods (*i.e.*, flooring) were included in these containers. Ikadan stated that because it had stopped imports of the merchandise under investigation, CBP need not continue to waste resources in examining Ikadan's ongoing imports of merchandise *not* under investigation.

20. On January 13, 2021, Ikadan and Gaosai submitted timely responses to TRLED's supplemental RFIs.

21. On February 23, 2021, TRLED issued second supplemental RFIs to Ikadan and Gaosai.

22. On February 26, 2021, Ikadan and Gaosai submitted timely responses to TRLED's second supplemental RFIs.

23. On March 4, 2021, Hog Slat submitted comments on Ikadan's and Gaosai's second supplemental responses, and on March 11, 2021, Ikadan and Gaosai replied to Hog Slat's comments.

24. On March 5, 2021, TRLED extended the deadline to submit its determination by 60 days.

25. On April 19, 2021, Ikadan and Gaosai submitted their written arguments.

26. On May 7, 2021, Hog Slat submitted a response to Ikadan's and Gaosai's written arguments.

27. On May 11, 2021, Commerce published its scope ruling on pig farrowing crates and farrowing floor systems. In that ruling, Commerce determined that imports of steel decking of the tribar truss floor under consideration in the scope determination is covered by the Orders, but that the other components of the farrowing flooring systems and pig farrowing crates under consideration are *not* covered by the Orders.

5

28. On May 13, 2021, Commerce published its scope ruling on ductile cast iron flooring for pig farrowing crates. In that ruling, Commerce determine that imports of ductile cast iron flooring are *not* covered by the scope of the Orders.

29. On June 21, 2021, TRLED issued a determination that there was substantial evidence that Ikadan and Gaosai entered merchandise covered by the Orders through evasion.

30. On July 7, 2021, TRLED issued a CF-29 form (Notice of Action) to Ikadan, covering seven entries by Ikadan. The CF-29 described the merchandise as "steel grating/tribar flooring." The CF-29 stated that the seven entries have been changed to "type 03" (*i.e.*, subject to AD/CVD duties), and that AD/CVD duties have been added to all the entries. Along with the CF-29, TRLED included a spreadsheet, listing a breakdown by entry number, with invoice descriptions. The invoice descriptions on only two of the listed entries mentioned the term "tribar," but the other entries described various parts for "farrowing crates." The spreadsheet also indicates that TRLED calculated AD/CVD duties "based on the average tribar value per farrowing crate."

31. On July 27, 2021, TRLED issued a CF-29 to Gaosai, covering 14 entries by Gaosai. The CF-29 described the merchandise as "farrowing crate." The CF-29 stated that CBP changed the Harmonized Tariff Schedule of the United States ("HTSUS") classification of numerous entries from 7308.90.9590 (a basket category for structures and parts of structures of iron or steel) to 7304.31.6050 (steel grating). The CF-29 also stated that CBP was rate advancing all of the entries to apply AD and CVD duties. Along with the CF-29, TRLED included a spreadsheet listing a breakdown by entry number, with invoice descriptions. Some of the invoice descriptions mentioned the term "tribar" but some of the invoice descriptions stated only "farrowing crate" or "farrowing crates." The spreadsheet for Gaosai does not indicate how

6

TRLED calculated the AD/CVD duties, but a comparison of the AD/CVD duties listed for each entry to the entry summary information indicated that TRLED applied the percentage AD/CVD rate to the entire entry.

32. On August 3, 2021, Ikadan and Gaosai separately requested that CBP conduct an administrative review of TRLED's determination, pursuant to 19 U.S.C. § 1517(f).

33. On October 26, 2021, CBP issued its administrative review determination, affirming TRLED's June 21, 2021 determination.

## STATEMENT OF CLAIMS

### COUNT I

34. The allegations of paragraphs 1 through 33 are hereby incorporated by reference.

35. In the administrative proceedings, Ikadan provided substantial evidence that the farrowing crates at issue are "a modular system which can be adapted." The administrative record clearly demonstrates that a farrowing crate need not include tribar flooring, and further, even if the end product can include tribar flooring by nature of the modular system, Ikadan may source the flooring elsewhere.

36. In its written argument to TRLED, Ikadan and Gaosai pointed out that it is indisputable that the pig farrowing crates *themselves* (*i.e.*, when imported without any farrowing floor systems) are outside the scope of the Orders. The pig farrowing crates themselves contain no tribar, or any other component that could even arguably be said to resemble a grate, and therefore cannot be steel grating subject to the Orders.

37. In Attachment 1 to its request for an administrative review, Ikadan discussed in detail every entry that was flagged in the CF-29 dated July 7, 2021. Ikadan provided substantial

evidence that only two entries subject to the investigation contained tribar flooring. The tribar flooring was listed separately from the farrowing crates in these shipments. Ikadan demonstrated in significant detail that there is no evidence that the other entries subject to the investigation contained tribar flooring.

