UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE

| | |
|---|---|
| IKADAN SYSTEM USA, INC. and WEIHAI GAOSAI METAL PRODUCT CO., LTD., <br><br>      Plaintiffs, <br><br>  v. <br><br>UNITED STATES, <br><br>      Defendant, <br><br>  and <br><br>HOG SLAT, INC., <br><br>      Defendant-Intervenor. | Court No. 21-00592 <br><br>**PUBLIC VERSION** <br>**BPI removed from pages 7-9.** |

## PLAINTIFFS' RULE 56.2 SUPPLEMENTAL BRIEF

Douglas J. Heffner
Wm. Randolph Rucker
Richard P. Ferrin
**FAEGRE DRINKER BIDDLE & REATH LLP**
1500 K Street, N.W.
Washington, DC 20005
(202) 230-5803

*Counsel for Plaintiffs*

Dated: November 4, 2022

US.353484085.03

# TABLE OF CONTENTS

I. CBP'S REMAND DETERMINATION PROVIDES NO ADDITIONAL SUPPORT FOR ITS DETERMINATION OF "COVERED MERCHANDISE." ................................................... 1

   A. Background ............................................................................................................... 1

   B. CBP's Remand Determination Does Not Comply With the Court's Remand Order Because It Provides No "Analysis of Relevant Law and Record Evidence" With Respect to Commerce's Scope Determination. ..................................................................................... 3

   B. CBP Is Mistaken That Its Role Is Merely "Ministerial" in an EAPA Action. .................. 4

   C. Plaintiffs' Challenge to the "Covered Merchandise" Portion of CBP's EAPA Ruling Under 19 U.S.C. § 1517 Is Not Foreclosed by the Availability of Review of Commerce Scope Rulings. .......................................................................................................................... 6

II. THE ISSUE OF WHETHER CBP SUSPENDED LIQUIDATION AND IMPOSED CASH DEPOSITS IN AN OVERBROAD MANNER IS PROPERLY BEFORE THIS COURT. ........... 7

III. CONCLUSION. ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Habaş Sinai ve Tibbi Gazlar Endüstrisi, A.Ş. v. United States*, 44 CIT ___, 470 F. Supp. 3d 1363 (2020) .................................................................................................................. 3

*SolarWorld Ams., Inc. v. United States*, 41 CIT ___, 273 F. Supp. 3d 1314 (2017) .................... 3

**Statutes**

19 U.S.C. § 1516a ......................................................................................................................... 6

19 U.S.C. § 1516a(a)(2) ................................................................................................................. 6

19 U.S.C. § 1516a(a)(2)(B)(vi) ...................................................................................................... 6

19 U.S.C. § 1517 ............................................................................................................................ 6

19 U.S.C. § 1517(a)(3) ................................................................................................................... 5

19 U.S.C. § 1517(b)(4) ............................................................................................................... 4, 6

19 U.S.C. § 1517(c) ....................................................................................................................... 6

19 U.S.C. § 1517(c)(1) ................................................................................................................... 8

19 U.S.C. § 1517(g) ....................................................................................................................... 6

19 U.S.C. § 1517(g)(1) ................................................................................................................... 6

19 U.S.C. § 1675 .......................................................................................................................... 10

28 U.S.C. § 1581(a) ................................................................................................................. 9, 10

**Regulations**

19 C.F.R. § 165.16(a) ................................................................................................................. 4, 5

19 C.F.R. § 165.28 ......................................................................................................................... 9

19 C.F.R. § 351.225(c) ................................................................................................................... 4

