## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:**     **THE HONORABLE LEO M. GORDON, SENIOR JUDGE**

| | |
|---|---|
| IKADAN SYSTEM USA, INC., *et al.,* | **PUBLIC VERSION** |
| Plaintiffs, | |
| v. | |
| UNITED STATES, | Court No. 21-00592 |
| Defendant, | **Business Confidential Information Removed From Pages: 4, 5, 6, 14, 15, 31** |
| and | |
| HOG SLAT, ING., | |
| Defendant-Intervenor. | |

### DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND SUPPLEMENTAL BRIEF

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

OF COUNSEL:
SHAE WEATHERSBEE
Attorney
U.S. Customs and Border Protection
Office of the Chief Counsel

KELLY A. KRYSTYNIAK
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington D.C. 20044
Tel: (202) 307-1063
Email: kelly.a.krystyniak@usdoj.gov

December 23, 2022

*Attorneys for Defendant United States*

## <u>TABLE OF CONTENTS</u>

I.      Administrative Determination Under Review ........................................................ 2

II.     Issues Presented For Review .................................................................................. 2

STATEMENT OF FACTS ................................................................................................. 2

LEGAL STANDARD........................................................................................................ 10

I.      The Enforce And Protect Act............................................................................... 10

II.     Standard Of Review............................................................................................. 12

ARGUMENT .................................................................................................................... 14

I.      CBP's Determination Is Supported By Substantial Evidence ............................ 14

        A.      Farrowing Crates Containing Tribar Flooring Fall Within The Scope Of
                The Orders .................................................................................................. 14

II.     The EAPA Statute Does Not Require A Finding Of Intent ................................. 19

III.    CBP Does Not Have The Authority To Undertake Judicial Review Of
        Commerce's Scope Determination ...................................................................... 25

IV.     CBP's Determination That Certain Entries Contain Subject Merchandise Is
        Beyond The Scope Of This Action...................................................................... 28

CONCLUSION................................................................................................................. 32

## TABLE OF AUTHORITIES

**CASES**                                                                                                          **PAGE(S)**

*Diamond Tools Tech. LLC v. United States*,
   545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) .................................................................... *passim*

*Essar Steel Ltd. v. United States*,
   678 F.3d 1268 (Fed. Cir. 2012) ......................................................................................... 13, 14

*FPC v. Transcon. Gas Pipe Line Corp.*,
   423 U.S. 326 (1976) .................................................................................................................. 13

*King Supply Co., LLC v. United States*,
   674 F.3d 1343 (Fed. Cir. 2012) ......................................................................................... 24, 25

*LDA Incorporado v. United States*,
   79 F. Supp. 3d 1331 (Ct. Int'l Trade 2015) ................................................................... 9, 10, 25

*MacMillan Bloedel Ltd. v. United States*,
   16 C.I.T. 331 (1992) ................................................................................................................. 30

*Nippon Steel Corp. v. United States*,
   337 F.3d 1373 (Fed. Cir. 2003) ............................................................................................... 21

*PSC VSMPO-Avisma Corp. v. United States*,
   688 F.3d 751 (Fed. Cir. 2012) ................................................................................................. 13

*Shanghai Tainai Bearing Co. v. United States*,
   582 F. Supp. 3d 1299 (Ct. Int'l Trade 2022) ......................................................................... 30

*SKF USA Inc. v. United States*,
   263 F.3d 1369 (Fed. Cir. 2001) ............................................................................................... 13

*Star Fruits S.N.C. v. United States*,
   393 F.3d 1277 (Fed. Cir. 2005) ............................................................................................... 13

*Star Pipe Prod. v. United States*,
   981 F.3d 1067 (Fed. Cir. 2020) ............................................................................................... 19

*Stein Indus. Inc. v. United States*,
   365 F. Supp. 3d 1364 (Ct. Int'l Trade 2019) ................................................................. 22, 23, 24

*Sunpreme Inc. v. United States,*
    946 F.3d 1300 (Fed. Cir. 2020) ........................................................................ 8, 9

*Trendium Pool Prod., Inc. v. United States,*
    399 F. Supp. 3d 1335 (Ct. Int'l Trade 2019) .............................................. 22, 23, 24

*Valeo N. Am., Inc. v. United States,*
    277 F. Supp. 3d 1361 (Ct. Int'l Trade 2017) ..................................................... 30

*WelCom Prods., Inc. v. United States,*
    865 F. Supp. 2d 1340 (Ct. Int'l Trade 2012) .................................................... 13

*Wheatland Tube Co. v. United States,*
    161 F.3d 1365 (Fed. Cir. 1998) ....................................................................... 12

## STATUTES

19 U.S.C. § 1484(a)(1)(B) ..................................................................................... 30

19 U.S.C. § 1514 ................................................................................................... 29

19 U.S.C. § 1516a ................................................................................................. 27

19 U.S.C. § 1517 ............................................................................................ *passim*

19 U.S.C. § 1592 ................................................................................................... 21

19 U.S.C. § 1677(1) .......................................................................................... 28, 29

28 U.S.C. § 2636 ................................................................................................... 29

Trade Facilitation and Trade Enforcement Act of 2015,
Pub. L. No. 114-125, 130 Stat. 122 (2016) ........................................................ 2, 10

## REGULATIONS

19 C.F.R. § 165.21 ................................................................................................. 12

19 C.F.R. § 165.22 ................................................................................................. 12

19 C.F.R. § 165.23 ................................................................................................. 11

19 C.F.R. § 174.28 ................................................................................................. 29

19 C.F.R. § 351.225(k)(1) ................................................................................. 18, 19

## <u>ADMINISTRATIVE DETERMATION</u>

*Certain Steel Grating from the People 's Republic of China: Countervailing Duty Order*,
   75 Fed. Reg. 43,144 (Dep't of Commerce July 23, 2010)............................................................ 3

*Certain Steel Grating from the People's Republic of China Antidumping Duty Order*,
   75 Fed. Reg. 43,143 (Dep't of Commerce July 23, 2010)............................................................ 3

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:**    **THE HONORABLE LEO M. GORDON, SENIOR JUDGE**

---

| | |
|---|---|
| IKADAN SYSTEM USA, INC., *et al.,* | |
| Plaintiffs, | |
| v. | |
| UNITED STATES, | Court No. 21-00592 |
| Defendant, | |
| and | |
| HOG SLAT, ING., | |
| Defendant-Intervenor. | |

---

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION
FOR JUDGMENT UPON THE ADMINISTRATIVE
<u>RECORD AND SUPPLEMENTAL BRIEF</u>**

Defendant, the United States, respectfully submits this response to the motion for

judgment upon the administrative record and supplemental brief[1] submitted by plaintiffs Ikadan

System USA, Inc. (Ikadan) and Weihai Gaosai Metal Product Co., Ltd. (Weihei) (together,

plaintiffs).  ECF Nos. 44, 45, 60, 61.  Because evidence on the record clearly demonstrates that

the tribar floors imported by plaintiffs fall within the scope of the applicable antidumping and

---

[1] Prior to responding to plaintiffs' motion for judgment upon the administrative record, defendant requested a voluntary remand, and the Court granted our motion.  ECF Nos. 50, 51. Pursuant to the Court's scheduling order, ECF No. 59, plaintiffs submitted a supplemental brief addressing the results of the remand redetermination on November 4, 2022.  ECF Nos. 60, 61. As contemplated by the Court's scheduling order, our brief thus responds to both the motion for judgment upon the administrative record filed before our request for a voluntary remand, as well as plaintiffs' supplemental brief.

countervailing duty (AD/CVD) orders, CBP's evasion determination is supported by substantial evidence and should not be disturbed.

