## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE LEO M. GORDON, SENIOR JUDGE

|  |  |
|---|---|
| IKADAN SYSTEM USA, INC., and WEIHAI GAOSAI METAL PRODUCT CO., LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>HOG SLAT, INC.<br><br>Defendant-Intervenor. | **Court No. 21-00592**<br><br>PUBLIC VERSION<br>Business Proprietary Information<br>Removed from Brackets [ ] at Pages 8, 9, 16, and 21. |

## <u>DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

Gregory S. McCue
Zachary Simmons
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: (202) 429-6421
Email: gmccue@steptoe.com

*Counsel to Hog Slat, Inc.*

January 20, 2023

## <u>TABLE OF CONTENTS</u>

I.  Rule 56.2 Statement ................................................................................................ 1

    A.  Administrative Determination Under Review ...................................................... 1

    B.  Questions Presented ............................................................................................ 2

II.  Argument ............................................................................................................... 2

    A.  Statement of Facts Relevant to Argument .......................................................... 2

    B.  Standard of Review ............................................................................................ 11

    C.  CBP's Determination that the Importers' Tribar Flooring Constitutes Covered
        Merchandise is Lawful and Based on Substantial Evidence ............................... 12

        1.  CBP is Authorized Under the EAPA Statute to Determine Whether a
               Product is Covered Merchandise ................................................................. 13

        2.  CBP's Determination that the Importers' Tribar Flooring is Covered
               Merchandise is Supported by Substantial Evidence ................................... 15

        3.  The Cases Cited by the Importers do not Undermine CBP's Covered
               Merchandise Determination ........................................................................ 17

        4.  Federal Circuit Decisions Support CBP's Covered Merchandise
               Determination ............................................................................................. 20

        5.  CBP Was Not Required to Rely on the Sources Listed in Commerce's
               Regulations in Making its Determination .................................................... 21

    D.  CBP Lawfully Found Evasion ........................................................................... 22

    E.  CBP Lawfully Suspended Liquidation and Required AD/CVD Cash Deposits on
        the Importers' Entries ....................................................................................... 26

    F.  CBP's Remand Redetermination is Consistent with the Court's Remand Order
        and Supports CBP's Evasion Determination ..................................................... 27

III.  Conclusion ........................................................................................................... 30

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*All One God Faith, Inc. v. United States*,
   589 F. Supp. 3d 1238 (Ct. Int'l Trade August 18, 2022)........................................27

*Bourgault Indus., Ltd. v. United States*,
   473 F. Supp. 3d 1369 (Ct. Int'l Trade October 13, 2020)......................................15

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*
   467 U.S. 837 (1984)..............................................................................................12

*Consol. Edison Co. of N.Y. v. NLRB*,
   305 U.S. 197 (1938)..............................................................................................12

*Diamond Tools Tech. LLC v. United States*,
   545 F. Supp. 3d 1324 (Ct. Int'l Trade October 29, 2021)..........................13, 24, 25

*Fedmet Res. Corp. v. United States*,
   755 F.3d 912 (Fed. Cir. 2014)...............................................................................15

*King Supply Co., LLC v. United States*,
   674 F.3d 1343 (Fed. Cir. 2012).......................................................................15, 20

*Meridian Prod., LLC v. United States*,
   851 F.3d 1375 (Fed. Cir. 2017).............................................................................15

*Meridian Prod. v. United States*,
   890 F.3d 1272 (Fed. Cir. 2018).............................................................................22

*Mitsubishi Electronics America, Inc. v. United States*,
   44 F. 3d 973, 977 (Fed. Cir. 1994)........................................................................29

*Nippon Steel Corp. v. United States*,
   458 F.3d 1345 (Fed. Cir. 2006).............................................................................12

*PSC VSMPO-Avisma Corp. v. United States*,
   688 F.3d 751 (Fed. Cir. 2012)...............................................................................29

*SKF USA Inc. v. United States*,
   263 F.3d 1369 (Fed. Cir. 2001).............................................................................11

*Star Fruits S.N.C. v. United States*,
   393 F.3d 1277, 1281 (Fed. Cir. 2005)...................................................................12

*Star Pipe Prod. v. United States,*
    981 F.3d 1067 (Fed. Cir. 2020)..................................................................21

*Stein Industries, Inc. v. United States,*
    365 F. Supp. 3d 1364 (Ct. Int'l Trade March 5, 2019)................................17, 18, 20

*Timken Co. v. United States,*
    354 F.3d 1334 (Fed. Cir. 2004)..................................................................12

*Torrington v. United States,*
    82 F.3d 1039, 1044 (Fed. Cir. 1996)..........................................................12

*Trendium Pool Prod., Inc. v. United States,*
    399 F. Supp. 3d 1335 (Ct. Int'l Trade August 20, 2019).....................17, 18, 19, 20

*WelCom Prods., Inc. v. United States,*
    865 F. Supp. 2d 1340 (Ct. Int'l Trade September 27, 2012) ..................................12

*Wheatland Tube Co. v. United States,*
    161 F.3d 1365 (Fed. Cir. 1998)..................................................................11

**Statutes**

19 U.S.C. § 1514(c) ..........................................................................................27

19 U.S.C. § 1517............................................................................................2

19 U.S.C. § 1517(a)(5)......................................................................................13

19 U.S.C. § 1517(a)(5)(A)............................................................................8, 9, 13, 23

19 U.S.C. § 1517(b).........................................................................................23

19 U.S.C. § 1517(b)(4)(A)-(B) .......................................................................14, 29

19 U.S.C. § 1517(c)........................................................................................11

19 U.S.C. § 1517(c)(1)(A) ...........................................................................11, 13, 14

19 U.S.C. § 1517(d).....................................................................................9, 26

19 U.S.C. § 1517(e)(1)-(3).................................................................................4

19 U.S.C. § 1517(f).........................................................................................11

19 U.S.C. § 1517(g)(2) .....................................................................................11

Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125
    Title IV Stat. 122 (2016)..................................................................................2

**Regulations**

19 C.F.R. § 351.225(k)(1)-(k)(2) ............................................................................15, 21

**Administrative Determinations**

*Certain Steel Grating from China,*
    Investigation Nos. 701-TA-465 and 731-TA-1161 (Final) (July 2010), USITC
    Pub. 4168 ...........................................................................................................26

*Certain Steel Grating from the People's Republic of China Antidumping Duty*
    *Order*, 75 Fed. Reg. 43,143 (Dep't of Commerce July 23, 2010) ................................. *passim*

*Certain Steel Grating from the People's Republic of China: Countervailing Duty*
    *Order*, 75 Fed. Reg. 43,144 (Dep't of Commerce July 23, 2010) ................................. *passim*

Certain Steel Grating from the People's Republic of China: Scope Ruling on Pig
    Farrowing Crates and Farrowing Floor Systems (May 11, 2021) .............................4, 6, 7, 17

PUBLIC VERSION

On behalf of Defendant-Intervenor Hog Slat, Inc. ("Hog Slat"), we submit this response to the opening brief, as supplemented, of Plaintiffs Ikadan System USA, Inc. ("Ikadan") and Weihei Gaosai Metal Product Co., Ltd. ("Gaosai") (collectively, "Plaintiffs" or "Importers"). *See* Memorandum of Points and Authorities of Plaintiffs in Support of Rule 56.2 Motion for Judgment on the Agency Record (April 22, 2022) ("Plaintiffs' Brief"), ECF No. 44; Plaintiffs' Rule 56.2 Supplemental Brief (November 4, 2022) ("Plaintiffs' Supplemental Brief"), ECF No. 60.

