**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE**

IKADAN SYSTEM USA, INC. and WEIHAI
GAOSAI METAL PRODUCT CO., LTD.,

          Plaintiffs,

    v.

UNITED STATES,

          Defendant,

       and

HOG SLAT, INC.,

          Defendant-Intervenor.

Court No. 21-00592

**PUBLIC VERSION**
Business Proprietary Information
deleted from within Brackets [ ].

**REPLY BRIEF OF PLAINTIFFS IN SUPPORT OF**
**ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Douglas J. Heffner
Wm. Randolph Rucker
Richard P. Ferrin
**FAEGRE DRINKER BIDDLE & REATH LLP**
1500 K Street, N.W.
Washington, DC 20005
(202) 230-5803

*Counsel for Plaintiffs*

Dated: February 17, 2023

## TABLE OF CONTENTS

I.  INTRODUCTION. ..................................................................................................... 1

II. DEFENDANT'S INTERPRETATION OF WHAT CONSTITUTES "COVERED
    MERCHANDISE" IS UNREASONABLE. ............................................................ 1

   A. CBP Cannot Escape Court Review of Its Covered Merchandise Determination by
      Hiding Behind Commerce. ................................................................................... 1

      1. Defendant Mischaracterizes the Issue Before the Court. ................................ 1

      2. The Court Should Reject CBP's Argument That It Should Not Review Its
         Covered Merchandise Interpretation Because CBP Serves Only a "Ministerial
         Role" in Interpreting AD/CVD Orders. ...................................................... 3

      3. The Court Should Reject CBP's Argument That the Court Cannot Review
         CBP's Covered Merchandise Determination Because Plaintiffs Could Have
         Appealed Commerce's Scope Ruling Under 19 U.S.C. § 1516a............................ 5

   B. Defendant's Attempts to Address the Substance of Plaintiffs' Covered
      Merchandise Analysis Are All Impermissible *Post Hoc* Rationalizations. .................. 6

   C. CBP's *Post Hoc* Rationalizations Are Wrong on the Merits Because They
      Unlawfully Expand the Scope of the CSG Orders......................................................... 9

      1. Defendant's Attempt to Extend the CSG Orders by "Presumption" Is Not
         Permitted Under Federal Circuit Precedent. ........................................................... 9

      2. The Scope of an AD/CVD Order Does Not Automatically Include
         Downstream Products. ....................................................................................... 10

         a. Defendant's Attempt to Distinguish *Trendium Pool Products* Fails. ............. 10

         b. Defendant's Attempt to Distinguish *Stein Industries* Fails............................. 12

         c. Defendant's Reliance on *King Supply* Is a Red Herring................................. 13

III. DEFENDANT UNREASONABLY AND UNLAWFULLY INTERPRETS THE
     "EVASION" REQUIREMENT IN THE EAPA STATUTE............................................ 13

   A. EAPA Requires At Least Some Indication of Intent to "Evade"................................ 13

   B. The Court Should Reject Defendant's Claim That Reading an Intent Requirement
      Into EAPA Would Violate All Principles of Law Applicable to All AD/CVD
      Proceedings. ........................................................................................................ 16

   C. The Court Should Reject Defendant's Claim That CBP Is Unable to Determine
      Intent. ................................................................................................................. 17

   D. There Is No Indication That Plaintiffs Intended to Evade AD/CVD Duties. ............. 17

   E. Because It Is Unclear (At Best) That Plaintiffs' Pig Farrowing Crates and
      Farrowing Flooring Systems Are Covered Merchandise, It is Even More
      Important That the Court Should Reject CBP's Determination for Lack of Intent.... 20

IV. CBP ARBITRARILY AND CAPRICIOUSLY SUSPENDED LIQUIDATION AND
    ASSIGNED AD/CVD CASH DEPOSITS IN AN OVERBROAD MANNER.............. 22

V.  CONCLUSION............................................................................................................... 25

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Ad Hoc Shrimp Trade Enforcement Comm. v. United States*,
   46 CIT ___, 578 F. Supp. 3d 1310 (2022) .............................................................................8

*Aspects Furniture Int'l, Inc. v. United States*,
   No. 20-03824, 2022 WL 17249645 (Ct. Int'l Trade Nov. 28, 2022)......................................24

*Burlington Truck Lines v. United States*,
   371 U.S. 156 (1962)...........................................................................................................8, 9

*Christopher v. SmithKline Beecham Corp.*,
   567 U.S. 142 (2012)..............................................................................................................21

*Consolidated Textiles, Inc. v. United States*,
   28 CIT 1304, 346 F.Supp.2d 1290 (2004) .............................................................................6

*Diamond Tools Tech. LLC v. United States*,
   45 CIT ___, 545 F. Supp. 3d 1324 (2021) ................................................................. *passim*

*Diamond Tools Technology LLC v. United States*,
   No. 20-00060, 2022 WL 17730761 (Ct. Int'l Trade Dec. 16, 2022) ..........................14, 15, 16

*Duferco Steel, Inc. v. United States*,
   296 F.3d 1087 (Fed. Cir. 2002).............................................................................................9

*E.I. DuPont de Nemours & Co. v. United States*,
   23 CIT 343 (1999) ................................................................................................................6

*King Supply Co., LLC v. United States*,
   674 F.3d 1343 (Fed. Cir. 2012)............................................................................................13

*Leco Supply, Inc. v. United States*,
   No. 21-00136, 2023 WL 1434182 (Ct. Int'l Trade Jan. 24, 2023) ...................................14, 17

*Mid Continent Nail Corp. v. United States*,
   725 F.3d 1295 (Fed. Cir. 2013).......................................................................................7, 21

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   43 U.S. 29 (1983)..................................................................................................................8

*Royal Brush Mfg., Inc. v. United States*,
   45 CIT ___, 545 F.Supp.3d 1357 (2021), *appeal docketed*, No. 22-1226 (Fed.
   Cir. Dec. 21, 2021).............................................................................................................23

*SEC v. Chenery Corp.*,
   332 U.S. 194 (1947)..............................................................................................................8

*Stein Industries v. United States,*
  44 CIT ___, 365 F. Supp. 3d 1364 (2019) ....................................................10, 12, 13

*Taizhou United Imp. & Exp. Co. Ltd. v. United States,*
  560 F. Supp. 3d 1316 (2022) ............................................................................8

*Trendium Pool Prods., Inc. v. United States,*
  44 CIT ___, 399 F. Supp. 3d 1335 (2019) ..................................................10, 11

*Ultratec, Inc. v. CaptionCall, LLC,*
  872 F.3d 1267 (Fed. Cir. 2017)........................................................................8

*Vietnam Firewood Co. Ltd. v. United States,*
  44 CIT ___, 466 F.Supp.3d 1273 (2020) ........................................................23