38. Similarly, in Attachment 1 to its request for an administrative review, Gaosai discussed in detail every entry that was flagged in the CF-29 dated July 27, 2021. Gaosai provided substantial evidence in the administrative proceedings explaining which entries examined by CBP did and did not contain tribar flooring, including a demonstration that several of the entries that included the term "tribar" in the description in fact did *not* contain tribar. Most important, Gaosai demonstrated that references in the entry documentation to the phrase "farrowing crate" does *not* mean that the entries contain "tribar flooring" or anything that could be construed as steel grating.

39. Notwithstanding all the detailed evidence that Ikadan and Gaosai provided to assist CBP with distinguishing which entries actually contained tribar flooring, in its administrative review determination, CBP did not change its assessments in the CF-29s. The practical effect of its refusal to address this issue is that CBP's apparent position is that farrowing crates necessarily contain tribar flooring, and are thus subject so the Orders.

40. As a result, CBP appears to claim the right to assign AD and CVD duties and liquidate entries on entries of farrowing crates that clearly do not contain tribar flooring, based on a conclusory assumption that any commercial documents that may describe the imported products are farrowing crates or parts of farrowing crates necessarily contain tribar flooring.

41. CBP's broad claim of a right to assign AD and CVD duties to shipments that clearly do not contain tribar flooring effectively expands the finding of evasion to "farrowing

8

crate" substructures, as opposed to just tribar flooring. It also stands in direct contradiction to Commerce's May 11, 2021 scope determination that components of pig farrowing crates and farrowing flooring systems, *other* than the tribar truss floor, is outside the scope of the Orders.

42. CBP's expansion of the universe of merchandise to which it claims a right to assess AD and CVD duties is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence and/or otherwise not in accordance with law.

## COUNT II

43. The allegations of paragraphs 1 through 42 are hereby incorporated by reference.

44. CBP's finding of evasion is premised entirely on its conclusion that Ikadan's and Gaosai's imports of pig farrowing crates and farrowing flooring systems are within the scope of the Orders, because this merchandise may include steel grating (in the form of tribar) as an input.

45. In its June 21, 2021 determination, TRLED stated that it did not place the scope rulings of Commerce, issued on May 11, 2021 (on pig farrowing crates and farrowing floor systems) and May 13, 2021 (on ductile cast iron flooring for pig farrowing crates) on the record. TRLED explained that it did not place those decisions on the administrative record of this investigation because regulatory timeframes for considering new factual information did not allow for the regulated amount of time for comments nor would it have allowed TRLED to issue its determination as to evasion in accordance with statutory deadlines.

46. Because TRLED did not place Commerce's scope determinations on the record in this EAPA investigation, the question of whether CBP's finding of evasion is supported by substantial evidence rises or falls on *its own* analysis of the scope of the Orders.

47. TRLED's entire analysis of the scope issue is as follows:

9

> After reviewing all the evidence on the record, CBP found that the tribar floors portion of the imported farrowing crate systems is covered merchandise. Because CBP determined that the evidence on the record clearly demonstrated that the tribar floors properly fell within the scope of the AD/CVD orders, CBP was not required to make a scope referral to DOC in this investigation. CBP determined that the galvanized tribar floors fell within the scope of the AD/CVD orders because the tribar floors are made with {part description and the making process}, making it a product of two or more pieces of steel joined together by welding. The scope of the AD/CVD orders covers "certain steel grating, consisting of two or more pieces of steel, including load-bearing pieces and cross pieces, joined by any assembly process…;" thus, the tribar floors meet the scope definition. Also, the scope does not include any exclusions that apply to the tribar floors.
>
> The RFI responses show that tribar floors are an {description} of the farrowing crate systems being imported into the United States and that the Importers regularly import tribar floors, listing them under the description "parts for farrowing crates" rather than separately listing the tribar floors and declaring them as subject to the AD/CVD orders. CBP entry data confirms this as well. Thus, substantial evidence on the record indicates that the Importers entered tribar floors, which is covered merchandise, into the customs territory of the United States through evasion.

48. TRLED completely ignored the arguments that Gaosai made in its scope ruling request to Commerce on pig farrowing crates and farrowing floor systems, and that were placed on the record of the EAPA proceeding. Specifically, Gaosai argued that the pig farrowing crates and farrowing flooring systems are *downstream products dedicated to a particular use* that are made of several components, including tribar floor that, if it had been imported *by itself* in a semi-finished form of bar lengths welded in a cross-section pattern, might be considered to be subject steel grating. But Gaosai does not sell or import the semi-finished input. Unlike steel grates, the tribar floor has been further manufactured into a downstream product through a self-supporting truss system consisting of leg fixtures made of flat steel angles and the bottom supports made of steel flat bar. The tribar floor with the truss system is specifically designed for the farrowing crate and to accommodate the cast iron floor. Gaosai only sells the tribar floor as a

10

component of the farrowing crate itself or as a farrowing crate flooring system with a cast iron floor. Thus, the further manufactured tribar floor is simply not steel grating based on the plain language of the Orders, and therefore a farrowing floor system constitutes a downstream, out-of-scope product.