I.  **CBP'S REMAND DETERMINATION PROVIDES NO ADDITIONAL SUPPORT FOR ITS DETERMINATION OF "COVERED MERCHANDISE."**

   A.  **Background**

On August 17, 2022, Defendant moved this Court to remand the U.S. Customs and Border Protection ("CBP") Administrative Review Decision. Defendant's Motion for Voluntary Remand and to Stay Filing of Rule 56.2 Brief (Aug. 17, 2022) ("Motion for Voluntary Remand"), ECF 50. Defendant explained that it requested the voluntary remand "for CBP to place on the record and consider the determination made by the Department of Commerce (Commerce) that certain products imported by plaintiffs are subject to the AD/CVD orders." *Id*. at 1. Defendant stated that "{b}ecause this issue is central to each claim in plaintiffs' complaint and motion for judgment upon the administrative record, the voluntary remand has the potential to affect each issue challenged …" *Id*. at 2. According to Defendant, "{p}ermitting CBP to consider Commerce's scope ruling on the record and clarify or correct its administrative review decision will ensure that the Court is presented with a thorough analysis of relevant law and record evidence." *Id*. at 6. In its Remand Determination, however, CBP did not, however, present a "thorough analysis of relevant law and record evidence" regarding Commerce's Scope Ruling. *See generally* Final Remand Determination (Oct. 3, 2022), Remand Administrative Record ("Remand A.R.") Doc. 23; Commerce Scope Ruling on Pig Farrowing Crates and Farrowing Flooring Systems (May 11, 2021) ("Commerce Scope Ruling"), Supplemental Administrative Record ("Supp. A.R.") Doc. 7.

Despite Defendant promising, in its motion for voluntary remand, a "thorough analysis of relevant law and record evidence," CBP delivered a terse, three-page Draft Remand Determination. Draft Remand Determination (Sept. 8, 2022), Remand A.R. 10. The entirety of CBP's "analysis" of Commerce's Scope Ruling is as follows:

> We note that the relevant imported products, namely, farrowing crates and flooring systems, are comprised of multiple different components, with tribar floors (sometimes called tribar truss flooring) being the specific component at issue. In the Scope Ruling, Commerce considered three different products: "(1) a farrowing floor system that is partly made of a galvanized steel tribar truss floor and partly made of a ductile cast-iron floor; (2) a pig farrowing crate with the farrowing floor system described in item (1); and (3) a pig farrowing crate without flooring." Commerce considered each product individually and ultimately determined that the tribar truss floors remain subject to the AD/CVD Orders on Certain Steel Grating of Chinese-origin ("CSG"), despite their inclusion with other farrowing crate and/or flooring system components. Commerce did not consider the additional components of the tribar truss floors (*i.e.,* the trusses) to transform them into a new product, as the "essential characteristics" of the CSG were "largely unchanged." Commerce found that the other components of the farrowing crates and flooring systems are outside the scope of the AD/CVD Orders on CSG. Commerce's Scope Ruling provides further support to TRLED's June 21 Determination and R&R's October 26 FAD by reinforcing CBP's determination that the tribar flooring component of the farrowing crates and flooring systems is within the scope of the Orders.

Draft Remand Determination, at 2; Final Remand Determination, at 3.

Following CBP's Draft Remand, Plaintiffs then submitted their comments on CBP's Draft Remand Redetermination, demonstrating in detail why Commerce's Scope Ruling does not provide substantial evidence in support of CBP's conclusion that Plaintiffs' pig farrowing crates and farrowing flooring systems are within the scope of the CSG Orders. *See generally* Ikadan System USA Inc. and Weihai Gaosai Metal Product Co., Ltd., Comments on Draft Remand Redetermination (Sept. 19, 2022) ("Ikadan/Gaosai Comments"), Remand A.R. 17 (copy attached). Specifically, Plaintiffs demonstrated in detail that:

> (1) contrary to Commerce's Scope Determination, the unambiguous scope language of the CSG Orders covers CSG but does not cover downstream products made from CSG as an input;

2

> (2) Commerce's mixed media analysis does not apply here because the tribar itself is not one of multiple independent items in a set, but rather is an input to a distinct, out-of-scope downstream product; and
>
> (3) pig farrowing crates and farrowing flooring systems are unique items and therefore the mixed media test does not apply.

*Id*.

Nevertheless, CBP's "analysis" of Commerce's Scope Ruling was unchanged. Final Remand Determination, at 3.

### B. CBP's Remand Determination Does Not Comply With the Court's Remand Order Because It Provides No "Analysis of Relevant Law and Record Evidence" With Respect to Commerce's Scope Determination.

"The results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order." *Habaş Sinai ve Tibbi Gazlar Endüstrisi, A.Ş. v. United States*, 44 CIT ___, ___, 470 F. Supp. 3d 1363, 1365 (2020) (quoting *SolarWorld Ams., Inc. v. United States*, 41 CIT ___, ___, 273 F. Supp. 3d 1314, 1317 (2017)). Here, although this Court's Remand Order did not give specific instructions, *see* ECF 51, at a minimum, the Court should expect CBP to do what it said that it would do, *viz.*, "consider Commerce's scope ruling on the record and clarify or correct its administrative review decision" in order to "ensure that the Court is presented with a thorough analysis of relevant law and record evidence." Motion for Voluntary Remand, at 6.