**I.**   **Administrative Determination Under Review**

This action challenges CBP's administrative determination, issued under 19 U.S.C. § 1517(f), as to evasion for certain shipments of steel grating from the People's Republic of China.  Confidential Notice of Determination as to Evasion in EAPA Case No. 7474 (C.R.123) (June 21, 2021); *see also* Administrative Review of Determination of Evasion, "Enforce and Protect Act (EAPA) Case Number 7474; (P.R. 80) (Oct. 26, 2021).

**II.**   **Issues Presented For Review**

1.   Whether CBP's evasion determination is supported by substantial evidence.

2.   Whether CBP can or must undertake judicial review of Commerce's scope ruling before relying upon it in support of its evasion determination.

3.   Whether CBP's allegedly overbroad application of cash deposits for entries that plaintiffs assert contain no subject merchandise is an injury that this Court can address in this proceeding.

**STATEMENT OF FACTS**

On June 16, 2020, CBP's Trade Remedy Law Enforcement Directorate (TRLED), Office of Trade initiated an investigation under Title IV of the Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, 130 Stat. 122 (2016), commonly referred to as the "Enforce and Protect Act" or "EAPA," to determine whether certain shipments of steel grating had been entered into the customs territory of the United States by means of evasion.  *See* Notice of Initiation of Investigation and Interim Measures in EAPA Case No. 7474 (C.R. 14) (Sept. 18, 2020) (Notice of Initiation).  The products subject to CBP's investigation were

manufactured by Gaosai and imported to the United States by both Ikadan and Gaosai.

The investigation was initiated in response to an allegation by defendant-intervenor Hog Slat, Inc. (Hog Slat) – a domestic producer of steel grating – that plaintiffs were evading antidumping and countervailing duties (AD/CVD) on steel grating from China. Hog Slat Allegation, C.R. 1. Specifically, Hog Slat alleged that plaintiffs' imports violated two orders issued by the Department of Commerce (Commerce): *Certain Steel Grating from the People's Republic of China Antidumping Duty Order*, 75 Fed. Reg. 43,143 (Dep't of Commerce July 23, 2010) (A-570-947) (AD Order) and *Certain Steel Grating from the People 's Republic of China: Countervailing Duty Order*, 75 Fed. Reg. 43,144 (Dep 't of Commerce July 23, 2010) (C-570-948) (CVD Order). *See* C.R. 1 at Att. 2, 3 (together, the Orders).

Both Orders set forth the scope of the products from China to which they apply:

> The products covered by this order are certain steel grating, consisting of two or more pieces of steel, including load- bearing pieces and cross pieces, joined by any assembly process, regardless of: (1) size or shape; (2) method of manufacture; (3) metallurgy (carbon, alloy, or stainless); (4) the profile of the bars; and (5) whether or not they are galvanized, painted, coated, clad or plated. Steel grating is also commonly referred to as "bar grating," although the components may consist of steel other than bars, such as hot-rolled sheet, plate, or wire rod.

C.R. 1 at Att. 2, 3.

Hog Slat alleged that Gaosai – a sophisticated manufacturer exporting to more than 20 countries –along with Ikadan, evaded duties by entering metal grating subject to the Orders but classified under HTSUS headings, including HTSUS 3926.90, applicable to "Other articles of plastics and articles of other materials of headings 3901 to 3914." C.R. 1 at CR000010. Hog Slat alleged that "none of the Gaosai Tri-bar Floor that has entered the United States in the past 12 months, 21 which should have been classified under 7308.90 HTSUS, 22 has been classified

correctly." *Id.*[2] Hog Slat explained its assertion that Gaosai's "Tri-Bar Floors" are rolled steel rods, welded to a cross rod that is also made of steel, which – Hog Slat alleged – makes it a product of two or more pieces of steel joined together by welding, and thus covered by the Orders. *Id*

On September 18, 2020, CBP informed plaintiffs that it had initiated an investigation based on Hog Slat's allegations, issuing a "request for information" (RFI) to both Ikadan and Gaosai.  C.R. 14; C.R. 15; C.R. 17.  Relevant here, CBP asked Gaosai – the manufacturer of all product subject to CBP's investigation – to provide a product list "of all steel grating, farrowing crates and parts thereof from China" that it imports.  C.R. 18 at CR000275.  In response, Gaosai stated that it "does not import steel grating from China," and provided a list of the products that it does import, including [                    ] consisting of, among other components, [

          ] *Id*.  Gaosai also included detailed "product descriptions" as an attachment to its RFI response.  C.R. 20.  Despite its assertion that it does not "import steel grating" Gaosai nevertheless described the production process for its [                    ] as [

                              ] C.R. 20 at CR000302.  Gaosai also provided images of the production process for the [                    ]:

---

[2] Hog Slat also alleged that Gosai transshipped subject merchandise through South Korea.  *Id.* at CR000011.  CBP ultimately determined that substantial evidence did not support that allegation.  C.R. 123 at CR004987.

*Id.*

  In another attachment to its RFI response, Gaosai described the production process for its

[      ] as [

       ] C.R. 43 at CR002159.  Gaosai explained that it next

subjects the [       ] before packing the material.  *Id.*

  While CBP's EAPA investigation was pending before TRLED, Gaosai requested a scope

determination from Commerce.  P.D. 24.  Commerce ultimately determined that Gaosai's

products are subject to the Orders; however, by the time Commerce's ruling was issued, "the

administrative record in this EAPA investigation had already closed and, due to regulatory

timeframes, TRLED did not add the scope ruling to the administrative record."  P.D. 80 at

PR002297.

  After considering the record evidence and the parties' questionnaire responses, CBP

determined that plaintiffs had entered covered merchandise into the United States by means of

evasion.  First, CBP determined that the tri-bar floors are covered merchandise, exercising its

discretion under the statute to determine so without referring the matter to Commerce.  19 U.S.C.

§ 1517(b)(4); C.R. 123 at 8 ("Because CBP determined that the evidence on the record clearly

demonstrated that the tribar floors properly fell within the scope of the AD/CVD orders, CBP

was not required to make a scope referral to DOC in this investigation.")  Rather, CBP

"determined that the galvanized tribar floors fell within the scope of the AD/CVD orders because

the tribar floors are made with [                                                    ], making it a

product of two or more pieces of steel joined together by welding." *Id.*  Noting that the order

"does not include any exclusions that apply to the tribar floors" and that it "covers 'certain steel

grating, consisting of two or more pieces of steel, including load-bearing pieces and cross pieces,

joined by any assembly process… .'"  CBP concluded that "the tribar floors portion of the

imported farrowing crate systems is covered merchandise." *Id.*

 CBP further determined that, notwithstanding the fact that the tribar flooring clearly fell

within the scope of the order, the tribar floors were entered into the United States as "parts for

farrowing crates" and thus "substantial evidence on the record indicates that the Importers

entered tribar floors, which is covered merchandise, into the customs territory of the United

States through evasion." *Id.* at 8.