Hog Slat agrees with and hereby adopts the arguments made by the United States in its December 23, 2022 response brief. *See* United States Response Brief (December 23, 2022) ("Defendant's Brief"), ECF No. 64.  In this brief, Hog Slat provides additional factual points and legal argument in support of the determinations by U.S. Customs and Border Protection ("CBP").

## I.   Rule 56.2 Statement

### A.   Administrative Determination Under Review

This appeal concerns CBP's administrative review of the final determination as to evasion, which affirmed the agency's determination that Plaintiffs' tribar flooring imports are evading applicable anti-dumping and countervailing duties ("AD/CVD") on certain steel grating from the People's Republic of China ("China").  *See* Administrative Review Determination (October 26, 2021), P.R. 80, affirming Final Evasion Determination (June 21, 2021), C.R. 123, P.R. 46; *see also Certain Steel Grating from the People's Republic of China Antidumping Duty Order*, 75 Fed. Reg. 43,143 (Dep't of Commerce July 23, 2010) (A-570-947) ("AD Order") and *Certain Steel Grating from the People's Republic of China: Countervailing Duty Order*, 75 Fed. Reg. 43,144 (Dep't of Commerce July 23, 2010) (C-570-948) ("CVD Order") (collectively "AD/CVD orders").  This determination was adopted and supplemented by a voluntary remand

redetermination by CBP on October 3, 2022.  *See* Remand Redetermination for Enforce and

Protect Act ("EAPA") Consolidated Case Number 7474; *Certain Steel Grating from the People's*

*Republic of China: Antidumping Duty Order*, 75 Fed. Reg. 43,143 (July 23, 2010); and *Certain*

*Steel Grating from the People's Republic of China: Countervailing Duty Order*, 75 Fed. Reg.

43,144 (July 23, 2010); Ikadan System USA, Inc. and Weihai Gaosai Metal Product Co., Ltd.; 19

U.S.C. § 1517 (October 3, 2022) ("Remand Redetermination"), ECF No. 52.

### B.    Questions Presented

1.    Whether CBP's determination that the Importers' tribar flooring constitutes

covered merchandise is lawful and based on substantial evidence.

2.    Whether CBP lawfully determined that the Importers were engaged in evasion.

3.    Whether CBP lawfully suspended liquidation and required AD/CVD cash

deposits on the Importers' entries.

4.    Whether CBP's Remand Redetermination is consistent with the Court's remand

order and supports CBP's evasion determination.

## II.    <u>Argument</u>

### A.    Statement of Facts Relevant to Argument

On June 16, 2020, the Trade Remedy Law Enforcement Directorate of CBP's Office of

Trade initiated an investigation under Title IV of the Trade Facilitation and Trade Enforcement

Act of 2015 ("TFTEA"), Pub. L. No. 114-125, 130 Stat. 122 (2016), commonly referred to as the

"Enforce and Protect Act" or "EAPA," to determine whether Ikadan and Gaosai had entered

certain steel grating from China into the United States by means of evasion.  Initiation and

Interim Measures Notice (September 18, 2020), C.R. 14, P.R. 15.  The investigation was initiated

in response to allegations submitted by Hog Slat, which CBP determined "reasonably suggested

that Ikadan and importer Gaosai entered covered merchandise into the customs territory of the

PUBLIC VERSION

United States and may have evaded AD/CVD{s}." *Id.*; *see* Ikadan Allegation (March 27, 2020), C.R. 1-5, P.R. 1; Gaosai Allegation (April 29, 2020), C.R. 5-10, P.R. 2.  The allegations demonstrated that the tribar flooring entered into the United States by the Importers is subject to the AD/CVD orders on certain steel grating from China and that the Importers were likely evading applicable AD/CVDs on such entries through misclassification, transshipment, or other means.  Ikadan Allegation; Gaosai Allegation.

The allegations explained that the AD/CVD Orders' scope covers "certain steel grating, consisting of two or more pieces of steel, including load-bearing pieces and cross pieces, joined by any assembly process…" and that the Importers' tribar flooring satisfies this definition because it consists of two or more pieces of steel that are joined together by welding.  Ikadan Allegation at pp. 5-6; Gaosai Allegation at p. 6.  The allegations also identified language from the original investigation determination of the U.S. International Trade Commission ("ITC") which indicates that certain steel grating is "a downstream steel product {with} … 'bearing bars' that extend across the length and the 'crossbars' that transverse … the bearing bars to form a 'panel{,}' … designed to support and distribute the weight of objects," consistent with the design and function of the Importers' tribar flooring.  The same ITC determination included pictures of the subject merchandise which are similar to the Importers' tribar flooring.  Ikadan Allegation at pp. 6-7; Gaosai Allegation at p. 7.

With respect to the Importers' evasion of AD/CVDs, the allegations provided import data reasonably suggesting that Ikadan and Gaosai were incorrectly classifying tribar flooring imports (for example, as articles of plastic under subheading 3926.90, HTSUS), and failing to pay applicable AD/CVDs.  Under the scope of the AD/CVD orders, the Importers' tribar flooring should have been classified under subheading 7308.90.7000, HTSUS, which covers various

kinds of metal structures and parts thereof.  Ikadan Allegation at pp. 7-9; Gaosai Allegation at pp. 8-10.

On September 18, 2020, CBP determined to impose interim measures against Ikadan based on a reasonable suspicion of evasion.  Initiation and Interim Measures Notice (September 18, 2020), C.R. 14, P.R. 15.  This determination was based on Ikadan's response to CBP's request for information (Form CF-28) and a cargo exam, both of which indicated that Ikadan failed to correctly classify its tribar flooring imports and declare them as subject to the AD/CVD orders on certain steel grating from China.  *Id.* at pp. 4-7.  Pursuant to 19 U.S.C. § 1517(e)(1)-(3), CBP determined to:  suspend the liquidation of each unliquidated entry of covered merchandise entered since the initiation of the investigation; extend the period for liquidating each unliquidated entry of covered merchandise that entered before the initiation of the investigation; take such additional measures as necessary to protect the revenue of the United States (*e.g.*, requiring a single transaction bond or the posting of a cash deposit); and require live entry.  *Id.* at p. 7.  CBP did not impose interim measures against Gaosai.

On November 13, 2020, Gaosai submitted a scope ruling request to the U.S. Department of Commerce ("Commerce") covering tribar truss flooring (*i.e.*, tribar flooring).  CBP itself placed Gaosai's scope ruling request on the record of the EAPA investigation.  *See* P.R. 24.  In response to Gaosai's scope ruling request, Commerce determined that tribar flooring is subject to the AD/CVD orders on certain steel grating from China, but that other components of farrowing flooring systems and pig farrowing crates with which such flooring may be imported are not subject to the AD/CVD orders.  *See* Certain Steel Grating from the People's Republic of China: Scope Ruling on Pig Farrowing Crates and Farrowing Floor Systems (May 11, 2021) ("Gaosai Scope Ruling") at p. 1, Remand Document 7.  Commerce determined that the tribar truss

flooring matches the description of the AD/CVD orders' scope because "it is composed of parallel galvanized cut-to-length steel wire rods or round bars (tribar) connected by welded crossbars, while subject steel grating is described as 'two or more pieces of steel, including load-bearing pieces and cross pieces, joined by any assembly process.'" *Id.* at p. 9.  Commerce similarly determined that, like certain steel grating, which is made of pieces of steel "whether or not they are galvanized," the tribar truss flooring is "hot-dip galvanized." *Id.*  Importantly, Commerce determined that "{t}he fact that the tribar truss floor has additional components (the trusses), besides the steel grating, does not mean the … tribar truss floor is … a new product outside the scope of the orders." *Id.* at p. 10.  And, Commerce also determined that the tribar truss flooring is subject to the AD/CVD orders on certain steel grating from China even when included with other components to ultimately create a farrowing flooring system or pig farrowing crate (whereas those other components are themselves not subject to the AD/CVD orders). *Id.* at pp. 11-14.