**Statutes, Rules & Regulations**

19 C.F.R. § 1571(b)(4)...........................................................................................3

19 U.S.C. § 1514...................................................................................................24

19 U.S.C. § 1516a..............................................................................................5, 6

19 U.S.C. § 1516a(a)(2).....................................................................................7, 8

19 U.S.C. § 1517...................................................................................................5

19 U.S.C. § 1517(a)(5)..........................................................................................14

19 U.S.C. § 1517(b)(4).......................................................................................2, 4

19 U.S.C. § 1517(b)(4)(A).....................................................................................4

19 U.S.C. § 1517(b)(4)(B).....................................................................................4

19 U.S.C. § 1517(c)...............................................................................................5

19 U.S.C. § 1517(c)(1)(A)................................................................................23, 24

19 U.S.C. § 1517(f)...............................................................................................5

19 U.S.C. § 1517(g).........................................................................................4, 5, 6

19 U.S.C. § 1592.................................................................................................17

28 U.S.C. § 1581(a).............................................................................................22

Signing Statement for H.R. 644, 2016 WL 737735 (Feb. 24, 2016) .............................14

US.355834444.01

USCIT Rule 56.2 ................................................................................................. *passim*

**<u>Determinations</u>**

*Certain Steel Grating from the People's Republic of China: AD Order*,
57 Fed. Reg. 43,143 (Dep't of Commerce July 23, 2010) ......................................................18

*Certain Steel Grating from the People's Republic of China: CVD Order*,
57 Fed. Reg. 43,144 (Dep't of Commerce July 23, 2010) ......................................................18

US.355834444.01

PUBLIC VERSION

## I.      INTRODUCTION.

In this action, U.S. Customs and Border Protection ("CBP") again attempts to escape accountability for its own interpretation of law and findings of fact regarding the term "covered merchandise" in the EAPA statute.  Defendant claims that this Court has no power to review whether: (1) CBP's interpretation of what constitutes "covered merchandise" is in accordance with law; or (2) CBP's determination of which of Plaintiffs' imports constitute "covered merchandise" is supported by substantial evidence.  But as demonstrated below, this Court should reject Defendant's abdication of responsibility for both aspects of its covered merchandise determination.

Moreover, CBP also attempts to escape its obligation to determine whether the Plaintiffs' importation of pig farrowing crates and farrowing flooring systems without payment of AD/CVD cash deposits *per se* constitutes "evasion," regardless of any determination as to whether there is at least some level of culpability.  This Court should reject as a matter of law Defendant's claim that EAPA requires no finding of any level of culpability whatsoever.

## II.     DEFENDANT'S INTERPRETATION OF WHAT CONSTITUTES "COVERED MERCHANDISE" IS UNREASONABLE.

### A.      CBP Cannot Escape Court Review of Its Covered Merchandise Determination by Hiding Behind Commerce.

#### 1.       Defendant Mischaracterizes the Issue Before the Court.

Defendant mischaracterizes the issue as one of whether CBP has the "authority to undertake judicial review of Commerce's scope determination."  Defendant's Response Brief (Dec. 23, 2022), ECF No. 64 ("Def. Brief"), at 25.  But this is not the issue.  Plaintiffs are not "seeking to grant CBP authority that it does not possess," *id.*, or urging CBP to undertake a "judicial review" of anything.  Instead, Plaintiffs advance only the prosaic observation that CBP has both the *authority* and the *obligation* under EAPA to determine what is "covered

merchandise," and that this Court, in turn, has plenary authority to review CBP's covered merchandise interpretation to determine if it is in accordance with law. Further, EAPA provides a referral mechanism for CBP to ask Commerce to assist with CBP's covered merchandise determination by interpreting the scope of the AD/CVD order at issue, but only if CBP itself is "unable to determine whether the merchandise at issue is covered merchandise." 19 U.S.C. § 1517(b)(4).

Defendant itself states—and Plaintiffs agree—that the EAPA statute contemplates "giving CBP leeway to make a determination that a product is covered by an order without referring the matter to Commerce," *id*. at 26, as part of its covered merchandise interpretation. In TRLED's June 21 Determination, CBP eschewed the referral provision, concluding that it was indeed able on its own to interpret what is "covered merchandise" under the AD/CVD orders on steel grating. CBP stated as follows:

> After reviewing all the evidence on the record, CBP found that the tribar floors portion of the imported farrowing crate systems is covered merchandise. Because CBP determined that the evidence on the record clearly demonstrated that the tribar floors properly fell within the scope of the AD/CVD orders, CBP was not required to make a scope referral to DOC in this investigation. CBP determined that the galvanized tribar floors fell within the scope of the AD/VD orders because the tribar floors are made with [
> ], making it a product of two or more pieces of steel joined together by welding. The scope of the AD/CVD orders covers "certain steel grating, consisting of two or more pieces of steel, including load-bearing pieces and cross pieces, joined by any assembly process…;" thus, the tribar floors meet the scope definition. Also, the scope does not include any exclusions that apply to the tribar floors.

TRLED Notice of Determination as to Evasion (June 21, 2021) ("TRLED Determ."), Confidential Doc. ("CR") 123, at 8. In its October 3 Final Remand Determination, CBP explained that TRLED's June 21, 2021 finding of evasion was based on its conclusion that "the subject merchandise was covered by the relevant AD/CVD Orders on their face." Final Remand

Determination (Oct. 3, 2022) ("Final Remand Determ."), Remand Doc. 23, at 2.  CBP insisted

that "{a}lthough we maintain that such input from Commerce was not needed for CBP to

factually find that the tribar flooring portions are subject to the AD/CVD Orders, the Scope

Ruling *confirms these findings* and has now been added to the administrative record."  *Id*. at 4

(emphasis added).

But in its Remand Determination, as told by Defendant in its Response Brief, CBP's

argument flips 180 degrees.  Defendant's argument now boils down to the astonishing assertion

that when the Court granted CBP a voluntary remand to add Commerce's Scope Ruling to the

administrative record and CBP did so, the Scope Ruling did not merely "confirm" the

interpretation that CBP had already made of the scope language to determine what products are

considered to be "covered merchandise."  Instead, according to Defendant's argument,

Commerce's Scope Ruling—which again, CBP did not obtain through the referral mechanism

contemplated in 19 C.F.R. § 1571(b)(4), but instead incorporated on remand in order to

"confirm" its own covered merchandise interpretation—magically *pre-empted* CBP's covered

merchandise interpretation and precluded the ability of this Court to review *either* CBP's

interpretation of the scope *or* Commerce's own interpretation of the scope through its Scope

Ruling.  Yet CBP does not—and cannot—point to any precedent that allows it to treat

Commerce's ruling under these facts as collaterally estopping this Court from determining

whether CBP's interpretation of what constitutes "covered merchandise" is in accordance with

law.