49. TRLED also ignored the arguments raised by Gaosai that the descriptions of the merchandise contained in the original AD/CVD petitions, the initial investigation, and the injury investigation report of the U.S. International Trade Commission show that its pig farrowing crates and farrowing flooring systems fall outside the scope of the Orders.

50. TRLED also ignored Gaosai's arguments that a five-factor test that Commerce traditionally uses to determine whether a product is within the scope of an order (*i.e.*, the physical characteristics of the product, the expectations of the ultimate purchasers, the ultimate use of the product, the channels of trade in which the product is sold, and the manner in which the product is advertised and displayed), taken together, lead to the conclusion that Gaosai's pig farrowing crates and farrowing flooring systems are outside the scope of the Orders.

51. In its administrative review of TRLED's June 21, 2021 determination, CBP also completely ignored these same central points raised by Gaosai.

52. CBP's conclusion that Ikadan's and Gaosai's pig farrowing crates and farrowing flooring systems are within the scope of the Orders is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence and/or otherwise not in accordance with law.

## COUNT III

53. The allegations of paragraphs 1 through 52 are hereby incorporated by reference.

54. In the administrative proceedings below, Ikadan and Gaosai contended that they

reasonably believed that the Orders do not cover Gaosai's tribar flooring or its farrowing crates because the language of the Orders do not specifically cover tribar flooring or any other downstream products that contain steel grating.

55. A reasonable disagreement over the scope of the Orders cannot be considered a "material and false statement or act or a material omission" within the meaning of 19 U.S.C. § 1517.

56. In the administrative proceedings below, CBP did not cite to any evidence showing any level of culpability by Ikadan or Gaosai.

57. CBP's conclusion that Ikadan and Gaosai "evaded" the Orders, without any evidence of culpability by Ikadan or Gaosai, is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence and/or otherwise not in accordance with law.

## COUNT IV

58. The allegations of paragraphs 1 through 57 are hereby incorporated by reference.

59. The allegations of evasion that triggered this EAPA investigation were that Gaosai and Ikadan had transshipped steel grating from China to Korea and additionally misclassified steel grating as plastic.

60. In its Initial Determination, CBP dismissed these allegations as unfounded, stating that "{a}s for the allegations of transshipment from China to Korea and/or misclassification of steel grating as plastic to evade the AD/CVD orders, CBP found no evidence of either of these evasion schemes during the POI." Initial Determination, at 8.

61. Despite finding that the alleged evasion did not occur, CBP still determined that Ikadan and Gaosai had evaded the AD/CVD Orders, which resulted in CBP's investigation

12

becoming a parallel scope proceeding for the sole purpose of determining whether the imported tribar flooring was within the scope of the Orders.

63. A scope inquiry is within the exclusive province of Commerce and the determination of whether the imported tribar flooring was within the scope of the Orders should have been addressed through Commerce's scope inquiry and not by a finding of evasion in CBP's investigation.

64. CBP has exceeded its authority and improperly found evasion based on a scope issue.

65. For years, pig farrowing crates and farrowing flooring systems, including those with tribar floors, had entered without declaration as "Type 03" entries or payment of AD/CVD cash deposits, based on the reasonable assumption that they were not within the scope of the Orders.

66. When Commerce issues a scope ruling or circumvention finding, it must consider the importance of fairness, under due process principles, to affected importers in the assessment of duties. Binding precedent of the Federal Circuit and persuasive precedent of this Court hold that Commerce may not impose AD/CVD duties retroactively to a date before the importers were given adequate notice that their products might be within the scope of an order. *See United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794, 803 (Fed. Cir. 2020); *Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487, 494 (Fed. Cir. 2020); *Trans Texas Tire, LLC v. United States*, __ CIT __, 591 F. Supp. 3d 1298, 1304 (2021).

67. CBP's determination attempts to apply AD/CVD duties retroactively to Ikadan and Gaosai in the same manner that the Federal Circuit and this Court has forbidden Commerce to do violates the fundamental due process principle of adequate notice.

68. As such, CBP's assessment of AD/CVD duties on Ikadan and Gaosai retroactively, to a period of time before which these importers were on notice that their farrowing crates and farrowing floor systems are allegedly within the scope of the Orders, is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence and/or otherwise not in accordance with law.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment in its favor and against the Defendant:

(1) Holding unlawful and setting aside the Oct. 26, 2021 Decision;

(2) Ordering CBP to refund Plaintiffs any monies collected on its imports as a result of CBP's evasion investigation in EAPA Consolidated Case No. 7474; and

(3) Granting any such additional relief as the Court may deem just and proper in the circumstances.

Respectfully submitted,

/s/ Richard P. Ferrin
Douglas J. Heffner
Wm. Randolph Rucker
Richard P. Ferrin
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Washington, DC 20005
Telephone: (202) 230-5803

*Counsel to Ikadan System USA, Inc. and Weihai Gaosai Metal Product Co., Ltd.*

November 23, 2021