CBP, however, did not do what it told the Court that it would do on remand. The sum and substance of CBP's "analysis" of Commerce's Scope Ruling was that "Commerce did not consider the additional components of the tribar truss floors (*i.e.,* the trusses) to transform them into a new product, as the 'essential characteristics' of the CSG were 'largely unchanged.'" Final Remand Determination, at 3. Although Plaintiffs argued that application of the label "essential characteristics" was vague and untethered to any judicially recognized test or

3

consistent past Commerce practice, Ikadan/Gaosai Comments, at 18-19, CBP did not address this argument—or *any* of Plaintiffs' arguments—in its Remand Determination.

**B.      CBP Is Mistaken That Its Role Is Merely "Ministerial" in an EAPA Action.**

In response to Plaintiffs' detailed analysis of Commerce's Scope Ruling, CBP advances the surprising argument that it plays only a "ministerial" role in "enforcing antidumping and countervailing duty order-related determinations issued by Commerce." Final Remand Determination, at 4. Yet CBP itself vociferously asserted in its Administrative Review Determination that it did not need to consult Commerce *at all* in determining whether the Plaintiffs' products were covered merchandise:

> First, 19 U.S.C. § 1517(b)(4) and 19 CFR 165.16(a) only require a scope referral to Commerce when CBP cannot determine whether the merchandise described in the allegation is covered merchandise under the AD and/or CV duty orders at issue. CBP found that it was able to determine that tribar floors are covered merchandise based upon the contents of the record without a scope referral to Commerce and explained the reasoning behind this finding in the June 21 Determination. Specifically, CBP found, based upon the evidence in the administrative record, that the way the tribar floors are constructed would place them within the scope of the AD/CV duty orders and that no exclusions apply to the tribar floors. Nothing in the record indicates that such a finding by CBP without referring the matter to Commerce was improper. Therefore, we find that such a scope referral to Commerce was not needed and CBP acted within its authority in determining that the tribar floors are within the scope of the AD/CV duty orders.

Administrative Review Determination (Oct. 26, 2021), Public Administrative Record Document 80, at 9.

Here, of course, CBP did not make a scope referral (pursuant to 19 C.F.R. § 165.16(a)), and Commerce issued its opinion—that the steel decking of the tribar truss floor of Plaintiffs' farrowing flooring systems and pig farrowing crates—only after Gaosai requested a ruling by Commerce pursuant to 19 C.F.R. § 351.225(c). Commerce Scope Ruling, at 1.

4

Moreover, even if CBP had made a scope referral under 19 C.F.R. § 165.16(a), there is nothing in the EAPA statute or CBP's regulations that requires CBP to follow Commerce's scope determination, when CBP makes its EAPA determination.

Put simply, CBP is attempting to have it both ways—independent enough under the EAPA statute to be able to make its own scope determinations without Commerce's aid, yet hiding behind Commerce by insisting that it performs only a "ministerial" role, such that it is not required to defend its scope determinations when it relies on a scope determination by Commerce in a separate proceeding.

Thus, CBP is wrong to claim that it only exercises a "ministerial" role in its EAPA decision, including the element of determining whether the products at issue are within the scope of the CSG Orders. Furthermore, when this Court reviews CBP's original EAPA decision and Administrative Review Determination, the Court must determine whether *all* aspects of CBP's determination—including its determination that portions of Plaintiffs' pig farrowing crates and farrowing flooring systems are within the scope of the CSG Orders—are supported by substantial evidence. Contrary to CBP's claim that is only making a "factual find{ing} that the tribar flooring portions are subject to the AD/CVD Orders," Administrative Review Determination at 4, Commerce must apply both facts *and law* to its determination that Plaintiffs' products are "covered merchandise." *See* 19 U.S.C. § 1517(a)(3). To withstand Court review, CBP must justify its finding that Plaintiffs' products are "covered merchandise," applying the same legal framework that the Court would use in direct review of a scope determination by Commerce.