 Plaintiffs requested an administrative review of TLRED's determination, and CBP's

Office of Rules & Regulations (R&R) issued its *de novo* determination on October 26, 2021.

P.D. 80.  R&R ultimately concluded that TLRED's determination was supported by substantial

evidence.  R&R explained that both Ikadan and Gaosai had conceded that at least some of the

entries subject to CBP's investigation contained tri-bar flooring – an item clearly covered by the

Orders – yet were entered as "Type 01" entries, resulting in non-payment of duties applicable to

steel grating.  P.D. 80 at PR002302.  Thus, R&R confirmed substantial evidence of evasion present in the record.  *Id.*

R&R further responded to plaintiffs' arguments that CBP cannot make a finding of evasion without referring the matter to Commerce for a scope determination and that, in any event, any entry made prior to the date of Commerce's scope determination cannot constitute evasion because the scope of the order was unclear until Commerce's scope determination was issued.  *Id.*

R&R first explained that the language of the EAPA statute requires CBP to seek a scope determination from Commerce only "when CBP cannot determine whether the merchandise described in the allegation is covered merchandise under the AD and/or CV duty orders at issue." P.D. 80 at PR002303; citing 19 U.S.C. § 1517(b)(4)(A).  Thus, CBP has the latitude to determine that an item falls within the scope of an AD/CVD order without referring the matter to Commerce, and R&R found that TLRED was not required to do so here.  *Id.*

Moreover, R&R explained that EAPA contemplates "interim measures" when CBP launches an investigation, permitting "extending or suspending liquidation, collecting cash deposits, and taking other steps deemed necessary to protect the revenue of the United States and to protect domestic industry during the pendency of an EAPA investigation."  *Id.* (citing 19 U.S.C. § 1517(e)).  Because CBP does not reach an evasion determination until it completes its investigation, the statute thus expressly contemplates that CBP's determination can be retroactively applied to entries subject to interim measures.  *Id.*  Here, CBP determined that, because the Orders clearly apply to the tri-bar grating imported by plaintiffs, substantial evidence of evasion exists.  *Id.*  As R&R explained, applying that determination to the entries subject to interim measures is expressly permitted by the statute, and has also been permitted by the United

States Court of Appeals for the Federal Circuit in a parallel circumstance before Commerce, *i.e.* that Court's *en banc* decision in *Sunpreme* that a scope determination could be retroactively applied to entries subject to continued suspended liquidation. *Id.* (citing *Sunpreme Inc. v. United States*, 946 F.3d 1300 (Fed. Cir. 2020)(*en banc*)). As R&R explained, "*even if* the outcome of the EAPA investigation hinged on a scope ruling by Commerce, the date of the scope ruling would not govern which subject entries would require payment of AD/ CV duties as argued by the Importers. The subject AD / CV duties would either apply to all subject entries or none of them; there is no scenario where only some of the subject entries would be subject to the AD/ CV duty orders." P.D. 80 at PR002304 (emphasis in original). R&R thus affirmed TLRED's evasion determination. *Id.*

Plaintiffs appealed CBP's determination to this Court, and filed its motion for judgment upon the administrative record on April 22, 2022. ECF No. 44. The Government requested a voluntary remand in order to "place on the record and consider the determination made by {Commerce} that certain products imported by plaintiffs are subject to the AD/CVD orders." ECF No. 50 at 1. The Court granted our motion, and CBP filed its remand redetermination on October 3, 2022. ECF Nos. 51, 52.

On remand, CBP placed Commerce's scope determination – issued too late to be considered in CBP's original determination – on the record and examined the impact of Commerce's ruling on its evasion determination. ECF No. 52 at 2. CBP ultimately concluded that Commerce's scope determination "provides further support to" the initial and *de novo* determinations made by TLRED and R&R "by reinforcing CBP's determination that the tribar flooring component of the farrowing crates and flooring systems is within the scope of the Orders." ECF No. 52 at 3. Specifically, Commerce's scope determination examined three

products: "(1) a farrowing floor system that is partly made of a galvanized steel tribar truss floor and partly made of a ductile cast-iron floor; (2) a pig farrowing crate with the farrowing floor system described in item (1 ); and (3) a pig farrowing crate without flooring." *Id.* (citing ECF No. 57-2 at RI000026). Commerce's scope determination "considered each product individually and ultimately determined that the tribar truss floors remain subject to" the Orders "despite their inclusion with other farrowing crate and/ or flooring system components." *Id.* (citing ECF No. 57-2 at RI000034). Moreover, Commerce examined whether "the additional components of the tribar truss floors (*i.e.*, the trusses) to transform them into a new product" finding that they did not because "the essential characteristics" of the steel grate "were largely unchanged." *Id.* (citing ECF No. 57-2 at RI000039) (internal quotations omitted).

CBP also responded to plaintiffs' argument – advanced on remand – that R&R's *de novo* review of TLRED's determination should apply "the same legal framework that" that this Court and the Federal Circuit "would use in direct review of a scope determination by Commerce." ECF No. 52 at 3, quoting ECF No. 57-2 at RI000089. CBP rejected this argument, explaining that, as an Executive agency, it lacks authority to undertake judicial review of a determination made by Commerce, but rather serves a "ministerial role in enforcing antidumping and countervailing duty order-related determinations issued by Commerce" typically limited to following "Commerce's instructions in collecting deposits of estimated duties and in assessing antidumping and countervailing duties, together with interest, at the time of liquidation." ECF No. 52 at 4. Quoting language from this Court's decision in *LDA Incorporado v. United States*, CBP further explained that, "incident to its ministerial function of fixing the amount of duties chargeable," CBP nevertheless "must make factual findings to determine what the merchandise is, and whether it is described in an order and must decide whether to apply the order to the

merchandise." *Id.* (quoting *LDA Incorporado v. United States* 79 F. Supp. 3d 1331, 1339 (Ct. Int'l Trade 2015)) (internal quotation omitted).   Thus, notwithstanding CBP's "ministerial" function – a function that oftentimes requires a determination as to whether a product falls within the scope of a given order – CBP rejected plaintiffs' assertion that it should undertake a "substantial evidence" analysis of Commerce's scope determination as this Court might.

CBP also addressed plaintiffs' argument that "CBP has applied AD/CVD to the farrowing crates and farrowing flooring systems in an overbroad manner that includes entries in which no tribar floors were imported."  ECF No. 52 at 4 (citing ECF No. 57-2 at RI000115). CBP explained that whether its evasion determination should be applied to individual entries "does not change the overall determination of evasion" because plaintiffs "have acknowledged that some of the entries subject to the EAP A investigation contained tribar flooring."  Thus, CBP explained, "the extent to which entry line items are subject to this finding is outside the scope of the EAPA investigatory and administrative review processes and will be determined at the time final duties, taxes, and fees are assessed on those entries."  ECF No. 52 at 5.

Plaintiffs filed a supplemental brief addressing the remand results on November 4, 2022 (ECF No. 60), and this response follows.