With respect to farrowing flooring systems, Commerce determined that:  "the physical characteristics of the … tribar truss flooring are consistent with the physical characteristics of subject steel grating. … {A}dding trusses and legs to support the steel grating does not change this fact.  Moreover, the fact that the steel and cast-iron components are, as a whole, considered a flooring system does not mean that the steel grating component is no longer subject steel grating. … {T}he tribar truss flooring {is} reinforced steel grating that will function as a floor. The petitioners made it clear in the Petition that subject steel grating can function as flooring." *Id.* at p. 12.

With respect to pig farrowing crates, Commerce determined that:  "The petitioners explained in the Petition that subject certain steel grating (CSG) … is a downstream steel product

which has numerous uses and functions … CSG is used in a number of environments including permanent and temporary pedestrian walkways, mezzanines, catwalks, overhead sign platforms, fire escape platforms, railroad car stand platforms, stairways, and flooring. … Consequently, it is not unusual to find subject steel grating incorporated as one part of a larger product or structure and often used as flooring. … {T}the tribar truss flooring {is} subject to the Steel Grating Orders. Furthermore, the language of the Steel Grating Orders and the 19 C.F.R. § 351.225(k)(l) sources do not exclude subject steel grating from the orders by virtue of its inclusion in a larger product. Consequently, … {the} tribar truss flooring {is} subject to the Steel Grating Orders even when it is sold with a pig farrowing crate." *Id.* at p. 14.



Tribar Truss Flooring
Commerce Gaosai Scope
Ruling at p. 4

| | |
|---|---|
|  | Farrowing Flooring System Commerce Gaosai Scope Ruling at p. 9 |
|  | Pig Farrowing Crate Commerce Gaosai Scope Ruling at p. 3 |

On June 21, 2021, CBP issued its Final Evasion Determination.  C.R. 123, P.R. 46.  As a threshold matter, and consistent with the scope ruling by Commerce, CBP determined that the Importers' tribar flooring is covered merchandise subject to the AD/CVD orders on certain steel grating from China:

> After reviewing all the evidence on the record, CBP found that the tribar floors portion of the imported farrowing crate systems is covered merchandise.  Because CBP determined that the evidence on the record clearly demonstrated that the tribar floors properly fell within the scope of the AD/CVD orders, CBP was not required to make a scope referral to DOC in this investigation. CBP determined that the galvanized tribar floors fell within the scope of

the AD/CVD orders because the tribar floors are made with [                                        ], making it a product of two or more pieces of steel joined together by welding. The scope of the AD/CVD orders covers "certain steel grating, consisting of two or more pieces of steel, including load-bearing pieces and cross pieces, joined by any assembly process…;" thus, the tribar floors meet the scope definition.  Also, the scope does not include any exclusions that apply to the tribar floors.

The RFI responses show that tribar floors are an [                ] of the farrowing crate systems being imported into the United States and that the Importers regularly import tribar floors, listing them under the desqcription "parts for farrowing crates" rather than separately listing the tribar floors and declaring them as subject to the AD/CVD orders.  CBP entry data confirms this as well.  Thus, substantial evidence on the record indicates     that the Importers entered tribar floors, which is covered merchandise, into the customs territory of the United States through evasion.

*Id.* at p. 8.

CBP also determined that substantial evidence indicated that both Ikadan and Gaosai were evading applicable AD/CVDs on their tribar flooring imports.  *See* 19 U.S.C. § 1517(a)(5)(A) (defining evasion as "the entry of covered merchandise into the customs territory of the United States for consumption by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise").

For Ikadan, CBP determined that [   ] of [     ] entry lines reviewed [                        ] contained either farrowing crates or tribar flooring as the imported product listed on the commercial invoices.  CBP determined that "the image of a fully assembled farrowing crate unit and the [                                ], along with purchase order details submitted to the Manufacturer, clearly indicate that the tribar floors are part of the crate unit" and that "the RFIs

described the … production process as  requiring [          ] that consist of the tribar floors."

Based on this, CBP determined that "the [          ] must be imported to complete the

project as designed, since the project designed requires [          ]."  *Id.* at p. 7.

    For Gaosai, CBP determined that [    ] entry lines of [    ] entries reviewed contained

either farrowing crates or tribar flooring as the imported product listed on the commercial

invoices classified under 7308.90.9590, HTSUS.  CBP also determined that "the Manufacturer

indicated that all farrowing crates which the Importers approved of and imported were [

          ]."  *Id.*

    Because CBP determined that Ikadan and Gaosai entered tribar flooring into the United

States through evasion, CBP determined to:  suspend or continue to suspend the liquidation for

the entries imported by the Importers subject to the EAPA investigation; rate adjust and change

to type 03 all previously extended and all future entries subject to the EAPA investigation; and

evaluate the Importers' continuous bonds.  *Id.* at p. 9; *see also* 19 U.S.C. § 1517(d).

    On October 26, 2021, CBP issued its Administrative Review Determination which

affirmed, following a *de novo* review, CBP's Final Evasion Determination.  Administrative

Review Determination (October 26, 2021), P.R. 80.  In the Administrative Review

Determination, CBP affirmed its previous determination that the Importers' tribar flooring is

covered merchandise subject to the AD/CVD orders, and that a scope referral to Commerce was

not required since CBP was able to make this determination within its statutory authority.  *Id.* at

p. 9.  In addition, CBP affirmed its previous determination that the Importers' tribar flooring was

entered into the United States through evasion.  Specifically, CBP determined that "{b}oth of the

Importers acknowledge in their requests for administrative review that subject entries contained

tribar flooring" and that "{a} review of the administrative record and the Importers' requests for

administrative review clearly indicate that tribar floors were entered as type '01'."  CBP thus

determined that because "tribar floors are considered covered merchandise under the applicable

AD/CV duty orders, their entry during the period of investigation without proper declaration as

type '03' entries and payment of the AD/CV duties owed constitutes evasion under the EAPA

statute and implementing regulations."  *Id.* at p. 8.  Ikadan and Gaosai challenged the

Administrative Review Determination and Final Evasion Determination it affirmed by filing an

appeal with this Court.  *See* Complaint (November 23, 2021), ECF No. 2.  As noted above,

Plaintiffs' Brief was filed on April 22, 2022.  ECF No. 44.

Defendant United States filed a consent motion for voluntary remand on August 17,

2022.  Defendant's Motion for Voluntary Remand and to Stay Filing of Rule 56.2 Brief (August

17, 2022), ECF No. 50.  The limited purpose of the voluntary remand was for CBP to "consider

Commerce's {Gaosai} scope ruling on the record," which it had not done previously, and

"clarify and – if appropriate – correct its evasion determination in light of that ruling."  *Id.* at pp.