      **2.**      **The Court Should Reject CBP's Argument That It Should Not Review Its Covered Merchandise Interpretation Because CBP Serves Only a "Ministerial Role" in Interpreting AD/CVD Orders.**

Defendant insists that this Court should not review the covered merchandise

interpretation that CBP itself offered in TRLED's June 21 Determination because "CBP plays a

PUBLIC VERSION

'ministerial role' in enforcing antidumping and countervailing duty order-related determinations issued by Commerce."  Final Remand Determ., at 4.  But CBP plays more than just a "ministerial role" in EAPA investigations, and its role is much broader than that of Commerce. As this Court recently observed,

> The EAPA statute empowers Customs to investigate allegations of evasion and determine whether entries under an investigation are "covered merchandise."  Customs' statutory authority notwithstanding, when Customs is unable to determine whether certain import are "covered merchandise," Customs is directed to refer the matter to Commerce.  19 U.S.C. § 1517(b)(4)(A)-(B). Nevertheless *Commerce's role in an EAPA investigation is limited* to the extent that the statute provides for Commerce simply to determine whether merchandise is covered by an applicable AD or CVD order and "promptly transmit" its determination to Customs, *which can then take any appropriate action*.

*Diamond Tools Tech. LLC v. United States*, 45 CIT ___, ___, 545 F. Supp. 3d 1324, 1350 (2021) (emphasis added).

In this action reviewing CBP's EAPA determination, Commerce's role is further diminished, given that Commerce is not even exercising its role in handling covered merchandise referrals pursuant to 19 U.S.C. § 1517(b)(4), which, as noted above, is premised on CBP being "unable" to determine whether the merchandise at issue is "covered merchandise."  Instead, in this case Commerce acted in response to a scope determination made by Plaintiffs, since CBP refused to make a referral.  But in any event, Commerce's role in this EAPA investigation cannot be so paramount as to oust this Court's power to review CBP's covered merchandise determination pursuant to 19 U.S.C. § 1517(g).

US.355834444.01

PUBLIC VERSION

**3.** **The Court Should Reject CBP's Argument That the Court Cannot Review CBP's Covered Merchandise Determination Because Plaintiffs Could Have Appealed Commerce's Scope Ruling Under 19 U.S.C. § 1516a.**

Finally, CBP argues that this Court cannot review CBP's covered merchandise determination because Plaintiffs could have appealed Commerce's Scope Ruling under 19 U.S.C. § 1516a.  Def. Brief at 27; Final Remand Determ., at 4.  Plaintiffs correctly argued that they are not seeking judicial review of Commerce's Scope Ruling under 19 U.S.C. § 1516a, because the cause of action here is 19 U.S.C. § 1517(g), which provides judicial review of CBP's initial EAPA determination of evasion under 19 U.S.C. § 1517(c) and CBP's administrative review of the initial determination under 19 U.S.C. § 1517(f).  Plaintiffs' Supplemental Rule 56.2 Brief (Nov. 4, 2022), ECF 60 ("Pl. Supp. Brief"), at 6.  Plaintiffs also argued that there is nothing in Section 1517 or in Section 1516a that prevents Plaintiffs from challenging CBP's covered merchandise determination under Section 1517(g), even if CBP relies on a Commerce scope ruling for its covered merchandise determination.  Pl. Supp. Brief, at 6.

According to Defendant, "{i}f the statutory scheme operated as plaintiffs advocate, a single scope ruling could be subjected to judicial review in multiple circumstances" and could "potentially result{ } in conflicting holdings."  Def. Brief, at 27.  Boiled down to its essence, Defendant here is arguing that Plaintiffs should be precluded from challenging CBP's covered merchandise determination in the instant EAPA action under 19 U.S.C. § 1517(g), because they are collaterally estopped by Commerce's Scope Ruling under 19 U.S.C. § 1516a.  But Section 1517 concerns an entirely different statute (EAPA), with an entirely different set of consequences, and with a different temporal reach than Section 1516a (judicial review of AD/CVD determinations, including Commerce scope rulings).  It is therefore difficult to see how the different statutory schemes underlying judicial review of these different actions could result

5

in truly "conflicting holdings."  These differences should make this Court reluctant to apply

collateral estoppel in trade cases involving different agencies administering different statutes,

such as this.  This Court has held as follows:

> The burden on the party seeking issue preclusion is and should be
> exacting.  This is especially so in trade cases….  Since the agencies
> involved perform the function of expert finders of fact concerning
> different programs, different time frames, economic statistics and
> other factors …, principles of issue preclusion should be carefully
> applied.  To hold otherwise would have a chilling effect upon the
> administrative processes envisioned by Congress.

See *E.I. DuPont de Nemours & Co. v. United States*, 23 CIT 343, 347 n.6 (1999); *Consolidated*

*Textiles, Inc. v. United States*, 28 CIT 1304, 1307-08, 346 F.Supp.2d 1290, 1293 (2004) (quoting

*E.I. Dupont* and concluding that "the Court has been reluctant to apply collateral estoppel in

trade cases as a matter of policy").  Like *E.I. Dupont* and *Consolidated Textiles*, the Court here

should conclude that Plaintiffs are entitled to litigate the issue concerning the meaning of the

Steel Grating Orders, as part of CBP's covered merchandise determination in this Section

1517(g) action, notwithstanding that Plaintiffs did not appeal Commerce's Scope Ruling

pursuant to Section 1516a.

### B.   Defendant's Attempts to Address the Substance of Plaintiffs' Covered Merchandise Analysis Are All Impermissible *Post Hoc* Rationalizations.

As Plaintiffs explained in their Supplemental Brief, CBP did not do what it told the Court

that it would do on remand, which was to "consider Commerce's scope ruling on the record and

clarify or correct its administrative review decision" in order to "ensure that the Court is

presented with a thorough analysis of relevant law and record evidence."  Pl. Supp. Brief, at 3

(quoting Motion for Voluntary Remand and to Stay Filing of Rule 56.2 Brief (Aug. 17, 2022),

ECF 50 ("Mot. Vol. Remand"), at 6).  Instead, CBP delivered a terse, three-page Draft Remand

Determination, which summarized a few highlights of Commerce's Scope Ruling, but was

devoid of any analysis.  *See* Pl. Supp. Brief, at 1-2 (quoting Draft Remand Determination). Following CBP's Draft Remand Determination, Plaintiffs then submitted detailed comments on CBP's Draft Remand Determination, demonstrating in detail why Commerce's Scope Ruling does not provide substantial evidence supporting CBP's conclusion that Plaintiffs' pig farrowing crates and farrowing flooring systems are within the scope of the AD/CVD orders on certain steel grating from China.  *See generally* Ikadan System USA Inc. and Weihai Gaosai Metal Product Co., Ltd., Comments on Draft Remand Redetermination (Sept. 19, 2022), Remand Doc. 17.  However, CBP "declined to address these arguments in its final remand redetermination as the proper avenue to dispute Commerce's Scope Ruling is seeking judicial review under 19 U.S.C. § 1516a(a)(2)."  Final Remand Determ., at 4.