5

**C.    Plaintiffs' Challenge to the "Covered Merchandise" Portion of CBP's EAPA Ruling Under 19 U.S.C. § 1517 Is Not Foreclosed by the Availability of Review of Commerce Scope Rulings.**

Finally, CBP stated that it "declines to address these arguments {by Ikadan/Gaosai} in its final remand redetermination as the proper avenue to dispute Commerce's Scope Ruling is seeking judicial review under 19 U.S.C. § 1516a(a)(2)." Final Remand Determination, at 4. CBP is wrong. Plaintiffs are not seeking judicial review under 19 U.S.C. § 1516a(a)(2) because the cause of action here is 19 U.S.C. § 1517(g), which provides judicial review of CBP's initial EAPA determination of evasion under 19 U.S.C. § 1517(c) and CBP's administrative review of that initial determination under 19 U.S.C. § 1517(f). See 19 U.S.C. § 1517(g)(1). In other words, Plaintiffs are seeking court review of CBP's determination of *evasion*, and all of the consequences therefrom. Although Plaintiffs could have challenged, under Section 1516a, Commerce's determination as to "whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order," *see* 19 U.S.C. § 1516a(a)(2)(B)(vi), Section 1517 concerns an entirely different statute (EAPA), with an entirely different set of consequences. There is nothing in Sections 1516a or 1517 that prevents Plaintiffs from suing under Section 1517(c) even if it is not directly challenging a Commerce scope determination under Section 1516a. Indeed, if Commerce had offered its scope determination in response to a referral by CBP pursuant to Section 1517(b)(4), the only cause of action for Plaintiffs would have been Section 1517(g), not Section 1516a. Here CBP decided not to make a referral, but instead to make its own determination of whether Plaintiffs' products constituted "covered merchandise." Commerce issued its scope determination in response to a separate scope request by Plaintiffs under separate legal authority. The fact that Plaintiffs chose not to appeal Commerce's determination simply does not estop or otherwise prevent Plaintiffs from seeking review of CBP's EAPA

6

determination, including any aspects of that determination, such as what constitutes "covered merchandise" in this instance.

## II. THE ISSUE OF WHETHER CBP SUSPENDED LIQUIDATION AND IMPOSED CASH DEPOSITS IN AN OVERBROAD MANNER IS PROPERLY BEFORE THIS COURT.

In the Ikadan/Gaosai Comments, Plaintiffs stated that they incorporate by reference several additional arguments that made on other issues in the litigation. Ikadan/Gaosai Comments, at 33. One of the issues that Plaintiffs discuussed in particular is its argument that CBP arbitrarily and capriciously suspended liquidation and assigned AD/CVD cash deposits in an overbroad manner to imports that contain no tribar. *Id*. at 33-34.

CBP responded by stating that "{t}his argument does not change the overall determination of evasion." Final Remand Determination, at 4. According to CBP, all that matters is that Plaintiffs acknowledged that at least some of their entries contained tribar. *Id*. at 4-5. CBP asserts further that "{t}he extent to which entry line items are subject to this finding is outside the scope of the EAPA investigatory and administrative review processes and will be determined at the time final duties, taxes, and fees are assessed on those entries." *Id*. at 5. CBP is mistaken, for several reasons.

*First*, this Court must review CBP's findings with respect to each Ikadan entry in order to support its finding of *any* instances of entry of "covered merchandise." In its initial determination, CBP noted that Ikadan stated that no tribar floors were imported during the POI. TRLED Notice of Determination of Evasion ("Initial Determination"), Confidential A.R. Doc. 123, at 7. CBP determined, however, "of [ ] entry lines reviewed, [ ] of them contained either farrowing crates or tribar floors as the imported product listed on the commercial invoices." *Id*. Thus, even if it were true (which it is not) that CBP only had to identify *one* entry line by Ikadan that contained tribar flooring to sustain its EAPA determination, this Court must

7

scrutinize CBP's findings with respect to Ikadan entries to determine that Ikadan entered "covered merchandise" through "evasion." *See* 19 U.S.C. § 1517(c)(1).

*Second*, this Court must review CBP's findings with respect to each Ikadan and Gaosai entry because CBP made specific findings on such entries. On July 7, 2021, CBP issued a CF-29 to Ikadan, stating the following:

[



]

Confidential Supp. A.R. Doc. No. 128. The CF-29 then goes on to list the seven specific entries and the amount of cash deposits due on each entry. *Id*. TRLED employees then calculated the line-by-line breakdown (*see*. Confidential Supp. A.R. Doc. Nos. 129-30, and exchanged e-mails with Ikadan's counsel regarding the same.