## **LEGAL STANDARD**

**I.**     **The Enforce And Protect Act**

In 2016, the President signed into law The Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA), Pub. L. No. 114-125, 130 Stat. 122 (2016).  Title IV, Section 421 of TFTEA, commonly referred to as the "Enforce and Protect Act" or "EAPA," established a new CBP administrative procedure for investigating allegations of evasion of antidumping and countervailing duty (AD/CVD) orders as part of the agency's efforts to ensure a level playing

field for domestic industries. *See generally* https://www.cbp.gov/sites/default/files/assets/ documents/2016Oct/Trade%20Facilitation%20and%20Trade%20Enforcement%20Act%20of%2 02015%20-%20Overview.pdf.

Under EAPA, Federal agencies or interested parties—including U.S. and foreign manufacturers, producers, exporters; certified unions or recognized unions or groups of workers; and trade or business associations in a particular industry—may submit allegations to CBP that reasonably suggest that merchandise covered by an AD/CVD order has entered the United States through evasion. Generally, the investigation of an EAPA allegation proceeds as follows: within 15 calendar days of receiving an allegation, if CBP determines that the allegation reasonably suggests covered merchandise has been entered through evasion, CBP must initiate an investigation, 19 U.S.C. § 1517(b)(1). Within 90 calendar days, CBP must make an initial determination of whether there is reasonable suspicion of evasion and, if so, issue interim measures, which includes the suspension and extension of liquidation for certain entries, 19 U.S.C. § 1517(e). The EAPA statute grants CBP broad discretion to determine the investigation's scope and means, including authority to collect and verify any information it deems necessary to make its evasion determination. 19 U.S.C. § 1517(c)(2). CBP's regulations set forth the types, and requirements for the submission, of factual information by parties. 19 C.F.R. § 165.23. For example, parties to the investigation may voluntarily submit information to CBP or may provide information in response to requests by CBP. *Id.* Parties to the investigation have 200 days from the date on which the investigation was initiated to submit factual information on the record, and 230 calendar days to submit written arguments. *Id.* Parties to the investigation have 15-calendar days to submit responses to other parties' written arguments. *Id.*

Interested parties who are not parties to the investigation may provide information only in response to requests by CBP.  *Id.*

During the investigation, CBP maintains an administrative record of material obtained and considered by CBP during the investigation, as well as record information submitted by interested parties.  19 U.S.C. § 1517(c)(2); 19 C.F.R. § 165.21.  No later than 300 calendar days after the investigation's initiation, CBP is required to make a determination as to whether the administrative record contains evidence to reasonably conclude that AD/CVD duties have been evaded.[3]  19 U.S.C. § 1517(c)(1)(A); 19 C.F.R. § 165.22.  Interested parties are permitted to request an administrative review of the initial determination, and CBP must complete the review and issue a final administrative review determination no later than 60 business days after such a request.  19 U.S.C. § 1517(f).  EAPA allows for judicial review in this Court of CBP's final administrative determination and the original determination as to evasion, provided that an action is commenced within "30 business days" after CBP completes an administrative review under subsection (f).  19 U.S.C. §  1517(g)(1).

**II**.    **<u>Standard Of Review</u>**

In reviewing CBP's evasion determinations, this Court determines whether CBP complied with procedures under the EAPA statute and whether, in reaching its ultimate evasion determination, any determination, finding, or conclusion made by CBP is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  19 U.S.C. § 1517(g)(2).

"Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion."

---

[3] CBP may issue notice of an extension of time of 60 days, provided certain requirements are met, to render its determination.  19 U.S.C. § 1517(c)(1)(B).

*Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998).  "An abuse of

discretion occurs where the decision is based on an erroneous interpretation of the law, on factual

findings that are not supported by substantial evidence, or represent an unreasonable judgment in

weighing relevant factors."  *WelCom Prods., Inc. v. United States*, 865 F. Supp. 2d 1340, 1344

(Ct. Int'l Trade 2012) (citing *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir.

2005)).  "An agency action is arbitrary when the agency offers insufficient reasons for treating

similar situations differently."  *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir.

2001).

When reviewing CBP's determinations, "absent constitutional constraints or extremely

compelling circumstances," this Court "will defer to the judgment of an agency regarding the

development of the agency record."  *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751,

760 (Fed. Cir. 2012) (explaining the Court's role in reviewing Commerce's antidumping duty

administrative determinations).  "To do otherwise would 'run the risk of propelling the courts

into the domain which Congress has set aside exclusively for the administrative agency.'"  *Id.*

(quoting *FPC v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976)).  Rather, "{t}he role

of judicial review is limited to determining whether the record is adequate to support the

administrative action."  *PSC*, 688 F.3d at 761; *see also Essar Steel Ltd. v. United States*, 678

F.3d 1268, 1278 (Fed. Cir. 2012) (reversing order instructing Commerce to consider extra-record

information because "the trial court's order usurps agency power, undermines Commerce's

ability to administer the statute entrusted to it, contradicts important principles of finality, and

discourages compliance").

## ARGUMENT

**I.    CBP's Determination Is Supported By Substantial Evidence**

**I.       Farrowing Crates Containing Tribar Flooring Fall Within The Scope Of The Orders**

CBP's determination that farrowing crates containing tribar flooring fall within the scope of the order is supported by substantial evidence.  The scope of the Orders cover "certain steel grating, consisting of two or more pieces of steel, including load-bearing pieces and cross pieces, joined by any assembly process, regardless of: (1) size or shape; (2) method of manufacture; (3) metallurgy (carbon, alloy, or stainless); (4) the profile of the bars; and (5) whether or not they are galvanized, painted, coated, clad or plated."  C.R. 1 at Att. 2, 3.

The descriptions of its product provided by Gaosai in response to CBP's RFI clearly establish that the tribar flooring falls within these parameters.  Gaosai described the production process for its "tribar flooring" as [                                                    ] C.R. 20 at CR000302.  Gaosai also provided images of the production process for the [                                                      ]:

[                                                                                                            ]

[                                                                                                     ]

*Id.*

In another attachment to its RFI, Gaosai described the production process for its "pig tri bar flooring" as [

] C.R. 43 at CR002159.  Gaosai explained that it next subjects the tribar to "hot dipped galvanizing" before packing the material.  *Id.*

Based on the descriptions and images provided by plaintiffs, their products consist of "two or more pieces of steel, including load- bearing pieces and cross pieces" which are "joined by *any assembly process*" and are thus covered by the Orders.  C.R. 1 at Att. 2, 3 (emphasis added).  Indeed, plaintiffs concede that tribar flooring is covered merchandise, but insist that the farrowing crates are "downstream products" that use "steel grating as an input" and are thus outside the scope of the order.  Pl. Br. at 12.  But CBP's determination that the tribar portions of the farrowing crates are subject merchandise is in accordance with law, and parallels Commerce's own scope determination: as CBP explained, "the scope does not include any exclusions that apply to the tribar floors."  C.R. 123 at CR004987.