3-4.  The United States' motion neither identified nor conceded any error with respect to CBP's

underlying evasion determination.

On October 3, 2022, the United States filed the Remand Redetermination with the Court.

ECF No. 52.  As stated therein, "CBP requested a voluntary remand to allow {it} to consider and

analyze the {Gaosai Scope Ruling} made by {Commerce} … that certain products imported by

the Importers are subject to the {AD/CVD orders}."  Remand Redetermination at p. 2.  In its

Remand Redetermination, CBP determined, *inter alia*, that, "{a}lthough … input from

Commerce was not needed for CBP to factually find that the tribar flooring portions {of the

Importer's merchandise} are subject to the AD/CVD {o}rders, the {Gaosai} Scope Ruling

confirms these findings and has … been added to the administrative record."  *Id.* at p. 4.  Though

CBP took the additional step in its Remand Redetermination of formal citation to and reliance on Commerce's Gaosai Scope Ruling, the fundamental aspects of its underlying evasion determination remained the same. CBP continued to determine that "the Importers engaged in evasion by entering Chinese-origin CSG declared as type '01' entries, not subject to AD/CVD {o}rders, in their consumption entries. Such designation as type '01' at the time of entry was materially false in that it failed to indicate that the CSG was merchandise covered by the relevant AD and CVD {o}rders. The false designation also led to the non-collection of AD and CVD deposits." *Id*. at p. 5.

### B.  Standard of Review

The EAPA statute directs the Court to determine whether CBP's evasion determinations complied with the relevant statutory procedures under 19 U.S.C. § 1517(c) (investigations) and 19 U.S.C. § 1517(f) (administrative reviews) and "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1517(g)(2). Under 19 U.S.C. § 1517(c)(1)(A), CBP's evasion determination must be based on substantial evidence.

In review of the reasonableness of agency action, "{c}ourts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *Wheatland Tube Co. v. United States,* 161 F.3d 1365, 1369 (Fed. Cir. 1998). "{A}n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States,* 263 F.3d 1369, 1382 (Fed. Cir. 2001). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors."

*WelCom Prods., Inc. v. United States,* 865 F. Supp. 2d 1340, 1344 (Ct. Int'l Trade September 27,

2012) (citing *Star Fruits S.N.C. v. United States,* 393 F.3d 1277, 1281 (Fed. Cir. 2005)).

In determining whether an agency's statutory interpretation is in accordance with law, the

Court applies the two-step analysis established in *Chevron U.S.A., Inc. v. Natural Resources*

*Defense Council, Inc.* 467 U.S. 837, 842-843 (1984).  If the statute speaks to the precise question

at issue such that the intent of Congress is clear, the agency must give effect to this

unambiguously expressed intent.  If the statute is silent or the legislative intent is not clear, the

Court must determine whether the "agency's answer is based upon a permissible construction of

the statute." *Id.* at 843-844.  The court provides the agency deference on interpreting the statutes

the agency administers and has found that "{a}ny reasonable construction of the statute is a

permissible construction." *Timken Co. v. United States*, 354 F.3d 1334, 1342 (Fed. Cir. 2004),

citing *Torrington v. United States*, 82 F.3d 1039, 1044 (Fed. Cir. 1996).

Substantial evidence is defined as "more than a mere scintilla," as well as evidence that a

"reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y.*

*v. NLRB,* 305 U.S. 197, 229 (1938).  The Court will affirm the agency's determination "if it is

reasonable and supported by the record as a whole, even if some evidence detracts from {the}

conclusion." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (internal

quotation marks omitted).

### C.   CBP's Determination that the Importers' Tribar Flooring Constitutes Covered Merchandise is Lawful and Based on Substantial Evidence

A good portion of Plaintiffs' opening brief is dedicated to arguments concerning the

lawfulness of CBP's determination that tribar flooring is covered merchandise under the EAPA

statute.  Plaintiffs' Brief at pp. 2-21, 23-27.  These arguments boil down to two fundamental

questions:  (1) whether CBP is authorized under the EAPA statute to determine whether a

product is covered merchandise; and (2) whether CBP's determination in this case that the

Importers' tribar flooring constitutes covered merchandise is lawful and supported by substantial

evidence.  As demonstrated below, the answer to both questions is "yes."

> **1.**    **CBP is Authorized Under the EAPA Statute to Determine Whether a Product is Covered Merchandise**

Plaintiffs first argue that because there is no specific statutory provision that instructs

CBP *how* to interpret the scope of AD/CVD orders in EAPA investigations that CBP is not

authorized *at all* to make covered merchandise determinations in such investigations.  *Id.* at pp.

8-9.  This interpretation of the EAPA statute must fail.

The core purpose of the EAPA statute is to enable CBP to make determinations as to

whether "covered merchandise was entered into the customs territory of the United States

through evasion."  19 U.S.C. § 1517(c)(1)(A).  In providing CBP with this authority, the statute

defines clearly the meanings of both "evasion" and "covered merchandise."  "Evasion" is

defined as "entering covered merchandise into the customs territory of the United States by

means of any document or electronically transmitted data or information, written or oral

statement, or act that is material and false, or any omission that is material, and that results in any

cash deposit or other security or any amount of applicable antidumping or countervailing duties

being reduced or not being applied with respect to the merchandise."  19 U.S.C. § 1517(a)(5)(A).

"Covered merchandised" is defined as "merchandise that is subject to … an antidumping duty

order issued under section 1673e of this title; or … a countervailing duty order issued under

section 1671e of this title."  19 U.S.C. § 1517(a)(5).  Accordingly, the EAPA statute empowers

CBP to reach determinations both with respect to whether an article is "covered merchandise"

and whether such covered merchandise entered the United States through "evasion."  *See*

*Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1350 (Ct. Int'l Trade October

29, 2021) ("*Diamond Tools*") ("{t}he EAPA statute empowers Customs to investigate allegations of evasion and determine whether entries under an investigation are 'covered merchandise'").

With respect to determinations concerning covered merchandise, the EAPA statute provides CBP with two different avenues – either CBP can itself reach a determination concerning whether the product(s) at issue are covered merchandise *or* CBP can refer the question to Commerce.  Specifically, the EAPA statute provides that, "{i}f {CBP} receives an {evasion} allegation … and is unable to determine whether the merchandise at issue is covered merchandise, {CBP} shall … refer the matter to {Commerce} to determine whether the merchandise is covered merchandise pursuant to the authority of {Commerce} under subtitle IV…"  19 U.S.C. § 1517(b)(4)(A)-(B).  Accordingly, the EAPA statute provides CBP with express authority to make covered merchandise determinations and to defer to Commerce where it is "unable" to make such determinations.  The only limitation on CBP's covered merchandise determinations (since they are integral to a finding of evasion) is that they must be based on substantial evidence.  19 U.S.C. § 1517(c)(1)(A) (providing that evasion determinations be based on substantial evidence).  Plaintiffs' suggestion that CBP is somehow limited in other respects – *e.g.*, with respect to the evidence it can consider – when making covered merchandise determinations is thus plainly contradicted by the provisions of the EAPA statute itself; the statute does not circumscribe the evidence on which CBP may rely in reaching covered merchandise determinations.  Plaintiffs' Brief at pp. 8-9 ("EAPA does not grant CBP the authority to develop its own set of criteria in determining whether a particular product falls within the scope of an AD/CVD order").  Similarly, Plaintiffs' broad argument that CBP is not authorized "to act as an alternative forum to Commerce to resolve scope issues" is plainly

14

rejected by the EAPA statute itself, which expressly authorizes CBP to make covered

merchandise determinations in EAPA investigations, as detailed above.  *Id.* at p. 23.