In its Response Brief, Defendant finally attempts to address the particulars of Commerce's Scope Ruling.  *See* Def. Brief at 17 ("Commerce analyzed the characteristics of the item and determined that 'the steel grating does not lose its identity when supported by a truss and legs such that it is no longer subject steel grating"); *id*. ("Commerce thus considered the flooring system to be 'mixed media' and 'separately analyzed the tribar truss flooring component and the cast-iron flooring component.'"); *id*. at 18 ("{h}aving determined that a 'mixed media' analysis is appropriate, Commerce applied the Federal Circuit's guidance for a mixed media analysis provided in *Mid Continent*"); *id*. at 19 ("{b}ecause 'the component part of the larger product is itself covered by the scope of' the Orders and the Orders are silent as to the effect of inclusion in a larger product, Commerce examined the '(k)(1)' sources … to determine whether steel grating included in a larger crate system is covered by the Orders"); *id*. ("Commerce applied a 'presumption' that the component part is subject to the order' concluding that the 'steel grating decking in the tribar truss flooring {is} subject to the Steel Grating Orders even when it

7

is sold with a pig farrowing crate'").  But none of these points are discussed in any way in CBP's

Remand Determination, because CBP stated that it "declines to address these arguments in its

final remand redetermination as the proper avenue to dispute Commerce's Scope Ruling is

seeking judicial review under 19 U.S.C. § 1516a(a)(2)."  Final Remand Determ., at 4.

     Given that CBP itself refused in its Final Remand Determination to provide any analysis

of Commerce's Scope Ruling on the merits, Defendant's points consist entirely of *post hoc*

rationalizations, all of which this Court should reject.  *See, e.g.*, *SEC v. Chenery Corp.*, 332 U.S.

194, 196 (1947) ("{A} reviewing court, in dealing with a determination or judgment which an

administrative agency alone is authorized to make, just judge the propriety of such action solely

by the grounds involved by the agency"); *Burlington Truck Lines v. United States*, 371 U.S. 156,

168-69 (1962) ("courts may not accept appellate counsel's *post hoc* rationalizations for agency

action"); *Ad Hoc Shrimp Trade Enforcement Comm. v. United States*, 46 CIT ___, 578 F. Supp.

3d 1310, 1320 (2022) ("{a} court will uphold an agency action when the explanation is of less-

than-ideal clarity; however, the explanation must come from the agency, not counsel's post hoc

rationalization of agency action") (citing *Ultratec, Inc. v. CaptionCall, LLC*, 872 F.3d 1267,

1274 (Fed. Cir. 2017)).

     To be sure, Defendant's counsel is entitled to clarify the reasoning underlying the

agency's decisionmaking without engaging in impermissible *post hoc* rationalization, *see*

*Taizhou United Imp. & Exp. Co. Ltd. v. United States*, 560 F. Supp. 3d 1316, 1324-25 (2022).

But here Defendant's counsel is not merely "clarifying" the reasoning of CBP.  Discussion or

application of Commerce's "mixed media" analysis appears nowhere in CBP's remand

redetermination, and when Plaintiffs attacked this rationale in the remand proceeding, CBP

argued that it did not have to defend it.  *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto.*

*Ins. Co.*, 43 U.S. 29, 43 (1983) ("{T}he agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made'" (citing *Burlington Truck Lines*, 371 U.S. at 168 (1962)).

Accordingly, the Court should reject Defendant's *post hoc* rationalizations in defense of Commerce's Scope Ruling analysis.

### C. CBP's *Post Hoc* Rationalizations Are Wrong on the Merits Because They Unlawfully Expand the Scope of the CSG Orders.

Even if the Court were to accept the *post hoc* rationalizations contained in Defendant's Response Brief as CBP's own legal interpretation of what constitutes "covered merchandise," Defendant's arguments fail on the merits.

### 1. Defendant's Attempt to Extend the CSG Orders by "Presumption" Is Not Permitted Under Federal Circuit Precedent.

First, Commerce (and by extension, CBP) assert that it is permissible to apply a "'presumption that the component part is subject to the order'" because "'it is not unusual to find subject steel grating incorporated as one part of a larger product or structure'" and because none of the (k)(1) sources "spoke to inclusion of the CSG in a larger product." Def. Brief, at 19 (quoting Commerce Scope Ruling). But Federal Circuit precedent does not allow Commerce (and by extension, CBP) to apply a "presumption" that a steel grating component is still subject to the Steel Grating Orders, even if the steel grating component is incorporated into a further manufactured downstream product, based on the lack of discussion of the issue in the (k)(1) sources. To the contrary, the Federal Circuit has held that "orders may be interpreted as including subject merchandise only if they contain language that specifically includes the subject merchandise or may be reasonably interpreted to include it." *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1089 (Fed. Cir. 2002). Here, the scope language of the CSG Orders do not specifically include pig farrowing crates, farrowing flooring systems, or any other downstream

products, and Commerce cannot "presume" that they are covered where the (k)(1) sources are silent as well.

### 2. The Scope of an AD/CVD Order Does Not Automatically Include Downstream Products.

In its Memorandum of Points and Authorities of Plaintiffs in Support of Rule 56.2 Motion for Judgment on the Agency Record (Apr. 22, 2022), ECF No. 44 ("Pl. Brief"), Plaintiffs cited *Trendium Pool Products, Inc. v. United States* and *Stein Industries, Inc. v. United States* for the proposition that an upstream product within the scope of an AD/CVD order does not automatically continue to be within the scope following further manufacture into a distinct downstream product. Pl. Brief at 13-17 (discussing *Trendium Pool Prods., Inc. v. United States*, 44 CIT ___, 399 F. Supp. 3d 1335 (2019) and *Stein Industries v. United States*, 44 CIT ___, 365 F. Supp. 3d 1364 (2019)). Defendant's attempt to distinguish these cases fail for several reasons.

### a. Defendant's Attempt to Distinguish *Trendium Pool Products* Fails.

With respect to *Trendium*, Defendant argues that "the tri-bar components of the flooring systems—plaintiffs appear to concede—fall within the scope of the Orders and plaintiffs have never argued that they are subjected to any further processing" but instead the "tri-bar components are not even attached to the wider flooring system; they simply rest upon the cast-iron flooring." Def. Brief at 24. Defendant is wrong. Plaintiffs have *repeatedly* pointed out that leg fixtures and bottom supports are *welded* onto the tribar to form a *truss* system. Pl. Brief, at 15 ("{u}nlike steel grates, the tribar has been further manufactured into a downstream product through the self-supporting truss system consisting of leg fixtures made of flat steel angles and the bottom supports made of flat steel bar"); Gaosai Scope Ruling Request to Commerce ("Gaosai Scope Req."), PR 34(b) (Feb. 5, 2021), at 5-8 (discussing details of production process of self-supporting truss and showing five pictures showing tribar truss flooring at different

angles); *id*. at 16-18 (discussing how (k)(1) materials do not indicate that scope included further manufactured tribar truss system); *id*. at 19-20 (explaining, in context of (k)(2) determination, that tribar is only *one part of the truss flooring*); *id.* Exhibit 2 (showing schematic of truss system); Ikadan/Gaosai Rebuttal to Hog Slat Letter, PR 40 (Mar. 11, 2021) (discussing in detail distinctions between tribar truss flooring and tribar itself); Written Arguments of Ikadan/Gaosai (Apr. 19, 2021), at 13, 20 (same); Gaosai Administrative Review Request ("Gaosai A.R. Req.") (CR 124) (July 30, 2021), at 6-7 (explaining that TRLED determination ignored fact that tribar has been further manufactured into downstream product through self-supporting truss system).