Regarding Gaosai, CBP determined that "evidence on the record shows that of [ ] Gaosai entries, [ ] entry lines contained either farrowing crates or tribar floors as the imported product listed on the commercial invoices classified under HTSUS 7308.90.9590." Initial Determination, at 7. CBP noted that Gaosai stated in its questionnaire responses that only two entry numbers ([     ]0608 and [     ]1939 contained tribar flooring. *Id*. Nevertheless, CBP made its determination in reliance, at least in part, on its finding that "the commercial invoices and packing lists for both entries disclosed the descriptions as "farrowing crates," with no indication of whether the shipments contained tribar flooring" and its finding that *all* farrowing crates "were [                                  ]." *Id*. Clearly CBP made its determination with respect to specific entries of Gaosai, and thus that determination is reviewable by this Court.

CBP also issued a CF-29 to Gaosai, stating the following:

[

8

]

Confidential Supp. A.R. Doc. No. 132. In a July 28, 2021 e-mail to a TRLED employee, Gaosai's counsel asked for details regarding the action taken by CBP on these entries, such as line numbers, values, or part numbers of the rate-advanced products that were determined to be covered merchandise. *See* Confidential Supp. A.R. Doc. No. 131. On July 29, 2021, that TRLED employee then sent CF-29s and Excel spreadsheets regarding these details. *Id*. In other words, TRLED itself already made determinations with respect to the specific entries and line items of Plaintiffs, and these should be reviewable by this Court.

*Finally*, this Court must review CBP's determination with respect to each specific entry that it found to be "covered merchandise" because the EAPA statutory scheme, as implemented in CBP's regulations, directs CBP to do the following with respect to *each* entry that CBP determined constituted "covered merchandise": (1) suspend or extend liquidation; (2) notify Commerce and request (if necessary) that Commerce identify an applicable AD/CVD duty assessment rate; and (3) require posting of cash deposits and assessment of duties. 19 C.F.R. § 165.28. If it were true that CBP only needed to find *one* entry that was "covered merchandise" to make an affirmative EAPA determination, then none of the above actions that CBP must do, according to its regulations, would be reachable by judicial review. In other words, if CBP (or this Court) were to determine that CBP erred in finding certain specific entries to be "covered merchandise," the Plaintiffs could not be made whole by filing a protest (or later instituting an action under 28 U.S.C. § 1581(a), if the protest were denied). CBP (or this Court) could erase any unlawful duty through the protest/1581(a) procedure, but could not compensate for the injury

9

of Plaintiffs having to post cash deposits. Moreover, it is unclear whether Plaintiffs could seek redress through the protest/1581(i) procedure, or instead have to request a lengthy and costly administrative review of the CSG AD/CVD Orders pursuant to 19 U.S.C. § 1675.

For the above reasons, the Court *in this action* must scrutinize CBP's determinations with respect to specific entries, not sweep them under the rug for later, as CBP urges.

### III.   CONCLUSION.

For all of the above reasons, as well as the reasons stated in Plaintiffs' opening brief, *see* ECF Nos. 44 & 45, the Court should enter judgment in favor of Plaintiffs, and remand CBP's determination with instructions to reconsider its ultimate finding of evasion and all subsidiary findings in a manner that is in accordance with law and is no longer arbitrary and capricious.

Respectfully submitted,

/s/ Richard P. Ferrin
Douglas J. Heffner
Wm. Randolph Rucker
Richard P. Ferrin
**FAEGRE DRINKER BIDDLE & REATH LLP**
1500 K Street, N.W.
Washington, DC 20005
(202) 230-5803

*Counsel to Plaintiffs Ikadan System USA, Inc. and Weihei Gaosai Metal Product Co., Ltd.*

November 4, 2022

**PUBLIC VERSION**

**Certification of Compliance with Chambers Procedure 2(B)(1)**

The undersigned hereby certifies that the foregoing brief contains 2997 words, exclusive of the table of contents, table of authorities, and counsel's signature block, and therefore complies with the maximum word count limitation of 5,000 as set forth in the Court's October 13, 2022 Order (ECF 59).

/s/ Richard P. Ferrin
Douglas J. Heffner
Wm. Randolph Rucker
Richard P. Ferrin
**FAEGRE DRINKER BIDDLE & REATH LLP**
1500 K Street, N.W.
Washington, DC 20005
(202) 230-5803

*Counsel to Plaintiffs Ikadan System USA, Inc. and Weihei Gaosai Metal Product Co., Ltd.*