Plaintiffs first assert that the Court owes no deference to CBP's determination that farrowing crates containing tribar steel flooring are within the scope of the order, because Commerce, not CBP, drafted the text of the order.  Pl. Br. at 7.  But plaintiffs ignore the plain language of the EAPA statute, which empowers CBP to make determinations as to whether "covered merchandise was entered into the customs territory of the United States through evasion."  19 U.S.C. § 1517(c)(1)(A).  First, the statute defines both "evasion" and "covered merchandise."  The statute defines evasion as:

> entering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

19 U.S.C. § 1517(a)(5)(A).

And "covered merchandise" is defined as "merchandise that is subject to … an antidumping duty order issued under section 1673e of this title; or … a countervailing duty order issued under section 1671e of this title."  19 U.S.C. § 1517(a)(5).  Thus, the statute contemplates that a precursor to a determination of evasion is the conclusion that merchandise is subject to an AD/CVD order.

Beyond this, the statute *explicitly contemplates* that CBP will make determinations as to whether merchandise is subject to an AD/CVD order, providing that, if CBP "receives an {evasion} allegation … and *is unable to determine whether the merchandise at issue is covered* merchandise, {CBP} shall … refer the matter to {Commerce} to determine whether the merchandise is covered merchandise pursuant to the authority of {Commerce} under subtitle IV…" 19 U.S.C. § 1517(b)(4)(A)-(B) (emphasis added).  The statute thus permits CBP to refer to Commerce where it is "unable" to make such determinations, indicating that CBP is otherwise permitted to make that determination on its own.  Indeed, this Court has previously recognized as much, finding that the "EAPA statute empowers {CBP} to … determine whether entries under an investigation are 'covered merchandise.'"  *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1350 (Ct. Int'l Trade 2021).

Moreover, while CBP determined that it need not rely on a scope determination from Commerce, Commerce nevertheless conducted one upon plaintiffs' request, *and reached the same conclusion as CBP*, finding that those products that incorporated steel grating are covered by the Orders.  Specifically, Commerce analyzed plaintiffs' three products: "(1) a farrowing flooring system that is partly made of a galvanized steel tribar truss floor and partly made of a ductile cast-iron floor; (2) a pig farrowing crate with the farrowing flooring system described in

item (1); and (3) a pig farrowing crate without flooring."  ECF No. 57-2 at RI000032.

Commerce ultimately determined that the first two items are covered by the Orders.

For the first item – "a farrowing flooring system that is partly made of a galvanized steel tribar truss floor and partly made of a ductile cast-iron floor" – Commerce analyzed the characteristics of the item and determined that "the steel grating does not lose its identity when supported by a truss and legs such that it is no longer subject steel grating."  *Id.* at RI000035. Commerce also acknowledged that the product is "a component of the tribar truss flooring system" and thus considered whether this "changes the merchandise's status as subject merchandise."  *Id.*  Commerce first considered "whether the subject and non-subject components of the" flooring system "should be analyzed together as a single unique product or analyzed separately as part of a 'mixed media' group of items," ultimately concluding that "{s}imply placing a section of cast-iron flooring between two tribar truss flooring sections to form a farrowing flooring system (the cast-iron flooring is not fixed to the tribar truss flooring) does not change the fact that the tribar truss floor and cast-iron floor are unique products."  *Id.* at RI000035-36.

Commerce thus considered the flooring system to be "mixed media" and "separately analyzed the tribar truss flooring component and the cast-iron flooring component."  *Id.* at RI000036.  Commerce continued to find that the item falls within the scope of the Orders because "the physical characteristics of the steel decking in the tribar truss flooring are consistent with the physical characteristics of subject steel grating" and "adding trusses and legs to support the steel grating does not change this fact."  *Id.*  Moreover, Commerce explained that "the Petition" made it clear "that subject steel grating can function as flooring" and "the language of the scope of the order and the (k)(l) sources do not exclude the steel grating decking from the

order by virtue of its inclusion in a larger flooring system." *Id.* Commerce thus found that plaintiff's "Farrowing Flooring System (with a tribar truss floor)" is covered merchandise.

As for the next product, "Pig Farrowing Crate with a Farrowing Flooring System," – *i.e.* the same product described above, but included in a larger "Pig Farrowing Crate" system – Commerce similarly found that it is covered by the Orders. *Id.* at RI000036. Commerce first explained that the Orders are silent as to whether subject merchandise included as part of a larger product remains within scope. *Id.* Commerce thus considered whether a "mixed media" analysis would be appropriate (versus analyzing the product as a "single unique product"), concluding that the larger "Pig Farrowing Crate" does not constitute a single, unique product. *Id.* at RI000037. Commerce found as much because the flooring system "can be sold separately from the rest of the pig farrowing crate," and the flooring system "is not permanently attached to the rest of the pig farrowing crate" but rather "the other sections of the crate may simply rest on top of the farrowing flooring system." *Id.* Commerce also cited Gaosai's questionnaire response explaining that "{w}hether the farrowing flooring system is sold with, or without, the rest of the pig farrowing crate, the tribar truss flooring and the cast-iron flooring are listed {} separately on the invoice that is part of the entry package for Customs purposes." *Id.* (internal quotations omitted). Finally, Commerce cited the fact that "there is a separate section for pig floor slats in Gaosai's brochure that contains various flooring options, including tribar truss flooring, cast-iron flooring, and plastic flooring." *Id.* Thus, Commerce concluded, "the farrowing flooring system retains its own individual character, even when combined with the rest of the pig farrowing crate, such that it can be viewed as a unique product in its own right." *Id.*

Having determined that a "mixed media" analysis is appropriate, Commerce applied the Federal Circuit's guidance for a mixed media analysis provided in *Mid Continent*. *Id.*; *see also*

*Star Pipe Prod. v. United States,* 981 F.3d 1067 (Fed. Cir. 2020).  Because "the component part of the larger product is itself covered by the scope of" the Orders and the Orders are silent as to the effect of inclusion in a larger product, Commerce examined the "k(1)" sources – reference to 19 C.F.R. § 351.225(k)(1) – to determine whether steel grating included in a larger crate system is covered by the Orders.  *Id.*  First, the Petition explained the various uses for steel grating – including "permanent and temporary pedestrian walkways, mezzanines, {and} catwalks" and decking and supports for heavy duty applications including vehicle bridges, freight car flooring, {and} drainage pit covers…" –  establishing, as Commerce found, that "it is not unusual to find subject steel grating incorporated as one part of a larger product or structure and often used as flooring." *Id.* at RI000038.  Given this, and the fact that none of the other k(1) sources spoke to inclusion of the CSG in a larger product, Commerce applied a "presumption that the component part is subject to the order" concluding that the "steel grating decking in the tribar truss flooring {is} subject to the Steel Grating Orders even when it is sold with a pig farrowing crate." *Id.*

Finally, Commerce examined "Pig Farrowing Crates without Flooring," finding that, because this product is sold without any steel components that consist of the characteristics set forth in the Orders, that product is not within the scope of those Orders.  *Id.* at RI000039.

Commerce's scope determination thus confirmed what CBP found: plaintiffs' products containing steel grating components are covered by the scope of the Orders and, thus, plaintiffs failed to pay applicable duties when the products entered the United States and evasion occurred. ECF No. 52.