**2.      CBP's Determination that the Importers' Tribar Flooring is Covered
Merchandise is Supported by Substantial Evidence**

Plaintiffs argue that CBP's determination that tribar flooring is covered merchandise

under the scope of the AD/CVD orders on certain steel grating does not reflect the plain

language of the orders.  *Id.* at p. 12.  Plaintiffs additionally argue that, even if CBP's

interpretation of the AD/CVD orders' scope was lawful, its determination that tribar flooring is

covered merchandise is not based on substantial evidence because CBP failed to consider the

materials identified in *Commerce's* scope regulations (*i.e.*, 19 C.F.R. § 351.225(k)(1)-(k)(2)).  *Id.*

at p. 17-21.  These arguments must be rejected.  CBP's covered merchandise determination was

based on substantial evidence and, moreover, reflected the typical analysis undertaken by

Commerce with respect to questions of scope which, although not required of CBP, demonstrates

the analytical reasonableness of CBP's approach.  For these reasons, CBP's determination was

lawful, based on substantial evidence, and should be affirmed by the Court.

As the courts have explained, "{t}he plain language of the antidumping duty order is

'paramount' in determining whether particular products are included within its scope." *Fedmet*

*Res. Corp. v. United States*, 755 F.3d 912, 918 (Fed. Cir. 2014) (citing *King Supply Co. LLC v.*

*United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012)).  Thus, "{the scope} inquiry must begin

with the order's scope to determine whether it contains an ambiguity and, thus, is susceptible to

interpretation." *Meridian Prod., LLC v. United States*, 851 F.3d 1375, 1381 (Fed. Cir. 2017).

Where the plain language of the order's scope is clear, such that it is dispositive, consideration of

additional sources, for example those listed in Commerce's regulations at 19 C.F.R.

§ 351.225(k)(1)-(k)(2), is not required.  *See, e.g., Bourgault Indus., Ltd. v. United States*, 473 F.

15

Supp. 3d 1369, 1383 (Ct. Int'l Trade October 13, 2020) ("Commerce did not identify an ambiguity in the Order, and there is little to convince the court that Commerce was wrong. … Thus, the plain language of the Order controls").

In the underlying EAPA investigation, CBP determined, based on the plain language of the AD/CVD scope and substantial evidence on the proceeding record that the Importers' tribar flooring is covered merchandise.  The scope of the AD/CVD orders covers:  "certain steel grating, consisting of two or more pieces of steel, including load-bearing pieces and cross pieces, joined by any assembly process, regardless of: (1) size or shape; (2) method of manufacture; (3) metallurgy (carbon, alloy, or stainless); (4) the profile of the bars; and (5) whether or not they are galvanized, painted, coated, clad or plated."  *See* AD/CVD orders.  CBP determined that this language covers the Importers' tribar flooring, which is "made with [

], making it a product of two or more pieces of steel joined together by welding."  Final Evasion Determination at p. 8.  CBP also determined that the plain language of the AD/CVD orders' scope did "not include any exclusions that apply to the tribar floors."  *Id.*  And, CBP determined that the "tribar floors are an [                ] of the farrowing crate systems being imported into the United States," such that they are not removed from the ambit of AD/CVD orders' scope by virtue of inclusion with other parts to form a larger structure (*e.g.*, a farrowing flooring system or pig farrowing crate).  *Id*.  These determinations were affirmed by CBP during the *de novo* administrative review process.  Administrative Review Determination at p. 9.

In reaching (and affirming) these determinations, CBP's analysis resembled that of Commerce, which, in a separate, parallel proceeding also determined that the Importers' tribar flooring is subject to the AD/CVD orders on certain steel grating from China.  Specifically,

Commerce determined that the tribar flooring "is composed of parallel galvanized cut-to-length steel wire rods or round bars (tribar) connected by welded crossbars" and is "hot-dip galvanized."  Gaosai Scope Ruling at p. 9.  These descriptions match those of the subject merchandise as contained in the plain language of the AD/CVD orders' scope ("two or more pieces of steel, including load-bearing pieces and cross pieces, joined by any assembly process … whether or not they are galvanized").  *Id.*  Commerce also determined that the inclusion of the tribar flooring with other components to form a larger structure did not remove the tribar flooring from the ambit of the AD/CVD orders' scope.  *Id.* at pp. 10-14 (citing, *inter alia*, the fact that (1) the farrowing flooring system can be sold separately from the rest of the pig farrowing crate; (2) the farrowing flooring system is not permanently attached to the rest of the pig farrowing crate; and (3) the tribar flooring is listed separately on the invoice that is part of the entry package examined by CBP).

Based on the above, CBP's covered merchandise determination was lawful and based on substantial evidence.  Accordingly, the Court should affirm CBP's determination.

### 3. The Cases Cited by the Importers do not Undermine CBP's Covered Merchandise Determination

Plaintiffs' reliance on *Stein Industries* and *Trendium Pool Products* does not undermine the basis in law and fact of CBP's covered merchandise determination.  Plaintiffs cite these cases to argue that, because their tribar flooring is ultimately included in a downstream product (*i.e.*, farrowing flooring systems and pig farrowing crates), they cannot be covered by the scope of the AD/CVD orders.  Simply put, these cases do not support this conclusion, and are readily distinguishable from the underlying administrative proceeding here.

In *Stein Industries*, the Court examined Commerce's scope determination that the plaintiff's merchandising bar and adjustable welded mounted bar kit were within the scope of the

orders on light-walled rectangular ("LWR") pipe and tube from China.  *Stein Industries, Inc. v. United States*, 365 F. Supp. 3d 1364 (Ct. Int'l Trade March 5, 2019) ("*Stein Industries*").  The scope included "certain welded carbon quality light-walled steel pipe and tube, of rectangular (including square) cross section…, having a wall thickness of less than 4 mm."  In siding with the plaintiff and against Commerce, the Court noted in particular that "Commerce {failed} to address {plaintiff's} argument that the merchandising bar and adjustable welded mounting bar kit are outside of the scope based on the ***lack of a uniform cross-section***."  *Id.* at 1371.  According to the Court, Commerce could not simply assume that the products in question were subject to the LWR pipe and tube orders since, arguably, they lacked a key component of the ***physical description*** of the subject merchandise contained in the scope language. *Id.* ("{a}lthough Commerce is correct that '{p}roducts that meet the description of subject merchandise in the scope are covered unless explicitly excluded from the scope,' Commerce incorrectly assumed that {plaintiff's} products met the description of subject merchandise and then proceeded to consider whether the scope contained exclusionary language based on further processing or end use") (internal cites omitted).  Here, by contrast, there is no such difference between the physical descriptions of tribar flooring and the steel grating subject to the AD/CVD orders at issue.  Indeed, Plaintiffs even go so far as to concede that their tribar flooring, "if…imported by itself in a semi-finished form of bar lengths welded in a cross-section pattern, might be considered to be subject steel grating."  Plaintiffs' Brief at pp. 14-15 (emphasis omitted).  Accordingly, *Stein Industries* is distinguishable from the facts of the underlying administrative proceeding and Plaintiffs' reliance on the case should be rejected.