Defendant also argues that unlike *Trendium*, the use of the downstream product here—flooring—was explicitly contemplated by the Petition.  Def. Brief, at 24 (citing Commerce Scope Ruling on Pig Farrowing Crates and Farrowing Flooring Systems (May 11, 2021) ("Commerce Scope Ruling"), Supp. A.R. 7, at 13).   Defendant is again wrong.  There is nothing on page 13 of Commerce's Scope Ruling, or indeed anywhere in that ruling, that shows that flooring or any other downstream product was "explicitly contemplated by the Petition."  In the case of the Certain Steel Grating investigations, neither the Petition, the U.S. International Trade Commission ("ITC") investigation, nor the Commerce investigation ever contemplated that the scope would cover downstream products, such as pig farrowing crates, or farrowing flooring systems that were further manufactured from steel grating.  It is true that the Petition states that "CSG is used in a number of environments including permanent and temporary pedestrian walkways, mezzanines, catwalks, overhead sign platforms, fire escape platforms, railroad car stand platforms, stairways, and flooring."   Gaosai Scope Req., Ex. 3 (Petition), at 7; Commerce Scope Ruling, at 14.  This does not mean that the Petition states or implies that the petitioners (Alabama Metal Industries Corp. and Fisher and Ludlow, *see* Petition cover sheet) filed their

11

petition in 2009 with the intention of including any of these further downstream products to be covered by the scope.  Indeed, neither Hog Slat nor any other producer of pig farrowing crates or farrowing flooring system joined the petition, or joined Hog Slat in the proceeding below to support Hog Slat's over-expansive interpretation of the scope.

### b.      Defendant's Attempt to Distinguish *Stein Industries* Fails.

Defendant states that "*Stein Industries* involved a situation where the product at issue had physical characteristics not explicitly contemplated by the relevant order, yet Commerce relied on a physical description not found in the order nor the k(1) sources to support its ruling."  Def. Brief, at 23.  But Defendant's attempt to distinguish *Stein Industries* is unconvincing.  First, just as in *Stein Industries*, Plaintiffs' tribar trusses have physical characteristics not explicitly contemplated by the scope language of the Steel Grating Order, specifically the leg fixtures, which are made of flat steel angles and are welded to the tribar, and the bottom supports, which are made of flat steel bar and also are welded to the tribar, are not explicitly contemplated by the relevant order.

Second, Defendant appears to ignore the fact that the Court in *Stein Industries* based its decision not only on the fact that the weldments changed the profile from the uniform cross-section contemplated by the LWR orders, but also because the plaintiff's products *are* finished components of refrigerated merchandise and display structures, and thus consisted of "*downstream products* dedicated to particular uses as components of refrigerated merchandising and display structures."  *Id*. at 1372 (emphasis original).  Likewise, the welding of leg fixtures and bottom supports to the tribar means that tribar trusses are not tribar (or certain steel grading) as such, but rather are further manufactured *downstream products* dedicated to particular uses as components of pig farrowing crates and farrowing flooring systems.

12

c.      **Defendant's Reliance on *King Supply* Is a Red Herring.**

Defendant relies heavily on *King Supply Co., LLC v. United States*, 674 F.3d 1343 (Fed. Cir. 2012), for the proposition that end use restrictions do not apply to AD/CVD orders unless the order at issue includes clear exclusionary language.  *See* Def. Brief, at 24-25.  But Plaintiffs are *not* arguing that pig farrowing crates and farrowing flooring systems are outside the scope of the Steel Grating Orders because neither the Orders themselves or the (k)(1) materials mention these particular downstream *applications*.  In other words, Plaintiffs are not trying to write a use requirement into the scope language.  Instead, Plaintiffs contend that the *physical characteristics* of tribar *trusses* do not meet the physical requirements of the scope, because of the welding of flat steel angles to the tribar (to add legs to the truss), and the welding of flat steel bars to the tribar (to make bottom supports for the truss) take the product outside the physical description of steel grating.  *See Stein Industries*, 365 F.Supp.3d at 1372 n.9 (distinguishing *King Supply* because the issue was whether the plaintiff's further manufactured products continue to meet the physical description of the products described by the scope, not whether they are excluded based on their use).

For all of the above reasons, the Court should conclude that CBP's interpretation of what constitutes "covered merchandise" is unreasonable and cannot stand.

**III.    DEFENDANT UNREASONABLY AND UNLAWFULLY INTERPRETS THE "EVASION" REQUIREMENT IN THE EAPA STATUTE.**

**A.      EAPA Requires At Least Some Indication of Intent to "Evade".**

Defendant is wrong as a matter of law in asserting that the EAPA statute does not require a finding of intent.  As Plaintiffs explained in their Rule 56.2 brief, this Court rejected that contention in *Diamond Tools Technology LLC v. United States*, , 445 CIT ___, 545 F.Supp.3d 1324 (2021) ("*Diamond Tools I*").  The Court in *Diamond Tools I* explained that "Customs'

13

comment that it 'does not need to determine any level of culpability only that evasion occurred with entry" is unclear at best and potentially tautological."  455 CIT at ___, 545 F.Supp.3d at 1355.  The Court's rationale in *Diamond Tools I* is sound, and so this Court should reach the same conclusion.

Indeed, this Court observed in another recent opinion that EAPA is designed as an "enforcement tool," which provides additional support for the proposition that EAPA requires at least some indication of intent.  The Court in *Leco Supply, Inc. v. United States* stated as follows:

> While EAPA investigations are not expressly designed to be punitive, the fact that the statute was designed to address evasion of U.S. antidumping and countervailing duties suggests that EAPA is more of an enforcement tool than a purely remedial one. *See* Signing Statement for H.R. 644, 2016 WL 737735 (Feb. 24, 2016) ("{EAPA} will ... heighten accountability throughout the {antidumping and countervailing duty} enforcement process, and more effectively counter attempts at duty evasion."). In that vein, EAPA is designed to affect only those parties that enter merchandise by means of "material and false" statements or omissions. 19 U.S.C. § 1517(a)(5).

*Leco Supply, Inc. v. United States*, No. 21-00136, 2023 WL 1434182, at n.22 (Ct. Int'l Trade Jan. 24, 2023).