## II.  The EAPA Statute Does Not Require A Finding Of Intent

Plaintiffs next argue that, even if their steel grating is covered merchandise, CBP nevertheless erred in finding evasion because "the plain meaning of the terms 'false' material

statement and material 'omission' requires some degree of culpability before CBP may determine that an importer engaged in evasion." ECF No. 44 at 22 (cleaned up). Plaintiffs cite this Court's recent decision in *Diamond Tools* for the proposition that CBP must establish that plaintiffs were aware that they were violating law before it can make a finding of evasion. *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1355 (Ct. Int'l Trade 2021).

Plaintiffs' reliance on *Diamond Tools* is misplaced. In *Diamond Tools*, CBP determined that certain "diamond sawblades and parts thereof" from China had been entered by means of evasion. 545 F. Supp. 3d at 1329. In response to the finding, the importer alleged that, though it sources certain components from China, the sawblades were assembled in Thailand, and the order "did not address expressly whether 'covered merchandise' included diamond sawblades that resulted from the joining of subject components in Thailand." *Id.* 1330. CBP referred the question to Commerce, which merged the referral with a circumvention inquiry considering the same issue. *Id.* Commerce ultimately found that diamond sawblades composed of Chinese components but assembled in Thailand did circumvent the applicable AD/CVD order, and CBP – relying on that conclusion – found evasion. *Id.*

The Court held that CBP's determination was not based on substantial evidence because, during the 2006 investigation into diamond sawblades and until the anti-circumvention order (effective December 1, 2017), Commerce's position had been that "the country of origin should be determined by the location of where the segments are joined to the core." *Id.* at 1352. Thus, the Court reasoned, CBP's determination that the plaintiff had made a material omission – *i.e.* failing to indicate that some of its merchandise contained components of Chinese origin – was not supported by substantial evidence because "{g}iven Commerce's clearly stated conclusion" that country of origin is determined by assembly location, the plaintiff "did not make a material

and false statement by importing the diamond sawblades as Thai-origin because such a statement was not 'erroneous', 'untrue' or 'deceitful'" based on Commerce's position prior to the anti-circumvention order issued during the investigation. *Id.*

The Court thus did not – as plaintiffs imply here – conclude that CBP must establish some level of intent before making an evasion determination. Pl. Br. at 22-23. Rather, the Court found that under the circumstances of that case – with Commerce stating that the country of assembly is the country of origin for AD/CVD purposes – CBP's determination that doing otherwise was "material" and "false" was not supported by substantial evidence. The same is not true here. The Orders were issued in 2010 and plaintiffs point to *no* contradictory guidance from either CBP or Commerce as to their application, as in *Diamond Tools;* indeed, as set forth above, the initial petition *contemplated flooring uses for steel grating*. ECF No. 57-2 at RI000037. Moreover, *plaintiffs concede* that their products contain steel grating and merely assert a legal argument that the end product is so changed that the Orders should not apply. *Diamond Tools* is inapposite.

Moreover, reading an intent requirement into the EAPA statute would violate principles of law applicable to all AD/CVD proceedings. Both this Court and the Federal Circuit have declined to read an intent requirement into AD/CVD law for a simple reason: CBP and Commerce do not have subpoena power or otherwise possess the ability or resources to conduct a full-scale criminal-like investigation into alleged wrongdoing by an importer. *See, e.g., Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1383 (Fed. Cir. 2003) ("While intentional conduct, such as deliberate concealment or inaccurate reporting, surely evinces a failure to cooperate, the statute does not contain an intent element … {t}he statutory trigger for Commerce's consideration of an adverse inference is simply a failure to cooperate to the best of respondent's

ability, regardless of motivation or intent.")  As a result, the agencies must rely on the limited

information that is provided by importers and, in some instances, gathered at verification.  Given

Commerce's and CBP's reliance on what a foreign producer chooses to provide, it is unclear

how – absent a concession or error on the part of an importer – *any* finding of intent could ever

be made.  Moreover, when Congress intends for the motivations behind a party's actions to

impact the penalty for improper importation, it says as much in the statutory language: maximum

penalties under 19 U.S.C. § 1592 shift depending on whether an act was taken by "fraud, gross

negligence, or negligence," or the extent to which a party was aware of its illegal behavior.[4]

Plaintiffs next assert that CBP's evasion determination is not supported by substantial

evidence because "any scope issue in this case is merely an honest, good faith disagreement

between the Plaintiffs and CBP, not 'evasion.'"  ECF No. 44 at 25.  But this could be the case for

*every* scope determination where a plaintiff can mount a colorable legal argument that their

product should be excluded from the scope, permitting an importer to avoid an evasion

determination in any instance where the scope of an order is at issue.  Such a construction is

contrary to the EAPA statute, which explicitly contemplates that CBP may either interpret an

order or refer a matter to Commerce for a scope ruling and yet, can ultimately still make a

finding of evasion in that circumstance.  19 U.S.C. § 1517.  If Congress intended that no evasion

determination can be made where there is a "disagreement" between the importer and the

Government as to the scope of an order, then it would not have included the mechanism

permitting CBP to either interpret an order or refer it to Commerce (the natural precursor to

which would be a "disagreement" about the scope of the relative order).

---

[4] *See* Appendix B to 19 C.F.R. § 171 for CBP's definitions of "Degrees of Culpability
Under Section 592."

Plaintiffs rely on *Stein Industries* and *Trendium Pool Products* for the proposition that "the scope of an AD/CVD order does not automatically include downstream products," and, as a result, CBP's finding of evasion is flawed, notwithstanding Commerce's parallel conclusion. ECF No. 44 at 16. As an initial matter, both cases speak to this Court's review of a scope ruling under § 1516a; as set forth in greater detail below, the *substance* of Commerce's actual scope ruling is not before this Court because § 1517 does not contemplate such review, and plaintiffs could have – but elected not to – appeal Commerce's scope ruling under § 1516a.

Moreover, *Stein Industries* involved a situation where the product at issue had physical characteristics not explicitly contemplated by the relevant order, yet Commerce relied on a physical description not found in the order nor the k(1) sources to support its ruling. *Stein Indus. Inc. v. United States*, 365 F. Supp. 3d 1364, 1371 (Ct. Int'l Trade 2019) ("Defendant's assertion that the scope requires products to exhibit a rectangular cross-section 'in most parts' is simply a post hoc attempt to interpret the scope language, using language that does not appear in the scope, which is impermissible.") Here, plaintiffs do not assert that the tri-bar steel portions of their products are physically distinct from the description in the Order; rather, they allege that the tri-bar is included in a downstream product that serves to except it from the Orders. ECF No. 44 at 13. As Commerce explained in its scope determination, "in Stein Industries, the {court} stated that Commerce failed to address the argument that the downstream merchandise at issue was outside of the scope as it lacked a key characteristic in the physical description of the subject merchandise…here … the steel decking component of the tribar truss flooring system continues to meet the physical description of subject steel grating." ECF No. 57-2 at RI000038.