Similarly, in *Trendium Pool Products*, the Court rejected a scope determination by Commerce based on the plain language of the orders' scope, which was reasonably interpreted to

exclude plaintiff's product from the ambit of the orders. *Trendium Pool Prod., Inc. v. United States*, 399 F. Supp. 3d 1335 (Ct. Int'l Trade August 20, 2019) ("*Trendium Pool Products*"). Specifically, Commerce had determined that plaintiff's finished pool kits and walls, partially made from corrosion resistant steel ("CORES") from Italy and China that were further processed in Canada (the country of export), were subject to the AD orders on CORES from Italy and China.  The Court relied on particular language from the orders' scope ("{s}ubject merchandise also includes corrosion-resistant steel that has been further processed in a third country, including but not limited to annealing, tempering, painting, varnishing, trimming, cutting, punching and/or slitting or any <u>other processing that would not otherwise remove the merchandise from the scope of the Order</u>" (emphasis added)) to conclude that plaintiff's processing of the CORES in Canada was "so extensive and particular to the product's use as pool walls that the CORES is no longer CORES for the purposes of a scope determination."  *Id.* at 1343.  Additionally, the Court relied on the fact that the CORES were, *inter alia*, subject to <u>corrugation</u> in Canada, a process not included in the list of third-country processing steps applicable to the subject merchandise, to determine that the CORES were not subject to the orders' scope.  *Id.* at 1344 ("{h}ad corrugation been intended to be a part of the third-country further processing techniques listed as within the Order, it could have been stated explicitly"). By contrast, nothing in the scope language of the AD/CVD orders reasonably suggests that Plaintiffs' tribar flooring is excluded from the scope by virtue of specific processing or manufacturing steps or ultimate inclusion in a downstream product.  For these reasons, *Trendium Pool Products* is distinguishable from the facts of the underlying administrative proceeding and Plaintiffs' reliance on the case should be rejected.

4. **Federal Circuit Decisions Support CBP's Covered Merchandise Determination**

Rather than *Stein Industries* and *Trendium Pool Products*, this Court should look to cases such as *King Supply*, which clearly demonstrates that end use exclusions cannot be simply read into the scope language of AD/CVD orders where they are not explicitly provided for.  Hog Slat December 13, 2020 Comments at pp. 5-7, P.R. 26, citing *King Supply Co., LLC v. United States*, 674 F.3d 1343 (Fed. Cir. 2012) ("*King Supply*").  In *King Supply*, the Federal Circuit reviewed Commerce's determination that King's butt- weld pipe fittings ("BWPF") were subject to the AD order on BWPF from China.  Citing language in the scope that the subject merchandise is "used to join sections in piping systems…," King had argued to Commerce that its BWPFs imports were excluded from that order's scope because, instead, they were imported for structural uses such as handrails, fencing, and guardrails.  However, for a number of reasons, including the fact that King's products were physically identical to the products described in the scope language (*i.e.,* "carbon steel butt-weld pipe fittings, having an inside diameter of less than 14 inches, imported in either finished or unfinished form") Commerce determined that King's BWPF imports were subject to the order.  In upholding Commerce's determination, the Federal Circuit held that the scope language contained no clear exclusionary language with respect to end-use restrictions (as King had argued) and that because "King's products undisputedly satisf{ied} the physical description of the products…{in the} AD Order," Commerce's determination was reasonable and based on substantial record evidence.  *King Supply* at 1349-1350.  Based on *King Supply*, Plaintiffs cannot simply read end use exclusions (*i.e.*, use in farrowing flooring systems or pig farrowing crates) into the scope language of the AD/CVD orders.

The Court should also look to the mixed media analysis detailed by the Federal Circuit in *Star Pipe Products*.  Hog Slat December 13, 2020 Comments at pp. 8-9, P.R. 26, citing *Star Pipe Prod. v. United States*, 981 F.3d 1067 (Fed. Cir. 2020) ("*Star Pipe Products*").  Such analysis, utilized by Commerce, could potentially guide circumstances before CBP involving subject merchandise mixed with non-subject merchandise.  As the Federal Circuit explained, a mixed media analysis involves two steps:

> {f}irst, Commerce is to "determine whether the potentially-subject merchandise included within the mixed media item is within the literal terms of the antidumping order."  Second, if the merchandise is within the literal terms of the order, Commerce should "determine whether the inclusion of that merchandise within a mixed media item should nonetheless result in its exclusion from the scope of the order."

*Id.* at 1073.  Although CBP was not required to rely on such analysis, its covered merchandise determination can readily be seen as consistent with the two-step approach described by the Federal Circuit.  That is, CBP (1) determined that tribar flooring is within the literal terms of the AD/CVD orders, and (2) determined that because "tribar floors are an [                    ] of the farrowing crate systems being imported into the United States" they are not removed from the ambit of the AD/CVD orders' scope by virtue of inclusion in those downstream products.  Final Evasion Determination at p. 8.  Accordingly, the mixed media analysis described in *Star Pipe Products* further supports CBP's covered merchandise determination.

### 5.      CBP Was Not Required to Rely on the Sources Listed in Commerce's Regulations in Making its Determination

This Court should reject Plaintiffs' argument that CBP was required to base its covered merchandise determination on the sources listed in Commerce's regulations (*i.e.*, 19 C.F.R. § 351.225(k)(1)-(k)(2)).  Plaintiffs' Brief at pp. 17-21.  As explained above, since the plain language of the AD/CVD orders' scope was dispositive with respect to the question of whether

tribar flooring is covered merchandise, CBP was *not* required to rely on those sources. Moreover, that both CBP and Commerce in separate, parallel proceedings relied on the plain language of the AD/CVD orders' scope to determine that tribar flooring falls within the scope reflects noteworthy consensus among the U.S. trade agencies, and the Court should defer to this expertise. *See Meridian Prod. v. United States*, 890 F.3d 1272, 1277 (Fed. Cir. 2018) (noting that the Federal Circuit "afford{s} significant deference to Commerce's … interpretation of its orders, mindful that scope determinations are 'highly fact-intensive and case-specific.'").

### D.    CBP Lawfully Found Evasion

Plaintiffs argue that CBP's evasion determination was based on an unlawful interpretation of "evasion" under the EAPA statute.  Plaintiffs' Brief at pp. 21-27.  Specifically, Plaintiffs assert that CBP was required to (and did not) find some level of intentionality and culpability on the part of the Importers with respect to their undisputed non-payment of AD/CVDs on tribar flooring.  *Id.* at pp. 22-23.  Plaintiffs assert that "the failure to declare the entries that contained tribar flooring as 'Type 3' entries cannot be considered {an act or omission that is} 'material' where … no notice existed … that the AD/CVD orders include downstream products made with steel grating as an input."  *Id.* at p. 25.  Plaintiffs thus conclude that their "interpretation of the scope of the AD/CVD Orders to not include … pig farrowing crates or flooring was reasonable under the circumstances," and that, accordingly, no evasion of AD/CVDs occurred.  *Id.* at pp. 25-26.  Such reasoning fails both under the terms of the EAPA statute and relevant judicial precedent.

As discussed above, the EAPA statute defines "evasion" as:

> entering covered merchandise into the customs territory of the
> United States by means of any document or electronically
> transmitted data or information, written or oral statement, or act
> that is material and false, or any omission that is material, and that
> results in any  cash deposit or other security or any amount of

> applicable antidumping or countervailing duties being reduced or
> not being applied with respect to the merchandise.