The Court should reject Defendant's attempt to limit the *Diamond Tools I* precedent to the specific facts of that case.  *See* Def. Brief, at 20-21.  In *Diamond Tools Technology LLC v. United States* ("*Diamond Tools II*"), No. 20-00060, 2022 WL 17730761, (Ct. Int'l Trade Dec. 16, 2022), the Court was even clearer in rejecting CBP's insistence that EAPA does not require any showing of some level of intent, explaining that CBP's interpretation was wrong as a matter of statutory construction.  The Court in *Diamond Tools II* reasoned that CBP's interpretation renders the "material and false statement" requirement a nullity.  *Id*. at *6. In that case, as here, CBP takes the position that all it has to show is that the importer entered "covered merchandise"

14

and represented it in entry documentation as merchandise that was not subject to an AD/CVD order.

A determination of evasion requires three elements: (1) entering covered merchandise into the United States; (2) by means of any document or data or information, written or oral statement, or act that is material and false, or any omission that is material; and (3) that results in any applicable cash deposit or other security being reduced or not applied to the merchandise. *Diamond Tools I*, 545 F.Supp.3d at 1347; *Diamond Tools II*, 2022 WL 17730761, at *3.

According to Defendant, the only elements EAPA requires are: (1) a finding that the importer entered "covered merchandise"; and (2) represented it in its entry documentation as merchandise that was not subject to an AD/CVD order.  In *Diamond Tools II* and in this case, CBP claimed that the importers' selecting an incorrect entry type *per se* constitutes a false statement.  *Id*. at *6.  In other words, according to Defendant's interpretation of EAPA, the second prong of the statute—"by means of any document or data or information, written or oral statement, or act that is material and false, or any omission that is material"—would automatically be satisfied by the importer submitting entry documents without flagging the material as a "Type 3" entry, *i.e.*, subject to AD/CVD duties.   But the Court in *Diamond Tools II* held that CBP's expansive interpretation of the second prong is wrong under a fundamental principle of statutory construction, stating as follows:

> Customs' construction in both its Final Determination and Remand Results of the material and false statement or material omission provision of the statute would render that provision a nullity, thereby violating a core principle of statutory construction.  The court reaches this conclusion because neither Customs' Final Determination nor its Remand Results provided an adequate explanation of Customs' determination.  Rather, Customs rests solely on its conclusion that {the importer} entered "covered merchandise" and represented it in entry documentation as merchandise that was not subject to an AD order.  As this court

15

> previously determined in *Diamond I*, 545 F. Supp. 3d at 1354, {the importer's} act in itself does not meet the standard for a material and false statement without an adequate explanation and elucidation from Customs.

*Diamond Tools II*, 2022 WL 17730761, at *6 (administrative record citation omitted).  The Court in *Diamond Tools II* explained further that under CBP's overbroad interpretation of the "material and false" prong of EAPA, that prong "would exist perforce every time Customs found that the statutory requirement of merchandise being 'covered'—the first of {the} three {prongs in EAPA}—was found by Customs to exist."  *Id.* at *8.  The Court concluded that "such an application of the statute would violate the canons of statutory construction."  *Id.*

The same is true in the case now before this Court.  Moreover, Defendant's interpretation to limit *Diamond Tools I* to the facts in that case fails, because CBP's attempt to make the first and third prongs swallow the second prong violates principles of statutory interpretation in the instant case just as surely as it does in the *Diamond Tools I* and *Diamond Tools II* cases.  In this case, the Court should follow the same principle of statutory interpretation, by holding that it is not enough for CBP only to show that the Plaintiffs entered the merchandise without flagging it as subject to AD/CVD duties and paying cash deposits.  CBP must show something more to satisfy the second prong.  CBP has not provided an adequate explanation of its determination that the Plaintiffs made a "material and false" statement, or a "material" omission.  Without providing evidence of at least *some* level of culpability, this Court should not affirm CBP's finding of "evasion" under EAPA.

**B.    The Court Should Reject Defendant's Claim That Reading an Intent Requirement Into EAPA Would Violate All Principles of Law Applicable to All AD/CVD Proceedings.**

Defendant argues that "reading an intent requirement into the EAPA statute would violate principles of law applicable to all AD/CVD proceedings" because "CBP and Commerce do not

16

have subpoena power or otherwise possess the ability or resources to conduct a full-scale criminal-like investigation into alleged wrongdoing by an importer."  Def. Brief at 21.  But EAPA proceedings are fundamentally different than Commerce AD/CVD proceedings, because the purpose of the AD/CVD statute is remedial, while the purpose of EAPA is as an "enforcement tool." *See Leco Supply, Inc. v. United States*, Slip. Op. 23-8, Ct. No. 21-00136 (Jan. 24, 2023), at 37 n.22.

### C. The Court Should Reject Defendant's Claim That CBP Is Unable to Determine Intent.

The Court should also reject Defendant's claim that CBP does not have "the ability or resources to conduct a full-scale criminal-like investigation into alleged wrongdoing by an importer." Def. Brief at 21.  But CBP conducts Section 1592 investigations all the time, which indisputably includes a gradated intent requirement.  *See* 19 U.S.C. § 1592 (establishing penalties for fraud, gross negligence, and negligence).  Defendant claims that "{g}iven Commerce's and CBP's reliance on what a foreign producer chooses to provide, it is unclear how—absent a concession or error on the part of an importer—*any* finding of intent ever could be made." Def. Brief at 22.  That is simply wrong.  Why would CBP be able to divine intent for purposes of a Section 592 investigation, but not an EAPA investigation?

### D. There Is No Indication That Plaintiffs Intended to Evade AD/CVD Duties.

In this case, there is nothing in the administrative record that indicates that Plaintiffs intended to evade any AD/CVD duties.  First, as demonstrated above and in Plaintiffs' Rule 56.2 Brief, there was no indication based on the Petition or the ITC investigation that the Steel Grating Orders were intended to cover downstream products that are further manufactured from steel grating.  Given that Plaintiffs are importing pig farrowing crates and farrowing flooring systems, there is no indication that Plaintiffs knew or should have known that the Steel Grating

Order would apply to their imports of downstream products, only a small portion of which consisted of merchandise further manufactured from steel grating.

Second, the Steel Grating Orders have been in effect since 2010. *Certain Steel Grating from the People's Republic of China: AD Order*, 57 Fed. Reg. 43,143 (Dep't of Commerce July 23, 2010); *Certain Steel Grating from the People's Republic of China: CVD Order*, 57 Fed. Reg. 43,144 (Dep't of Commerce July 23, 2010); *see also* Allegation of AD/CVD Duty Evasion Under the Enforce and Protect Act of 2015 ("Hog Slat EAPA Allegation"), PR 1 (Mar. 27, 2020), Attachment 2 (same).  Plaintiffs have been importing the pig farrowing crates and farrowing flooring systems at issue all during that time, with no previous inquiries by CBP or complaints by Hog Slat, until Hog Slat first filed its allegations on March 27, 2020.  Hog Slat EAPA Allegation, at 1.  Plaintiffs were informed for the first time on September 18, 2020 that their imports might be covered by the Steel Grating Orders.  TRLED Notice of Initiation and Interim Measures, CR 14 (Sept. 18, 2020).  Ten years of importation without CBP inquiries or Hog Slat complaints suggests that Plaintiffs had no indication, prior to initiation of this proceeding, that its imports were subject to the AD/CVD Orders on Steel Grating.