Plaintiffs' reliance on *Trendium Pool Products* similarly fails. In that case, the product at issue – corrosive resistant steel (CORE) – was further processing to be included in walls for pool

products.  *Trendium Pool Prod., Inc. v. United States*, 399 F. Supp. 3d 1335, 1344 (Ct. Int'l

Trade 2019).  Specifically, the CORE was "corrugated" a further process not contemplated by

the scope of the order.  *Id.*  The Court thus concluded that " Trendium's substantial processing,

{} creates a finished product fit only for use in Trendium's pools."  *Id.*  Moreover, the Court

found that pools "are a product that is absent from the plain language of the Order and not

considered in the record as within the scope of the Order."  *Id.*  The same is not true here.  First,

the tri-bar components of the flooring systems – plaintiffs appear to concede – fall within the

scope of the Orders and plaintiffs have never argued that they are subjected to any further

processing.  Indeed, as Commerce's scope determination pointed out, the tri-bar components are

not even attached to the wider flooring system; they simply rest upon the cast-iron flooring.  ECF

No. 57-2 at RI0000346 ("the cast-iron flooring is not fixed to the tribar truss flooring.")

Moreover, unlike in *Trendium Pool Products*, the use here – flooring – was explicitly

contemplated by the petition.  ECF No. 57-2 at RI000037.

　　　Moreover, neither *Stein Industries* nor *Trendium Pool Products* alters the Federal

Circuit's holding in *King Supply Co., LLC v. United States*, 674 F.3d 1343 (Fed. Cir. 2012).  In

*King Supply*, the Federal Circuit considered Commerce's determination that the plaintiff's butt-

weld pipe fittings (BWPF) were subject to an antidumping order on BWPF from China.

Relying on language in the order that subject merchandise is "used to join sections in piping

systems…," King argued that its imports were excluded from that order's scope because they

were used for handrails, fencing, and guardrails but not "piping systems."   However, for a

number of reasons, including the fact that King's products were physically identical to the

products described in the scope language (*i.e.,* "carbon steel butt-weld pipe fittings, having an

inside diameter of less than 14 inches, imported in either finished or unfinished form"),

Commerce determined that King's BWPF imports were subject to the order.  In upholding

Commerce's determination, the Federal Circuit held that the scope language contained no clear

exclusionary language with respect to end-use restrictions (as King had argued) and that because

"King's products undisputedly satisf{ied} the physical description of the products…{in the} AD

Order," Commerce's determination was reasonable and based on substantial record evidence.

*King Supply* at 1349-1350.  The same it true here: the tri-bar portions of plaintiffs' products

unquestionably meet the physical characteristics in the Orders, are not further processed, and the

Orders contain no end-use restriction.

As Commerce's scope ruling confirms, CBP correctly determined that plaintiffs'

products are within the scope of the Orders, and CBP's ultimate determination that evasion

occurred is supported by substantial evidence.

### III.        CBP Does Not Have The Authority To Undertake Judicial Review Of Commerce's Scope Determination

Plaintiffs next assert that, in order to rely on Commerce's scope determination in support

of its evasion determination, CBP must "must justify its finding that Plaintiffs' products are

'covered merchandise,' applying the same legal framework that the Court would use in direct

review of a scope determination by Commerce."  ECF No. 60 at 5.  Plaintiffs seek to grant CBP

authority that it does not possess and subject a determination by Commerce to judicial review in

a manner not contemplated by statute.  Plaintiffs' assertions defy logic and should be rejected.

First, CBP does not have the authority – or the expertise – to "apply{} the same legal

framework that the Court would use" in determining whether to rely upon a scope determination

issued by Commerce.  *Id.*  As CBP explained in the remand redetermination:

> It is well established that CBP plays a 'ministerial' role in enforcing
> antidumping and countervailing duty order-related determinations issued
> by Commerce.  CBP's general role is to follow Commerce's instructions

> in collecting deposits of estimated duties and in assessing antidumping and countervailing duties, together with interest, at the time of liquidation. However, 'Customs, incident to its ministerial function of fixing the amount of duties chargeable, must make factual findings to determine what the merchandise is, and whether it is described in an order and must decide whether to apply the order to the merchandise.'

ECF No. 52 at 4 (quoting *LDA Incorporado v. United States*, 79 F. Supp. 3d 1331, 1339 (Ct. Int'l Trade 2015)) (internal quotations omitted).

Thus, as CBP explained, it plays a "ministerial" role when it comes to implementing instructions received from Commerce, though inherent in these "ministerial functions" is the ability to make certain factual findings as to which entries are subject to an AD/CVD order. As plaintiffs acknowledge, the EAPA statute contemplates as much, giving CBP leeway to make a determination that a product is covered by an order without referring the matter to Commerce. 19 U.S.C. § 1517(b)(4). However, it does not follow that CBP – by virtue of citing to a Commerce scope ruling in reaching an evasion determination – supplants this Court and becomes a judicial body able to review Commerce's determination. Notably, plaintiffs cite neither caselaw nor statutory language to support their novel assertion.

Plaintiffs' allegations – though illogical – do invite a question that, to our knowledge, this Court has not yet addressed: what role does a scope ruling by Commerce play in this Court's review of an evasion determination that relies on that scope ruling? Plaintiffs seem to believe the scope ruling is something CBP can either take or leave, asserting that "there is nothing in the EAPA statute or CBP's regulations that requires CBP to follow Commerce's scope determination{} when CBP makes its EAPA determination." ECF No. 60 at 5. We submit that, to the contrary, given Commerce's expertise and statutory directive, CBP cannot simply elect to disregard a scope ruling on the very merchandise at issue in an evasion investigation. Rather, where – as here – Commerce has made a scope ruling and that ruling has not been appealed

under § 1516a, the question of whether merchandise subject to an evasion investigation is covered by an AD/CVD order has been answered by Commerce.  Thus, when this Court looks to review whether CBP's ultimate evasion determination is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law", one element of that determination – whether certain merchandise is covered by an order, and thus its entry may have evaded duties – has been definitively addressed by the agency with the expertise and authority to do so: Commerce.

Thus, this Court should disregard plaintiffs' attempt to have the substance of Commerce's scope ruling reviewed in this proceeding.  This is particularly true because, as plaintiffs acknowledge, they could have appealed, but chose not to appeal, Commerce's scope determination under 19 U.S.C. § 1516a.  ECF No. 60 at 9 ("Although *Plaintiffs could have challenged*, under Section 1516a, Commerce's determination as to 'whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order,'…"); *see also* ECF No. 60 at 6.  If the statutory scheme operated as plaintiffs advocate, a single scope ruling could be subjected to judicial review in multiple circumstances – appealed under § 1516a, subjected to this Court's review framework by CBP, and then (presumably) subjected to that framework *again* as part of an appeal of an evasion determination – potentially resulting in conflicting holdings.  With § 1517 limiting this Court's review to whether CBP's evasion determination is arbitrary, capricious, or not in accordance with the law, and a statutory provision that – plaintiffs concede – would allow them to challenge a scope ruling before this Court, plaintiffs' assertions fail.

**IV.      CBP's Determination That Certain Entries Contain Subject Merchandise Is Beyond The Scope Of This Action**

Plaintiffs finally argue that, even assuming CBP's evasion determination is supported by substantial evidence, CBP has suspended liquidation and assigned cash deposit rates in an overbroad manner, including to some entries which – plaintiffs insist – contain no subject steel grating.  ECF No. 44 at 34-38.  However, because plaintiffs have realized no injury by simply paying cash deposit rates, the statute does not contemplate this Court reviewing *which* specific entries are subject to interim measures or an evasion determination, and plaintiffs have another avenue to appeal any future application of duty rates with which they disagree, plaintiffs' challenge is beyond the scope of this action.  As CBP explained in the remand redetermination, "{t}he extent to which entry line items are subject to this finding is outside the scope of the EAPA investigatory and administrative review processes and will be determined at the time final duties, taxes, and fees are assessed on those entries."  ECF No. 52 at 5.