19 U.S.C. § 1517(a)(5)(A).  Based on this language, the EAPA statute does *not* include in the

definition of "evasion" an intentionality or culpability requirement; rather, the definition of

"evasion" is satisfied when, as a matter of fact, covered merchandise is entered into the United

States through, *inter alia*, an act that is material and false or an omission that is material, that

results in the non-payment of otherwise applicable AD/CVDs.  The one statutory exception to

this definition applies to "covered merchandise into the customs territory of the United States by

means of a document or electronically transmitted data or information, written or oral statement,

or act that is false as a result of a clerical error; or an omission that results from a clerical error."

19 U.S.C. § 1517(b) (emphasis added) (even then, the EAPA statute provides that when the

"clerical error is part of a pattern of negligent conduct," CBP may determine that evasion

occurred).  Accordingly, there is no reasonable interpretation of the EAPA statute that

intentionality and culpability must be demonstrated for CBP to reach an evasion determination.

Plaintiffs in this case clearly meet each of the elements of the definition of "evasion"

under the EAPA statute.  As discussed in the previous section, Plaintiffs entered covered

merchandise into the United States when they imported tribar flooring either as a standalone

product or as part of farrowing flooring systems or pig farrowing crates.  In addition, as a result

of the false and material act of stating on their entry summary forms that the tribar flooring

imports were "type 01" (non-AD/CVD) as opposed to "type 03" (AD/CVD) entries, applicable

AD/CVDs were not paid on these entries.  Plaintiffs' arguments that they did not engage in

evasion can thus be readily dispensed with through a plain reading of the EAPA statute and the

application of the statute to the facts of this case.

Additionally, Plaintiffs' citation to *Diamond Tools* fails to advance their argument that intentionality and culpability are required elements of any evasion determination by CBP.  In *Diamond Tools*, the Court reviewed CBP's determination that the plaintiff's imported diamond sawblades, which were assembled in Thailand from Chinese parts, evaded AD duties applicable under the AD order on diamond sawblades from China.  In remanding CBP's determination back to the agency for reconsideration, the Court relied extensively on the specific procedural history of the AD order before Commerce.  As the Court observed, "prior to the {AD} Order, Commerce issued a final less than fair value determination for diamond sawblades from China in its original antidumping investigation {in which it} found that {the} 'country of origin should be determined by the location of where the segments are joined to the core.'"  *Diamond Tools* at 1351-1352.  Following the initiation of the pertinent EAPA investigation by CBP, Commerce later determined in the context of an anticircumvention inquiry that diamond sawblades made in Thailand from Chinese cores and segments were circumventing the AD order on diamond sawblades from China, effectively reversing its earlier determination.  Commerce made the same scope determination in response to a covered merchandise referral from CBP in the pertinent EAPA investigation.  *Id.* at 1330-1331.

The Court concluded that, because Commerce's initial interpretation of the AD order's scope effectively created an exclusion for diamond sawblades produced in third countries such as Thailand from Chinese cores and segments (on which plaintiff relied), it could not be the case that plaintiff was evading the AD order.  The Court explained:

> Given Commerce's clearly stated conclusion, {the importer} did not make a material and false statement by importing the diamond sawblades as Thai-origin because such a statement was not 'erroneous', 'untrue' or 'deceitful.'  {The importer's} imports were   made of Chinese cores and segments assembled in Thailand.  As such, by importing the diamond sawblades as Thai-

origin, {the importer} complied fully with Commerce's clear
directive that the country of origin be determined by the country in
which the cores and segments are joined.

*Id.* at 1353. The court further explained that because "Commerce's {original scope

interpretation} could not have been any more clear…the court is unable to conclude that {the

importer} had a 'duty' to disclose that its diamond sawblades assembled in Thailand consisted of

Chinese-origin cores and segments, nor that any disclosure or action by {the importer} was

'neglected.'" *Id*. In other words, the Court concluded that the importer could not have made the

"false statement" or "material omission" necessary for evasion because, at the time of the entries,

its merchandise was unambiguously outside the scope of the order. These facts are readily

distinguishable from those of this case.

Unlike *Diamond Tools*, there was no clear exclusion that resulted in the removal of the

Importers' tribar flooring from the AD/CVD scope, such that they had reasonable basis to

believe that no AD/CVDs were owing. Rather, as discussed above, the plain language of the

AD/CVD orders' scope is (and always has been) clear in covering products such as tribar

flooring. Additional materials from the original AD/CVD and injury investigations resulting in

the AD/CVD orders are similarly clear. For example, the final injury determination of the ITC

stated that:

> {certain steel grating, "CSG"} is a <u>downstream steel product</u>
> distinguished by two sets of components – the "bearing bars" that
> extend across the length and the "crossbars" that transverse
> (typically perpendicular to) the bearing bars to form a "panel."
> CSG is <u>designed to support and distribute the weight of objects</u>,
> which is achieved through varying dimensions and spacing of both
> the bearing bars and crossbars.
> …
> Common end-uses include walkways, mezzanines, catwalks,
> platforms for overhead signs, fire escapes, and stairways and
> <u>flooring</u>. CSG also serves as decking and supports for heavy-duty
> applications such as motor-vehicle bridges, railway rolling-stock

> flooring, drainage pit covers, boat-landing ramps, truck beds, and mooring docks.

Ikadan Allegation at p. 6; Gaosai Allegation at p. 7 (both citing *Certain Steel Grating from China*, Investigation Nos. 701-TA-465 and 731-TA-1161 (Final) (July 2010), USITC Pub. 4168 at p. 5 (emphasis added)).

Accordingly, Plaintiffs had more than sufficient notice that their tribar flooring imports – whether or not imported with other components to create farrowing flooring systems or pig farrowing crates – are subject to the AD/CVD orders. The plain language of the AD/CVD orders is clear, as are the AD/CVD and injury investigation materials preceding the orders. Failure to pay applicable AD/CVDs on their tribar flooring imports was thus undeniably "evasion" under the EAPA statute. CBP need not demonstrate any additional intentionality or culpability on the part of the Importers.

**E.      CBP Lawfully Suspended Liquidation and Required AD/CVD Cash Deposits on the Importers' Entries**

Plaintiffs assert that CBP's response to their evasion was arbitrary and capricious because CBP suspended liquidation and imposed AD/CVD cash deposits in an overbroad manner, to cover entries that did not contain the covered merchandise (tribar flooring). Plaintiffs' Brief at pp. 27-41. As an initial matter, Hog Slat defers to Defendant United States with respect to the factual bases for suspension of liquidation and application of AD/CVD cash deposits on particular entries subject to the underlying EAPA investigation. As a general matter, however, the suspension of liquidation and application of AD/CVD cash deposits on any entries that are reasonably believed to contain tribar flooring is lawful. *See* 19 U.S.C. § 1517(d). Plaintiffs do not contest this point. Rather, Plaintiffs seem to suggest – without conclusively demonstrating – that CBP erred in determining which of its entries should be subject to suspension of liquidation and AD/CVD cash deposits.