Third, Plaintiffs in fact did have a concern at one point that its pig farrowing crates and components/parts thereof might be implicated by an AD/CVD proceeding, but it was a different proceeding than the Steel Grating AD/CVD Orders.  In its original EAPA allegation, Hog Slat submitted a copy of a letter submitted by Gaosai on March 25, 2019, in connection with an AD/CVD investigation of fabricated structural steel ("FSS") from Canada, Mexico, and China.  Hog Slat EAPA Allegation, Attachment 8 (letter to Commerce regarding scope comments in FSS investigations).  In that investigation, Gaosai was concerned that its pig breeding and feeding systems, components, and parts thereof—including farrowing crates—could unintentionally be

covered within the scope of the FSS investigations, and therefore Commerce should amend the scope of the FSS investigations specifically to clarify that pig breeding and feeding systems were outside the scope of that investigation. *Id*., Attachment 8, at 2 (requesting that Commerce clarify the scope), & 3-4 (specifically referencing farrowing crates).

Fourth, Plaintiffs did not have reason to know that its pig farrowing crates and farrowing flooring systems were even arguably steel grating, based on the HTSUS codes. Plaintiffs correctly classified all of its products under HTSUS 7308.90.9590. TRLED Determ., at 7 (noting HTSUS classification), 8 (stating that TRLED found no evidence of misclassification); *see also* TRLED Request for Information to Ikadan, CR 15 (Oct. 14, 2020), Appendix (showing list of all Ikadan entries examined by TRLED, including HTSUS item [          ] listed for each entry examined). The scope of the AD/CVD orders states that the certain steel grating that is the subject of these orders are currently classifiable in HTSUS item 7308.90.7000, but do not mention HTSUS 7308.90.9590 or any other HTSUS item. Plaintiffs acknowledge that the HTSUS subheading identified in the AD/CVD Orders are provided for convenience and customs purposes but only the written description of the scope is dispositive. However, the fact that Plaintiffs' pig farrowing crates and farrowing flooring systems are properly classifiable in a different HTSUS item than the HTSUS item describing steel grating lends support to Plaintiffs' contention that they did not know, and had no reason to know, that CBP (or Commerce) would consider their pig farrowing crates and farrowing flooring systems to be subject to the Steel Grating Orders.

Fifth, it is especially telling that the alleger, Hog Slat, was not a petitioner in the original investigations. It is also telling that Hog Slat has not requested any administrative reviews or participated in any administrative reviews of the AD/CVD Orders on steel grating from China.

Further, it is also telling that Hog Slat has not participated in any sunset reviews of the Orders. As noted above, the companies that were and/or are petitioners in the investigations and administrative reviews have never voiced any complaints about imports of pig farrowing crates or farrowing flooring system or any other products containing tribar steel trusses. Those petitioners also did not file the EAPA allegation or enter an appearance in this matter at all. The first official notice that downstream products containing tribar flooring are covered by the scope came from the Department of Commerce scope ruling, which Gaosai and Ikadan filed. Therefore, how could either company have intended to evade the orders by not paying AD/CVD cash deposits when there was absolutely no indication that pig farrowing crates and farrowing flooring containing tribar were covered by the scope? Please recall that all of the other allegations by Hog Slat that would have involved intent, such as transshipment or misclassification, were proven to be false. TRLED Determ., at 7-8. In the end, a disagreement over the scope, when there was no previous indication that the product was covered by the scope, is not enough to prove that either Ikadan or Gaosai had the intent to evade the Orders by failing to pay AD/CVD cash deposits.

**E.    Because It Is Unclear (At Best) That Plaintiffs' Pig Farrowing Crates and Farrowing Flooring Systems Are Covered Merchandise, It is Even More Important That the Court Should Reject CBP's Determination for Lack of Intent.**

As discussed above, Plaintiffs firmly believe that the Court should determine that their pig farrowing crates and farrowing flooring systems are outside the scope of the Steel Grating Orders and that the Court should reject CBP's EAPA determination on the grounds that Plaintiffs imports are not "covered merchandise." However, even if the Court were to disagree and defer to CBP's determination that pig farrowing crates and farrowing flooring systems are "covered merchandise," the analysis above shows that the Court should reject CBP's EAPA determination

because CBP has not shown that Plaintiffs made a "material and false" statement because CBP

has not even attempted to show that Plaintiffs knew that their imports were "covered

merchandise."  Even a scope ruling by Commerce requires that Commerce provide adequate

notice that the merchandise is within the scope of the applicable AD/CVD order.  In *Mid*

*Continent Nail Corp. v. United States*, the Federal Circuit explained as follows:

> While this particular case does not involve a claim of lack of notice
> by a party on whom duties have been imposed, the requirement
> that antidumping orders only be applied to merchandise that they
> may be reasonably interpreted to include ensures that before
> imposing a significant exaction in the form of an antidumping
> duty, Commerce will provide adequate notice of what conduct is
> regulated by the order.  The requirement therefore reflects the
> broader due-process principle that before an agency may enforce
> an order or regulation by means of a penalty or monetary sanction,
> it must provide regulated parties fair warning of the conduct the
> order or regulation prohibits or requires.

725 F.3d 1295, 1301 (Fed. Cir. 2013) (cleaned up).  The Court in *Mid Continent* elaborated by

quoting the U.S. Supreme Court in *Christopher v. SmithKline Beecham Corp.*:

> Our practice of deferring to an agency's interpretation of its own
> ambiguous regulations undoubtedly has important advantages, but
> this practice also creates a risk that agencies will promulgate vague
> and open-ended regulations that they can later interpret as they see
> fit, thereby frustrat{ing} the notice and predictability purposes of
> rulemaking. It is one thing to expect regulated parties to conform
> their conduct to an agency's interpretations once the agency
> announces them; it is quite another to require regulated parties to
> divine the agency's interpretations in advance or else be held liable
> when the agency announces its interpretations for the first time in
> an enforcement proceeding and demands deference.

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158-59 (2012), *quoted in Mid*

*Continent Nail*, 725 F.3d at 1300-01 & n.1.

The same principle makes it all the more important that the Court require CBP to

determine at least some level of culpability before applying EAPA penalties to Plaintiffs,

because to do otherwise would amount to an expectation that Plaintiffs should have divined

CBP's interpretation of what is "covered merchandise."

For all of the above reasons, the Court should not affirm CBP's EAPA determination

because there is no evidence on the record indicating that the Plaintiffs intended to "evade" the

AD/CVD Orders.

## IV.   CBP ARBITRARILY AND CAPRICIOUSLY SUSPENDED LIQUIDATION AND ASSIGNED AD/CVD CASH DEPOSITS IN AN OVERBROAD MANNER.