First, per statute, this Court is reviewing CBP's *determination that evasion occurred* – not the final duty rates applied to a given entry at liquidation (which has not yet occurred).  As the statute provides, "a person determined to have entered such covered merchandise through evasion or an interested party that filed an allegation {} may seek judicial review *of the determination under subsection (c)* and the review under subsection (f) in the United States Court of International Trade to determine whether the determination and review is conducted in accordance with subsections (c) and (f)."  19 U.S.C. § 1517(g) (emphasis added).  Subsections (c) and (f) of § 1517 refer to CBP's "Determination of Evasion" and the *de novo* review by R&R, respectively – *not* the eventual application of a duty rate to a given entry at liquidation.  19 U.S.C. § 1517(c),(f).

The actual application of a duty rate based on a determination of evasion is contemplated by subsection (d) of § 1517.  That subsection, entitled "Effect Of Determinations," provides that CBP "shall" suspend or continue to suspend the liquidation of those entries "that are subject to the determination and that enter on or after the date of the initiation of the investigation" and "that are subject to the determination and that entered before the date of the initiation of the investigation."  19 U.S.C. § 1517(d)(1)(A)-(B).  CBP next "notif{ies} the administering authority[5] of the determination and request{s} that the administering authority {} identify the applicable antidumping or countervailing duty assessment rates for entries" and then "require{s} the posting of cash deposits and assess{es} duties on {the} entries."  *Id.* at (C)-(D).  And, of course, § 1517(g) does not provide for this Court's review of CBP's actions under subsection (d).  Because parties commencing an EAPA action in this Court typically seek an injunction against the liquidation of the entries during the pendency of judicial review,[6] the assessment of duties thus occurs *after* any judicial appeal.  The review of those duties as applied to particular entries is thus beyond the scope of this Court's review under § 1517(g).

Of course, plaintiffs have recourse if they believe that the results of the evasion determination have been incorrectly applied to an entry that does not include subject merchandise: they can submit argument and documentation to CBP before the duties are assigned (but after review of the actual evasion determination in this Court are completed), protest CBP's assignment of duties under 19 U.S.C. § 1514, and, if necessary, appeal the results of that protest to this Court.  Specifically, statute provides that a protest may be filed before CBP to contest "any clerical error, mistake of fact, or other inadvertence … adverse to the importer, in

---

[5] Pursuant to 19 U.S.C. § 1677(1), the "administering authority" is Commerce.

[6] Plaintiffs did so here.  *See* ECF No. 12 (Court order entering preliminary injunction).

any entry, liquidation, or reliquidation, and, decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to…the classification and rate and amount of duties chargeable…"  19 U.S.C. § 1514(a).[7]

The same provision contemplates that appeal of a denied protest may be made to this Court under 28 U.S.C. § 2636.  And, during proceedings before CBP, plaintiffs may submit written argument and documentation to support their position that a given entry does not contain subject merchandise and thus should not be subject to the duty rates resulting from the evasion determination.  *See* 19 C.F.R. § 174.28 ("…a reviewing officer may consider alternative claims and additional grounds or arguments submitted in writing by the protesting party with respect to any decision which is the subject of a valid protest at any time prior to disposition of the protest…"); *see also* 19 U.S.C. § 1484(a)(1)(B) (describing information importers can provide to CBP to substantiate a requested duty rate).

Moreover, that the Court cannot review which specific entries CBP has suspended and assigned cash deposits for is consistent with the well-settled legal principle that "paying deposits pending court review is an ordinary consequence of the statutory scheme."  *Valeo N. Am., Inc. v. United States*, 277 F. Supp. 3d 1361, 1366 (Ct. Int'l Trade 2017) (quoting *MacMillan Bloedel Ltd. v. United States*, 16 CIT 331, 333 (1992)); *see also Shanghai Tainai Bearing Co. v. United States*, 582 F. Supp. 3d 1299, 1310 (Ct. Int'l Trade 2022) ("America's retroactive system, financially inconvenient as it may be, is the course adopted by Congress and committed to Commerce and Customs to enforce.").

---

[7] A "mistake of fact" appears to be precisely what plaintiffs assert – that CBP has erred in determining that certain entries contain CSG.  ECF No. 44 at 34-38.

Finally, though outside the scope of the current review before this Court, CBP took steps to reasonably tailor the entries for which it has required higher cash deposit rates.  Specifically, the "interim measures" taken by CBP – *i.e.* suspending liquidation and requiring a single-transaction bond or cash deposit "to protect the revenue of the United States" – are taken when, based on the allegation and initiation of an investigation, "there is a reasonable suspicion that such covered merchandise was entered into the customs territory of the United States through evasion." 19 U.S.C. § 1517(e).  Put another way, the determination to apply cash deposits is based on the *initiation* of the investigation, not the results of it.  Here, Hog Slat's allegation – resulting in the initiation of this investigation – asserted that *all* of plaintiffs' entries contained subject merchandise.  *See* C.R. 1 at CR000010 (Hog Slat allegation).  Notwithstanding this, CBP tailored its actual evasion determination to only those entries for which record evidence indicated, in CBP's estimation, the inclusion of subject merchandise.  C.D. 123 at CR004986 (finding that only [     ] of [     ] of Ikadan's entries and [     ] of [     ] of Gaosai's entries appeared to contain subject merchandise).  And, as set forth above, to the extent plaintiffs believe that CBP has made a "mistake of fact" as to certain entries subject to the evasion determination, they may assert as much to CBP – with the option to eventually seek judicial review – once this Court's review of the evasion determination itself is complete.

Because plaintiffs ask the Court to review an action that is not an injury (the assignment of cash deposit rates) and that is not contemplated by the judicial review provision in § 1517(g), but that plaintiffs will have an opportunity to contest at a later date, this Court should disregard plaintiffs' assertions concerning *which* specific entries should be subject to the overall evasion determination.

## **CONCLUSION**

For these reasons, we respectfully request that the Court sustain CBP's evasion

determination as supported by substantial evidence, not arbitrary and capricious, and otherwise

in accordance with law.


Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
/s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Director

OF COUNSEL:                          /s/ Kelly A. Krystyniak
SHAE WEATHERSBEE                     KELLY A. KRYSTYNIAK
Attorney                             Trial Attorney
U.S. Customs and Border Protection   Department of Justice
Office of the Chief Counsel          Civil Division
                                     Commercial Litigation Branch
                                     P.O. Box 480
                                     Ben Franklin Station
                                     Washington D.C. 20044
                                     Tel: (202) 307-1063
                                     Email: kelly.a.krystyniak@usdoj.gov

December 23, 2022                    *Attorneys for Defendant United States*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this brief complies with the Court's type-volume limitation rules.  According to the word count calculated by the word processing system with which the brief was prepared, the public version of the brief contains a total of 9,830 words.

<u>s/ Kelly A. Krystyniak</u>

December 23, 2022