If CBP erred (which it did not) in its application of remedial measures to Plaintiffs' entries, the appropriate avenue to contest such error would be to lodge a protest following liquidation of the entries. *See All One God Faith, Inc. v. United States*, 589 F. Supp. 3d 1238, 1247 (Ct. Int'l Trade August 18, 2022) ("to the extent an importer wishes to appeal the liquidation of its merchandise … after a determination of evasion, that appeal must traverse the typical channels. Where erroneous liquidation has occurred … the aggrieved importer must first file a protest specifying CBP's error as set out in 19 U.S.C. § 1514(c)"). For this reason, CBP is correct that "{t}he extent to which entry line items are subject to {the} finding {of duty evasion} is outside the scope of the EAPA {process} and will be determined at the time final duties, taxes, and fees are assessed on those entries{,}" at which time, the Importers could file protests with CBP regarding the liquidation of the entries. Remand Redetermination at p. 5. Based on this reasoning, Plaintiffs have, at this time, realized no cognizable injury reviewable by this Court as a result of CBP's suspension of liquidation and imposition of AD/CVD cash deposits. Moreover, Plaintiffs have not exhausted available administrative remedies (through the filing of protests with CBP) to challenge the ultimate liquidation of entries pursuant to CBP's evasion determination. Accordingly, the extent of CBP's application of remedial measures to Plaintiffs' entries is not reviewable by the Court in the instant proceeding.

### F.   CBP's Remand Redetermination is Consistent with the Court's Remand Order and Supports CBP's Evasion Determination

Although the Plaintiffs argue otherwise, CBP's Remand Redetermination is consistent with the Court's remand order and supports CBP's evasion determination. The Plaintiffs assert that "although this Court's {r}emand {o}rder did not give specific instructions, … the Court should expect CBP to do what it said it would do, {*i.e.,*} 'consider Commerce's scope ruling on the record and clarify or correct its administrative review decision' in order to 'ensure that the

Court is presented with a thorough analysis of relevant law and record evidence.'"  Plaintiffs'

Supplemental Brief at p. 3.  Despite the Plaintiffs' contention, this is exactly what CBP did.

Specifically, in its Remand Redetermination, CBP explained the key components of Commerce's

determination in the Gaosai Scope Ruling, and determined that the scope ruling "provides further

support to {CBP's evasion determination} by reinforcing CBP's determination that the tribar

flooring component of the farrowing crates and flooring systems is within the scope of the

{AD/CVD} {o}rders."  Remand Redetermination at p. 3.  Accordingly, any assertion that CBP

did not "consider Commerce's scope ruling on the record and clarify … its administrative review

decision" is flatly contradicted by the content of CBP's Remand Redetermination.  The

Plaintiffs' argument should thus be rejected.

Similarly, this Court should reject Plaintiffs' additional arguments concerning CBP's

authority to rely, in part, on Commerce's Gaosai Scope Ruling in its evasion determination.  The

Plaintiffs assert that "there is nothing in the EAPA statute or CBP's regulations that requires

CBP to follow Commerce's scope determination{} when CBP makes its EAPA determination"

and that "CBP must justify its findings that {the Plaintiffs'} products are 'covered

merchandise{}' {by} applying the same legal framework that the Court would use in direct

review of a scope determination by Commerce."  Plaintiffs' Supplemental Brief at p. 5.

Relatedly, the Plaintiffs assert that "{t}he fact that Plaintiffs chose not to appeal Commerce's

determination simply does not estop or otherwise prevent Plaintiffs from seeking review of

CBP's determination, including … what constitutes 'covered merchandise{.}'"  *Id.* at pp. 6-7.

With respect to all of these arguments, the Plaintiffs demonstrate a fundamental

misunderstanding of CBP's obligations under the EAPA statute and of CBP's ability to consider

a parallel Commerce scope ruling.

As discussed above, CBP had determined in its underlying evasion determination that input from Commerce was <u>not</u> required and that CBP itself could determine, based on the record evidence, that the Importers' tribar flooring is covered merchandise subject to the AD/CVD orders.  Final Evasion Determination at p. 8.  This determination was consistent with 19 U.S.C. § 1517(b)(4)(A)-(B), which expressly authorizes CBP to make its own covered merchandise determinations.  In the Remand Redetermination, CBP determined that, "{a}lthough … input from Commerce was not needed for CBP to … find that the {Importers'} tribar flooring … {is} subject to the AD/CVD {o}rders, the {Gaosai} Scope Ruling confirms these findings."  Remand Redetermination at p. 4.  Accordingly, in the Remand Redetermination, CBP acknowledged that although not necessary, Commerce's Gaosai Scope Ruling, which found that the same products produced by the same company under investigation by CBP were subject to the AD/CVD orders on certain steel grating from China, provided additional support for its determination that these products are "covered merchandise" under the EAPA statute.  *Id.*  Despite this reasonable determination, Plaintiffs claim that CBP was required to review Commerce's scope ruling using "the same legal framework {as} the Court" and have otherwise attempted to hijack CBP's voluntary remand process to relitigate questions of law and fact that were examined and settled by Commerce.  But given Commerce's "mastery" of U.S. trade remedy laws and CBP's "ministerial" role in applying Commerce's determinations, the Plaintiffs' approach must be rejected.  *See PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 764 (Fed. Cir. 2012), Remand Redetermination at p. 4, n. 18 (citing *Mitsubishi Electronics America, Inc. v. United States*, 44 F. 3d 973, 977 (Fed. Cir. 1994)).  Indeed, these general legal principles concerning the agencies' prerogatives, as reflected in the EAPA statute itself (which allows CBP to "refer" covered merchandise questions to Commerce and simply accept Commerce's determination),

PUBLIC VERSION

make it unnecessary for CBP to review the underlying methodological determinations of Commerce's scope rulings as the Court would during judicial review.  And, for the same reasons, a proceeding before CBP is not the appropriate forum to challenge the underlying methodological determinations of a parallel Commerce scope ruling.  Plaintiffs could have, but did not, bring a timely appeal to this Court, against Commerce's Gaosai Scope Ruling, which would have been the appropriate avenue to challenge the specifics of Commerce's determination. Plaintiffs' failure to pursue that appeal against Commerce means that Plaintiffs declined the opportunity to contest the specifics of Commerce's decision.  Plaintiffs may not now relitigate Commerce's Gaosai Scope Ruling as part of this EAPA determination by CBP.  Accordingly, CBP was right to reject Plaintiffs' arguments concerning Commerce's Gaosai Scope Ruling in the Remand Redetermination.  Remand Redetermination at p. 4.

**III.**     **Conclusion**

For the reasons set forth above, we respectfully request that the Court deny Plaintiffs' motion for judgment on the agency record and sustain CBP's evasion determinations.

Respectfully submitted,

/s/Gregory McCue
Gregory S. McCue
Zachary Simmons
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue N.W.
Washington, DC 20036
(202) 429-6421

*Counsel to Hog Slat, Inc.*

Dated:  January 20, 2023

## **CERTIFICATE OF COMPLIANCE**

This brief has been prepared utilizing Microsoft Word and a proportionally spaced typeface (12-point Times New Roman). In accordance with this Court's Chambers Procedures and Scheduling Order, the undersigned certifies that this brief complies with applicable word limitations. Specifically, excluding exempted portions per the Chambers Procedures, and based on the word count feature in Microsoft Word, this brief contains 8,901 words.

/s/ Gregory S. McCue
Gregory S. McCue
Zachary Simmons
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: (202) 429-6421
Email: gmccue@steptoe.com

*Counsel to Hog Slat, Inc.*