In its Rule 56.2 Brief, Plaintiffs showed that even if the Court were to conclude that all

"tribar flooring" is within the scope of the AD/CVD Orders and therefore is considered to be

"covered merchandise," and even if CBP could reasonably interpret the EAPA statute to find that

the Plaintiffs "evaded" the AD/CVD Orders, CBP's EAPA determination is nevertheless

arbitrary, capricious, and unsupported by substantial evidence because CBP applied its evasion

findings and remedies thereto to include significant quantities of imports that contain no tribar

flooring whatsoever.

In its Response Brief, Defendant essentially stonewalls Plaintiffs' complaints by

asserting, once again, that CBP is not required to get this part of its determination correct and

that it can force Plaintiffs' to seek a remedy after liquidation by protesting the liquidations and, if

CBP does not correct its errors, file suit to this Court under a Section 1581(a) action.  This is

perhaps CBP's most egregious error in this case, and the Court should reject CBP's

determination and remand, with instructions for CBP to correct its errors.

Defendant first argues that "the statute does not contemplate this Court reviewing *which*

specific entries are subject to interim measures or an evasion determination."  Def. Brief at 28.

But this ignores the fact that this Court *does* have the right—indeed the obligation—to review *all*

findings of fact by CBP for substantial evidence. *See Diamond Tools I*, 45 CIT ___, 545 F.

US.355834444.01

PUBLIC VERSION

Supp.3d 1324, 1331 (2020) ("{t}he court's review of Customs' determination as to evasion may encompass interim decisions subsumed into the final determination") (quoting *Vietnam Firewood Co. Ltd. v. United States*, 44 CIT ___, 466 F.Supp.3d 1273, 1284 (2020); *Royal Brush Mfg., Inc. v. United States*, 45 CIT ___, 545 F.Supp.3d 1357, 1372 (2021) ("an abuse of discretion occurs when the decision is based on factual findings that are not supported by substantial evidence"), *appeal docketed*, No. 22-1226 (Fed. Cir. Dec. 21, 2021). ("{t}he court's review of Customs' determination as to evasion may encompass interim decisions subsumed into the final determination"). It was CBP that chose to review all of the entries and, *in its EAPA Determination*, judge which ones were and were not covered. *See* TRLED Determ., at 7 ("Although Ikadan claimed that no tribar floors were imported during the POI, evidence on the record shows that of [    ] entry lines reviewed, [        ] of them contained either farrowing crates or tribar floors as the imported product listed on the commercial invoices"); *id*. ("For Gaosai imports, evidence on the record shows that of [    ] entries, [    ] entry lines contained either farrowing crates or tribar floors as the imported product listed on the commercial invoices classified under HTSUS 7308.90.9590."). How can review of those findings be beyond the scope of this lawsuit?

Defendant also argues that "this Court is reviewing CBP's *determination that evasion occurred*—not the final duty rates applied to a given entry at liquidation (which has not yet occurred)." Def. Brief at 28. This is another red herring. Plaintiffs are not asking CBP to calculate final AD/CVD duties. What Plaintiffs *are* asking CBP to do is to *correctly* determine which entries are or are not "covered merchandise" under the meaning of EAPA. *EAPA does not entitle CBP to cover whatever imports it wants, willy-nilly, in an EAPA determination*. The statute (19 U.S.C. § 1517(c)(1)(A)) clearly requires CBP to determine what is "covered

PUBLIC VERSION

merchandise," and this Court is entitled to review it for substantial evidence. In *Aspects Furniture Int'l, Inc. v. United States*, this Court explained as follows:

> The Court concludes that Customs' inclusion of merchandise in the EAPA investigation that has been determined by Commerce to be outside the scope of the Order is contrary to law because the EAPA statute does not permit Customs to include merchandise that is not covered by the scope of the Order. 19 U.S.C. § 15157(c)(1)(A).

*Aspects Furniture Int'l, Inc. v. United States*, No. 20-03824, 2022 WL 17249645, at *15 (Ct. Int'l Trade Nov. 28, 2022).

In this case, Plaintiffs argue that CBP has *incorrectly* determined which entries are covered merchandise, and that determination is clearly subject to this Court's jurisdiction. Plaintiffs are not required to wait until the entries are liquidated, protest under 19 U.S.C. § 1514, and then appeal the results to this Court.

Defendant also appears to be taking the position that any findings it made regarding specific entries are immune from the review of this Court in the instant EAPA appeal, as long as Plaintiffs admit that one entry contained flooring manufactured in part from tribar. But Defendant's position is simply illogical. If CBP only has to show one entry was incorrectly entered as not subject to the Steel Grating Orders, then why did CBP review all of the entries and make findings of fact as to all of the entries?

Finally, Defendant argues that "the Court cannot review which specific entries CBP has suspended and assigned cash deposits for is consistent with the well-settled legal principle that 'paying deposits pending court review is an ordinary consequence of the statutory scheme.'" Def. Brief, at 30. But Plaintiffs are not asking the Court to order that CBP discontinue suspension of liquidation or collecting cash deposits while this case is pending; it is only asking for this Court to ensure that CBP has not exceeded its statutory mandate by determining that goods are covered merchandise when in fact they are not covered merchandise. Contrary to

US.355834444.01

PUBLIC VERSION

CBP's arguments, CBP's statutory authority only allows it to impose the remedies specified in

the EAPA statute on covered merchandise.  In this case, CBP has exceeded its statutory authority

by determining that many entries contain covered merchandise when in fact they contained no

covered merchandise at all.  It is asking this Court to turn a blind eye to its failure to specify

which goods are subject to its covered merchandise finding and which goods are not.  The Court

should not tolerate such a significant derogation by CBP of its statutory authority.

## V.      CONCLUSION.

For all of the above reasons, and for the reasons set forth in Plaintiffs' Rule 56.2 Brief

and Supplemental Brief, the Court should hold that: (1) CBP's interpretation of the scope of the

Steel Grating Orders and its resulting covered merchandise determination is not in accordance

with law; and (2) CBP's EAPA determination factual findings are arbitrary, capricious, and

unsupported by substantial evidence.  The Court should accordingly remand CBP's

determination consistent with the Court's opinion.

Respectfully submitted,

/s/ Douglas J. Heffner
Douglas J. Heffner
Wm. Randolph Rucker
Richard P. Ferrin
**FAEGRE DRINKER BIDDLE & REATH LLP**
1500 K Street, N.W.
Washington, DC 20005

*Counsel for Plaintiffs*

Dated: February 17, 2023

US.355834444.01

**Certification of Compliance With October 13, 2022 Amended Scheduling Order**

The undersigned hereby certifies that the foregoing brief contains 7903 words, exclusive of the table of contents, table of authorities, counsel's signature block, and certificate of service, and therefore complies with the 11,000 word maximum for a reply brief set forth in the Court's October 13, 2022 scheduling order (ECF 59).

 /s/ Richard P. Ferrin
Douglas J. Heffner
Wm. Randolph Rucker
Richard P. Ferrin
FAEGRE DRINKER BIDDLE & REATH LLP

*On behalf of Plaintiffs*